**PUBLIC VERSION**

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )  Court No. 20-00110 |
| v. | ) |
| | )  **PUBLIC VERSION** |
| UNITED STATES, | )  Business Proprietary |
| | )  Information removed at Exhibits 1-5 |
| Defendant, | ) |
| | ) |

### RESPONSE TO COURT'S REQUEST OF
### DALIAN MEISEN WOODWORKING CO., LTD.

On behalf of Dalian Meisen Woodworking Co., Ltd. ("Meisen"), we hereby file

responses to questions issued by the U.S. Court of International Trade on May 26, 2021.

**1) Did the respondent place on the record information regarding any loans it had entered into or outstanding during the period of investigation?**

In response to the questions asked by the U.S. Department of Commerce, Meisen placed

information on the record regarding its loans in both its original and supplemental questionnaire

responses.   In its original questionnaire response, Meisen reported information related to all

commercial loans that were outstanding during the POI. *Section III Questionnaire Response,*

*Volume 1*, dated July 11, 2019 at pages 16-18 and Exhibit 6 (C.R. 195-218, P.R. 500).  Meisen

also reported that its cross-owned affiliate, Dalian Hechang Technology Development Co., Ltd

("Dalian Hechang"), did not receive any loans from any financial institutions.   Section III

Questionnaire Response, Volume I, dated July 11, 2019 at page 14 (C.R. 195-218, P.R. 500).

In its supplemental questionnaire response, Meisen responded to questions concerning the loans

reported. Supplemental Loans and Subsidies Questionnaire Response, dated September 18, 2019

at pages 1-3 and Exhibit 1 (C.R. 395, P.R. 709).   Meisen also provided a list of all of its long-

term loans from private banks from 2016 through 2018 as part of its creditworthiness

questionnaire.   Creditworthiness Supplemental Questionnaire Response, dated September 4,

2019 at page 3 and Exhibit 2 (C.R. 387, P.R. 691).   Meisen also provided information on its

loans at verification and Commerce verified Meisen's loan information.  Verification Report,

dated January 7, 2020 at pages 8 and 12-14 (C.R. 545, P.R. 809).


     **2) If so, please provide to the court public and confidential copies of the loan
information that was placed on the record, along with the record reference
numbers for each document.**

**Exhibit 1 -** Section III Questionnaire Response, Volume I, dated July 11, 2019 at pages 16-18
and Exhibit 6 (C.R. 195-218, P.R. 500).

**Exhibit 2** - Section III Questionnaire Response, Volume I1, dated July 11, 2019 at page 14 (C.R.
195-218, P.R. 500).

**Exhibit 3** - Supplemental Loans and Subsidies Questionnaire Response, dated September 18,
2019 at pages 1-3 and Exhibit 1 (C.R. 395, P.R. 709)

**Exhibit 4** - Creditworthiness Supplemental Questionnaire Response, dated September 4, 2019 at
page 3 and Exhibit 2 (C.R. 387, P.R. 691).

**Exhibit 5** - Verification Report, dated January 7, 2020 at pages 8 and 12-14 (C.R. 545, P.R.
809).

**PUBLIC VERSION**

Please contact the undersigned if the Court requires any additional information or has any questions.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW
Suite 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiff Dalian Meisen Woodworking Co., Ltd.*

Dated:  June 4, 2021

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on June 4, 2021,

via the Court's ECF filing system, which automatically serves notice on counsel of record.

Jeffrey S. Neeley

EXHIBIT 1

# HUSCH BLACKWELL

Jeffrey S. Neeley
Partner

750 17th St. N.W., Suite 900
Washington, DC  20006-4675
Direct: 202.378.2357
Fax: 202.378.2319
jeffrey.neeley@huschblackwell.com

July 11, 2019

Case No. C-570-107
Total Pages: 149
Investigation
E&C: Office V

**<u>PUBLIC VERSION</u>**
Business Proprietary Information removed from
brackets on Volume I (Meisen) Narrative Pages 2-4,
6-9, 24, 28 and Volume I (Meisen) Exhibits 1-12
and 14-15 and Volume II (Hechang) Narrative
Pages 2-4 and 6- 7 and Volume II (Hechang)
Exhibits 1 to 5-2

Honorable Wilbur Ross
Secretary of Commerce
U.S. Department of Commerce
Attention: Enforcement and Compliance
Central Records Unit, Room 1870
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

Re:   *Wooden Cabinets and Vanities from the People's Republic of*
*China: Section III Questionnaire Response*

Dear Secretary Ross:

On behalf of Dalian Meisen Woodworking Co., Ltd ("Meisen"), we hereby submit our

response to the Section III Questionnaire issued on May 31, 2019, in the above-referenced

proceeding.

**REQUEST FOR PROPRIETARY TREATMENT**

Certain information contained herein is business confidential data that is proprietary.

This information is enclosed with brackets ("[ ]").  Disclosure of this information would cause

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

Barcode:3859413-01 C-570-107 INV - Investigation  -

# VOLUME I

Barcode:3859413-01 C-570-107 INV - Investigation  -

## *UNITED STATES DEPARTMENT OF COMMERCE INTERNATIONAL TRADE ADMINISTRATION ENFORCEMENT & COMPLIANCE*

### *COUNTERVAILING DUTY QUESTIONNAIRE*

**Countervailing Duty (CVD) Investigation Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China C-570-107**

**PERIOD OF INVESTIGATION:**          **January 1, 2018, through December 31, 2018**

**RESPONSE TO SECTION III IDENTIFYING AFFILIATED COMPANIES DUE DATE:**          **June 14, 2019**

**SECTIONS II and REMAINING PORTIONS OF III RESPONSE DUE DATE:**          **July 8, 2019**

**OFFICIALS IN CHARGE:**

NAME: Christian Llinas          NAME: Benito Ballesteros OPERATIONS, OFFICE V
OPERATIONS,
OFFICE V PHONE: (202) 482-4877  PHONE: (202) 482-7425
E-MAIL: christian.llinas@trade.gov   E-MAIL: benito.ballesteros@trade.gov

**Instructions for filing a response to this questionnaire are outlined in Section I "General Instructions" of the questionnaire.**

**STATUTORY REFERENCE:**          **Tariff Act of 1930, Title VII, as**

**amended REGULATORY REFERENCE:  19 CFR Parts 351 and 354**

———————————

1

**benefit under this program.**

2.    Specify whether the assistance came in the form of a grant, loan, or other
incentive. Further, please indicate whether the federal, provincial, or local
government provided the assistance.

3.    If your company had outstanding loans under this program during the POI,
please identify these loans and report the information requested in the Loan
Template.

Technology to Improve Trade Research and Development Fund

1.    Please respond to all questions in the following appendices:

a.  **Standard Questions Appendix**, and
b.  **Grant and Allocation Appendix**

**Response:    Not applicable because Dalian Meisen has never received any**

**benefit under this program.**

2.    Specify whether the assistance came in the form of a grant, loan, or other
incentive. Further, please indicate whether the federal, provincial, or local
government provided the assistance.

3.    If your company had outstanding loans under this program during the POI,
please identify these loans and report the information requested in the Loan
Template.

**B.      LOANS AND CREDIT**

Policy Loans to the Wooden Cabinet and Vanity Industry

1.    Report all financing to your company that was outstanding at any point
during the POI, regardless of whether you consider the financing to have
been provided under this program.   Submit the information requested in
the Loan Template as an attachment to your response and in electronic
format using Microsoft Excel.
Ensure that you report all forms of financing outstanding during the POI, not
only traditional loans.   This includes, but is not limited to, interest expenses
on bank promissory notes, invoice discounting, and factoring of accounts
receivable.   If your company did not make interest payments on the
financing during the POI (*e.g.*, factoring of accounts receivable), then

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

PUBLIC VERSION

identify the specific terms of the financing (*e.g.*, the discount rate associated with the factoring).

**Response:   Dalian Meisen received no policy loans applicable to the Wooden**

**Cabinet and Vanity Industry.   Please refer to Exhibit 6 for the requested**

**information related to all commercial loans that were outstanding during the**

**POI.**

2.   Describe any role your company plays in the development of government's industrial plans and/or policies at all levels of government. For example, does your company provide information for, or request inclusion in, any plans, policies, or measures?

**Response:   Dalian Meisen does not play any role in the development of the**

**Chinese government's industrial plans or policies.   Dalian Meisen does not**

**provide information for, or request inclusion in any of these plans, policies, or**

**measures and Dalian Meisen did not benefit from any government industrial**

**plans or policies.**

3.   Does your company provide information relating to assessments of the implementation of the plan, policy or measure?

**Response:   Dalian Meisen does not provide information relating to**

**assessments of the implementation of any plans, policies or measures.**

4.   Has the GOC designated your company and/or industry as "pillar," "encouraged," "honorable," or any other designation?   If so, please answer the following questions.
   a.   Explain the purpose of these designations, the criteria for receiving any such designation, and the benefits or obligations that arise from each such designation.

   b.   Is there any connection between these designations and five-year

17

PUBLIC VERSION

plans or other industrial and/or economic policies or administrative measures?

**Response:    Not applicable. The GOC did not designate Dalian Meisen and/or the industry as "pillar," "encouraged," "honorable," or any other designation.**

5.    Please describe any instances in which your company cited GOC plans, policies, or measures as support for receiving the financing that you report.

**Response:    Not applicable. There is no connection between the GOC's plans, policies, or measures and the financing received by Dalian Meisen.    As explained above, all forms of outstanding financing during the POI were commercial.**

Preferential Loans for State-Owned Enterprises

**Response:    These programs are not applicable because Dalian Meisen has never been an SOE. Please refer to Exhibit 4 and Exhibit 5 of this response. We believe that GOC's response will also confirm that Dalian Meisen has never been an SOE.    Therefore, a response to the questions in this section is not needed.**

1.    (If not already reported) Report all financing to your company that was outstanding during the POI, regardless of whether you consider the financing to have been provided under this program.    Submit the information requested in the Loan Template as an attachment to your response and in electronic format using Microsoft Excel.

Ensure that you report all forms of financing outstanding during the POI, not only traditional loans.    This includes, but is not limited to, interest expenses on bank promissory notes, invoice discounting, and factoring of accounts receivable.    If your company did not make interest payments on the

financing during the POI (*e.g.*, factoring of accounts receivable), then identify the specific terms of the financing (*e.g.*, the discount rate associated with the factoring).

2. Is your company an SOE?   On what basis do you classify your company as an SOE?

3. Do state-owned commercial banks (SOCBs) classify your company as an SOE?   If so, please explain why.

4. Please indicate (with reference to the corresponding control number) which (if any) loans were made to your company as a result of your company's SOE status.

5. Describe in detail the application and approval process through which your company went to receive these loans.

6. Describe any instances in which your company notified the bank of its status as an SOE as a condition of/or support for receiving the loan.

<u>Loan and Interest Subsidies Provided Pursuant to the Northeast Revitalization Program</u>

**Response:   Not applicable because Dalian Meisen has never received any benefit under this program.**

1. In connection with the loans reported in the Loan Template, please indicate which (if any) loans were made to your company because of this program.

2. Describe in detail the application and approval process that your company undertook to receive these loans.

3. Specify the criteria your company met to receive the particular amount of assistance provided. Did the application/approval specify the merchandise for which this assistance was to be provided?   If so, provide the details of which merchandise was specified in the application and/or approval documents.

**C. INCOME TAX PROGRAMS**

<u>Income Tax Reductions under Article 28 of the Enterprise Income Tax</u>

19

Barcode:3859413-01 C-570-107 INV - Investigation  -

Exhibit 6

**PUBLIC VERSION**

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

Barcode:3859413-01 C-570-107 INV – Investigation –

Make These Fields Business Proprietary, As Necessary

| Lender in Chinese | English translation of Lender | Date of Loan Agreement | Date of Loan Receipt | Purpose of Loan | Initial Loan Amount (Principal in RMB) | Initial Loan Amount (Principal in Original Currency) | Currency of Loan | Life of Loan (no. of days if short-term, no. of years if long-term) | Year or Day ("Year" for long-term, "Day" for short-term) | Fixed or Variable Rate Loan | Interest Rate Specified in the Loan Agreement | Date of Principal Payment(s) | Amount of Principal Payment(s) (RMB) | Date(s) of Interest Payment | Amount(s) of Interest Paid (RMB) | Principal Balance to Which Each Interest Payment Applies | Total Number of Days Each Interest Payment Covers |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | *1,000,000* | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

PUBLIC VERSION

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

Barcode:3859413-01 C-570-107 INV - Investigation -

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 40,000 | | | | |

PUBLIC VERSION

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

Barcode:385943-01 C-570-107 INV - Investigation -

EXHIBIT 2

Barcode:3859413-01 C-570-107 INV - Investigation  -

# VOLUME II

PUBLIC VERSION

Barcode:3859413-01 C-570-107 INV - Investigation -

### UNITED STATES DEPARTMENT OF COMMERCE INTERNATIONAL TRADE ADMINISTRATION ENFORCEMENT & COMPLIANCE

### COUNTERVAILING DUTY QUESTIONNAIRE

**Countervailing Duty (CVD) Investigation Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China C-570-107**

| | |
|---|---|
| **PERIOD OF INVESTIGATION:** | **January 1, 2018, through December 31, 2018** |
| **RESPONSE TO SECTION III IDENTIFYING AFFILIATED COMPANIES DUE DATE:** | **June 14, 2019** |
| **SECTIONS II and REMAINING PORTIONS OF III RESPONSE DUE DATE:** | **July 8, 2019** |

**OFFICIALS IN CHARGE:**

NAME: Christian Llinas                NAME: Benito Ballesteros
OPERATIONS, OFFICE V             OPERATIONS, OFFICE V
PHONE: (202) 482-4877             PHONE: (202) 482-7425
E-MAIL: christian.llinas@trade.gov   E-MAIL: benito.ballesteros@trade.gov

**Instructions for filing a response to this questionnaire are outlined in Section I "General Instructions" of the questionnaire.**

| | |
|---|---|
| **STATUTORY REFERENCE:** | **Tariff Act of 1930, Title VII, as amended** |
| **REGULATORY REFERENCE:** | **19 CFR Parts 351 and 354** |

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 7/11/19 1:56 PM, Submission Status: Approved

    a.  **Standard Questions Appendix**, and

    b.  **Grant and Allocation Appendix**

**Response: Not applicable because Dalian Hechang has never received any benefit**

**under this program.**

2.    Specify whether the assistance came in the form of a grant, loan, or other incentive. Further, please indicate whether the federal, provincial, or local government provided the assistance.

3.    If your company had outstanding loans under this program during the POI, please identify these loans and report the information requested in the Loan Template.

**B.    LOANS AND CREDIT**

Policy Loans to the Wooden Cabinet and Vanity Industry

1.    Report <u>all</u> financing to your company that was outstanding at any point during the POI, regardless of whether you consider the financing to have been provided under this program.   Submit the information requested in the Loan Template as an attachment to your response and in electronic format using Microsoft Excel.

    Ensure that you report <u>all</u> forms of financing outstanding during the POI, not only traditional loans.   This includes, but is not limited to, interest expenses on bank promissory notes, invoice discounting, and factoring of accounts receivable.   If your company did not make interest payments on the financing during the POI (*e.g.*, factoring of accounts receivable), then identify the specific terms of the financing (*e.g.*, the discount rate associated with the factoring).

**Response: Not applicable. Dalian Hechang has never received loans from any financial**

**institution.**

2.    Describe any role your company plays in the development of government's industrial plans and/or policies at all levels of government.   For example, does your company provide information for, or request inclusion in, any plans, policies, or measures?

**Response: Dalian Hechang does not play any role in the development of the Chinese**

**government's industrial plans or policies. Dalian Hechang does not provide**

**information for, or request inclusion in any of these plans, policies, or measures and**

**Dalian Hechang did not benefit from any government's industrial plans or policies.**

EXHIBIT 3

Barcode:3880524-02 C-570-107 INV - Investigation  -

# HUSCH BLACKWELL

Jeffrey S. Neeley
Partner

750 17th St. N.W., Suite 900
Washington, DC  20006-4675
Direct: 202.378.2357
Fax: 202.378.2319
jeffrey.neeley@huschblackwell.com

September 18, 2019

Case No. C-570-107
Total Pages: 62
Investigation
E&C: Office V

**<u>PUBLIC VERSION</u>**
Business Proprietary Information removed from brackets
on Narrative Pages 1-3 and 14 and Exhibits 1-18

Honorable Wilbur Ross
Secretary of Commerce
U.S. Department of Commerce
Attention: Enforcement and Compliance
Central Records Unit, Room 1870
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

      **Re:**    *Wooden Cabinets and Vanities from the People's Republic of*
             *China: Supplemental Loans and Subsidies Questionnaire Response*

Dear Secretary Ross:

On behalf of Dalian Meisen Woodworking Co., Ltd ("Meisen"), we hereby submit

our response to the Supplemental Loans and Subsidies Questionnaire issued on September 9,

2019, in the above-referenced proceeding.

**REQUEST FOR PROPRIETARY TREATMENT**

Certain information contained herein is business confidential data that is proprietary.

This information is enclosed with brackets ("[ ]").  Disclosure of this information would cause

substantial competitive and commercial harm to the parties.  Such data is marked as

ATTACHMENT
WOODEN CABINETS AND VANITIES AND COMPONENTS THEREOF FROM
THE PEOPLE'S REPUBLIC OF CHINA
SUPPLEMENTAL QUESTIONNAIRE

Dalian Meisen Woodworking Co.,  Ltd

NOTE:      In accordance with 19 CFR 351.303(e), "A document submitted in a foreign
           language must be accompanied by an English translation of the entire document
           or of only pertinent portions, where appropriate, unless the Secretary waives
           this requirement for an individual document. A party must obtain the
           Department's approval for submission of an English translation of only portions
           of a document prior to submission to the Department."

NOTE:      Please repeat the question prior to giving your response when responding to
           this supplemental questionnaire.

NOTE:      In future submissions, please ensure that all copies of sales and
           other documentation are submitted in a clear and legible  format.

NOTE:      Section 782(c)(1) of the Tariff Act of 1930, as amended (Act), specifies that an
           interested party must when experiencing difficulties meeting requirements: If an
           interested party, promptly after receiving a request from the administering
           authority or the Commission for information, notifies the administering authority
           or the Commission (as the case may be) that such party is unable to submit the
           information requested in the requested form and manner, together with a full
           explanation and suggested alternative forms in which such party is able to
           submit the information, the administering authority or the Commission (as the
           case may be) shall consider the ability of the interested party to submit the
           information in the requested form and manner and may modify such
           requirements to the extent necessary to avoid imposing an unreasonable burden
           on that  party.

Loans and Subsidies

1.  Your 2018 financial statement shows that Meisen had [


                                                                    ].
    However, in Exhibit 6 of your initial questionnaire response, you [


                                          ]. Please explain these
    discrepancies and provide a revised, [
                 ] in your 2018 financial statements. Describe and document all changes
    made to your loan database. Provide original language and English versions of all
    supporting documentation.

PUBLIC VERSION

**ANSWER:  The statement in the financial statement is a mistake by the auditor. Dalian Meison borrowed money from its U.S. affiliates during the relevant period. The "short-term loan" balance at the beginning and end of 2018 includes both bank loans and the loans from the U.S. affiliates, but the auditor recorded all of the loans under the title of bank loans.  Specifically, the beginning balance of RMB[          ] consists of bank loans of RMB[          ] and loans from U.S. affiliates of RMB[              ]; and the balance of RMB [          ] at the end of 2018 consists of bank loans of RMB[          ] and shareholder and customer loans RMB[            ]. The reconciliation is as follows:**

| Category | Amount at the end of period | Amount at the beginning of period |
|---|---|---|
| [ | | ] |
| **Subtotal of bank loan** | [ | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |

Filed By: jeffrey.neeley@huschblackwell.com, Filed Date: 9/18/19 11:58 AM, Submission Status: Approved

| [ | | ] |
|---|---|---|
| | | ] |
| **Subtotal of foreign debt** | [ | ] |
| **Total** | [ | ] |

**ANSWER: Please see Exhibit 1 for the auditor's correction.**

2.  [          ] of your 2018 financial statement reports that Meisen had [
                                              ]. Please describe and document
[
                                                        ].
Explain why such [                                              ].
Provide original language and English versions of all supporting documentation.

**ANSWER: The RMB [          ] was the amount of export VAT (Value Added Tax)
rebate received for December 2018. The export VAT rebate application was filed in January
2019, and this amount of RMB [          ] was recorded in the account "Other
Receivables" in the 2018 financial statements. Please see Exhibit 2 for the Declaration Form
of Tax Exemption, Offset and Rebate for the period of December 2018 but filed in January
2019, which records RMB [          ] as the "Export Goods Value times VAT rebate
rate". We also provide the VAT Return of December 2018 filed in January 2019 at Exhibit 3,
which shows the "VAT-in" RMB [          ] which is greater than the export VAT
rebate amount.   The Department has previously held that such VAT rebates are not
countervailable because the amount of VAT levied on sales in the domestic market was
greater than the amount of VAT exempted upon export.  See e.g. *Certain New Pneumatic Off-
the-Road Tires From the People's Republic of China: Final Affirmative Countervailing Duty
Determination and Final Negative Determination of Critical Circumstances*, 73 Fed. Reg. 40480**

Barcode:3891362-01 C-570-107 INV - Investigation  -

| 1 | Correction of 2018 Audit Report | BPI |
|---|---|---|

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

EXHIBIT 4

# HUSCH BLACKWELL

Jeffrey S. Neeley
Partner

750 17th St. N.W., Suite 900
Washington, DC  20006-4675
Direct: 202.378.2357
Fax: 202.378.2319
jeffrey.neeley@huschblackwell.com

September 4, 2019

Case No. C-570-107
Total Pages: 27
Investigation
E&C: Office V

**<u>PUBLIC VERSION</u>**
Business Proprietary Information removed from
brackets on Volume I (Meisen) Narrative Pages 3-5
and Exhibits 1-3 and Volume II (Hechang) Narrative
Pages 1-2 and Exhibit 1.

Honorable Wilbur Ross
Secretary of Commerce
U.S. Department of Commerce
Attention: Enforcement and Compliance
Central Records Unit, Room 1870
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

Re:     *Wooden Cabinets and Vanities from the People's Republic of
China: Creditworthiness Supplemental Questionnaire Response*

Dear Secretary Ross:

On behalf of Dalian Meisen Woodworking Co., Ltd ("Meisen"), we hereby submit our

response to the Creditworthiness Supplemental Questionnaire issued on August 21, 2019, in the

above-referenced proceeding.

## REQUEST FOR PROPRIETARY TREATMENT

Certain information contained herein is business confidential data that is proprietary.

This information is enclosed with brackets ("[ ]").  Disclosure of this information would cause

substantial competitive and commercial harm to the parties.  Such data is marked as "Proprietary

3.  Please list and describe all restrictions in effect during 2016 through 2018 on the use of current assets such as pre-paid expenses and advances to suppliers.  Indicate whether these restrictions are reflected in the figures reported in response to the preceding question (*i.e.*, question 2).

**Response:  There were no restrictions in effect during 2016 through 2018 on the use of current assets such as pre-paid expenses and advances to suppliers.**

4.  List all long-term commercial debt obtained from private banks in or around 2016 through 2018.  Please provide clear citations to your financial statements (*i.e.*, the statement and page number where these entries can be found in your financial statements).  Do not include loans accompanied by government-provided guarantees.

**Response:  Please see Exhibit 2 for the long-term commercial loans from private banks from 2016 through 2018.  Meisen has no loans accompanied by government-provided guarantees.**

5.  Please provide the following information for each of the loans listed in your response to the preceding question (*i.e.*, question 4): the origination date, the amount, the interest rate, the repayment schedule, any other significant terms, whether all principal payments and interest payments were made in a timely manner according to the loan's original payment schedule, and list any deferrals that you received on any of those loans.

**Response:  Please see Exhibit 2 for the loan information as required. Please note that Meisen borrowed RMB[                 ] long-term loans in 2017, RMB[              ] has been repaid in November 2018, therefore, the long-term loans for 2018 was RMB[             ].  All loans were received from the [**

**].**

6.  Please list all unconsummated attempts to obtain debt from private sources and agreements involving private debt that occurred prior to the end of 2018.  Describe the circumstances of these attempts and agreements, and the reasons they were not consummated.;

**Response:  Meisen did not have any unconsummated attempts to obtain debt from private sources.**

7.  Please provide a history of your company's capital structure beginning two years prior to 2016 (*i.e.*, 2014) through 2018.  This should include, by date, the ratio of short- and long- term debt to equity and the percentage of debt obtained from private sources compared to debt obtained from the government and/or government-related sources.  State whether there was ever a time when your company could not meet, on a timely basis, its required principal or interest payment obligations.  If so, provide details for each instance, including when this occurred, the amount of delinquent payments or defaults, the lender(s), and loan number(s); describe how the situation was resolved; and describe the effect of the delinquencies or defaults on your operations.

# Exhibit 2

Information Not Susceptible to Public Summary

EXHIBIT 5

**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

C-570-107
Investigation
Public Version ~~Proprietary Document~~
E&C/V:  MR/NJ

| | |
|---|---|
| **DATE:** | January 3, 2019 |
| **MEMORANDUM TO:** | The File |
| **FROM:** | Matthew Renkey *MR*<br>Senior International Trade Analyst, Office V<br>Antidumping and Countervailing Duty Operations<br><br>Nathan James<br>International Trade Compliance Analyst, Office V<br>Antidumping and Countervailing Duty Operations |
| **SUBJECT:** | Verification of the Questionnaire Responses of Dalian Meisen Woodworking Co., Ltd. |
| **RE:** | Countervailing Duty Investigation of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: |

From November 12, 2019, through November 15, 2019, the Department of Commerce (Commerce) met with representatives of Dalian Meisen Woodworking Co., Ltd. (Meisen) to conduct verification of its questionnaire responses.  The lists of participants and verification exhibits are appended to this report.

The purpose of this verification report is to provide parties with a factual report of the methods, procedures, and results collected during Commerce's verification.  *See* 19 CFR 351.307(c).  This report does *not* draw conclusions as to whether the reported information was successfully verified, and further does *not* make findings or conclusions regarding how the facts obtained at verification will ultimately be treated in Commerce's analysis.

### Verification of Meisen's Responses

The verification steps discussed below were presented to Meisen in a letter from Commerce dated November 4, 2019.  Below we describe the verification procedures performed and cite to the applicable verification exhibit, or exhibit from the questionnaire response containing information provided by Meisen that relates to the procedure.  We also describe any changes to our planned procedures that were considered necessary due to the nature of the financial accounting systems.

## SECTION I:  GENERAL INFORMATION

### A.    Corrections to the Response

At the commencement of verification, Meisen submitted corrections to its questionnaire responses that resulted from its verification preparation.  We accepted these corrections because we found them to be minor corrections to the response.

Corrections Accepted:

1.    Meisen stated that it received refunds for two of its reported land purchases (in 2010 and 2017) during the average useful life (AUL) period, and that these refunds had not been reflected in its reporting for the Land for Less than Adequate Remuneration (LTAR) program.  *See* Verification Exhibit (VE)-1.  Company officials stated that the first refund (for the 2010 purchase) had been misclassified into its capitals reserves rather than intangible assets.  Meisen reclassified the entries for the 2010 land purchase in 2012 but had not netted out the refunds from the purchase price in its reporting.  Similarly, the refund amounts for the 2017 purchase, while being correctly booked in the intangible assets account, had not been netted out from the reported land purchase amount.  Company officials explained that the reason the refund amounts were missed was simply due to them being overlooked by the accounting department.

2.    Meisen misreported the date of one principal payment by one row in its original loan spreadsheet and also misreported the dates of six interest payments as August 16, 2018, whereas the correct dates should be August 21, 2018.  *Id.*

A description and detailed list of these corrections, as well as supporting documentation, are included in VE-1.

### B.    Accounting System

1.    *Be prepared to discuss and demonstrate that the accounting system(s) used by Meisen and its affiliates reconciles to the information provided in the questionnaire responses.  Please prepare a fully translated chart of accounts at the most detailed level of the accounting codes.*

We reviewed how the company's accounting system is structured and how/where specific transactions are entered into the company's accounting records and how these accounts flow into the company's audited financial statement.  We received an explanation of the types of reports that are generated in the ordinary course of business.  The description of the company's accounting system corresponded to the description provided in the company's response.  *See* VE-2.  Meisen stated that it has used the Yonyou accounting software system since 2006, when the company was established.  Company officials further stated that Dalian Hechang Technology Development Co., Ltd. (Dalian Hechang) uses a simplified version of the same software.

2

We reviewed the chart of accounts and how it is organized.  Company officials stated that Meisen's accounting system follows Chinese GAAP.  We then identified where transactions, including the receipt of the investigated subsidies, are recorded.  The information corresponded to the information contained in the company's original and supplemental responses.  *Id.*  Meisen identified the following accounts as being the most relevant:

[

];

[

].

We performed a live examination of Meisen's chart of accounts to ensure that the company had provided a complete listing of accounts, and not those simply with activity in 2018.

**C.    Company History, Affiliations, Cross-ownership, and Corporate Structure**

   *1.    For Meisen, as well as its affiliate Hechang, and other POI shareholders, discuss and document:*

      *a.    corporate history, ownership, structure, and affiliations;*
      *b.    products produced, exported, and sold;*
      *c.    location of all offices and facilities.*

      *Have available **original** records that substantiate the information that was reported in the questionnaire responses.*

>   *2.    In addition to the companies identified above, be prepared to demonstrate that other companies identified in your original and supplemental affiliation responses are not involved in the production or export of subject merchandise, providing inputs used in the production of subject merchandise or similar downstream products, and have not transferred any subsidies to Meisen.*

For Meisen, we substantiated the information that was reported in the questionnaire responses by examining original documentation. *See* VE-3. Company officials provided background information regarding Meisen and its affiliates, the products produced and exported by the entities and their locations. *Id*. The company officials' description of the organizational, corporate structure, and operations of Meisen is consistent with the information provided in Meisen's original and supplemental questionnaire responses.

## D.    Sales and Export Information

>   *1.    Provide an overview of the sales process and document flow/accounting entries for sales of wooden cabinets and vanities and components thereof (cabinets and vanities) in the domestic market and to the United States. Prepare packages tracing one domestic sale and one export sale to Meisen's reported total sales. In addition, be prepared to demonstrate that Hechang had no sales during the POI.*

Company officials described the sales process for domestic and export sales. Our review of Hechang's information indicated that the company had no sales during the POI. We observed no inconsistencies with the information reported in Meisen's original and supplemental questionnaire responses. *See* VE-4.

>   *2.    For specific sales categories (i.e., total exports of subject merchandise to the United States, total exports of subject merchandise, total exports to the United States, total exports, sales of subject merchandise, and total sales), be prepared to tie the reported sales totals to the company's general ledger.*

>   *3.    For the POI, as well as other years of the AUL period (e.g., 2012-2017), be prepared to review the total sales and total export sales reported in the questionnaire responses and be prepared to tie those sales values from the responses to the overall sales values in the companies' general ledgers and financial statements. Have all necessary sales reconciliation worksheets prepared in advance.*

We traced the sales information reported in the company's response to the sales reconciliation worksheet and then tied the information to the company's financial statement. We traced the sales information to sales accounts sub-ledgers and ledgers and the main operating revenue account. During this examination, we confirmed that the reported sales information did not include sales to affiliates, service income, royalty income, and sales from merchandise produced outside of the country. We observed no inconsistencies with the information reported in the questionnaire responses. *Id*.

4.   *Demonstrate that the reported sales figures are on a free-on-board (FOB) factory basis for domestic sales and an FOB port basis for export sales and be prepared to tie transportation and insurance to the general ledger and financial statements. Prepare in advance any necessary worksheets to detail any adjustments for transportation and insurance charges to derive the FOB values.*

From the company's sales account for the POI, we selected one domestic and one export sale. We requested documentation showing that the sale terms were FOB factory for domestic sales and FOB port for export sales.  For the export sale, company officials provided the purchase order, commercial invoice, customs declaration, bill of lading, and bank payment advice (payment is on a rolling basis).  The documentation showed the terms as FOB port of export.  *Id.* at pages 35 and 36.

As a completeness check, we examined Meisen's sales expense ledger and had our interpreter review the line items.  We selected two that were labeled as "Payment for Seaport Fee" and "Export Agent Seaport Fee."  The source documentation for the first item noted that it was labeled "Agent Service Fee/Agent Seaport Fee" provided by [
    ]  We examined that service contract between Meisen and [                ] to see whether the fee covered any international freight charges and observed that it only covered inland freight and brokerage and handling.  We then examined the source documentation for the second item and noted that it pertained to the same activities.

For the domestic sales we selected for further review, company officials provided VAT invoices and payment receipts.  We noted that these were sales to Meisen's employees, so there is nothing to stipulate the sales terms.  Company officials stated that the employees could either pick the merchandise up themselves or hire a delivery company.  There was a total of four such sales during the POI, and we reviewed documentation for each, taking one as part of the exhibit.  *Id.*

## SECTION II:  SUBSIDY PROGRAMS TO BE EXAMINED

### A.   <u>Provision of Plywood for LTAR</u>

*For purchases of plywood during the POI, the verifiers will:*

1.   *Discuss how purchases are recorded in the company's accounting system from purchase order to payment and the documents/accounting entries that are generated in the process. Be prepared to discuss the diagram, provided in the response, which demonstrates the flow of information through accounting records for purchases of plywood.*

2.   *Reconcile the total amount of domestic purchases of plywood reported for the POI to the company's year-end financial statements.  Provide documentation for all beginning and ending inventory adjustments and prepare to show these adjustments in your company's accounting system.*

3.    *Trace individual purchase transactions (identified below) from the worksheet provided in your questionnaire response through the company's accounting system.  Have available all relevant documentation for the listed purchase numbers, i.e., contract, purchase order, supplier invoice, and proof of payment/receipts, and be ready to trace the purchases through the relevant financial accounts.*

   a.    *Plywood Purchase #817*
   b.    *Plywood Purchase #331*

*Please have the trace packages for these pre-selects ready at the start of verification.*

We reconciled Meisen's total plywood purchases during the POI.  We noted that the total value of plywood reported in the questionnaire response (*see* Exhibit 9 of Meisen's July 11, 2019, original response) matches the total inventory movement for plywood during the POI.  We confirmed that the company reported its purchases on the transaction-by-transaction basis that we specified in the original questionnaire.  We also traced two pre-selected purchases (OBS [            ]), as well as two on-site selected purchase (OBS [            ]).  We observed that the volume and value of those purchases, as well as the applicable VAT and delivery costs, were accurately reported, as all the information was properly reflected in the accounting system and invoices related to the purchases.  Meisen explained that payments for this material are made on a rolling basis.  So, for instance, the payment for OBS [    ] reflects the payment for the purchase in question and also covers the accounting vouchers for two other deliveries.  *See* VE-5 and VE-11.

B.    **Provision of Sawn Wood and Continuously Shaped Wood for LTAR**

*For purchases of sawn wood and continuously shaped wood during the POI, the verifiers will:*

1.    *Discuss how purchases are recorded in the company's accounting system from purchase order to payment and the documents/accounting entries that are generated in the process. Be prepared to discuss the diagram, provided in the response, which demonstrates the flow of information through accounting records for purchases of sawn wood and continuously shaped wood.*

2.    *Reconcile the total amount of domestic purchases of sawn wood and continuously shaped wood reported for the POI to the company's year-end financial statements.  Provide documentation for all beginning and ending inventory adjustments and prepare to show these adjustments in your company's accounting system.*

3.    *Trace individual purchase transactions (identified below) from the worksheet provided in your questionnaire response through the company's accounting system.  Have available all relevant documentation for the listed purchase numbers, i.e., contract, purchase order, supplier invoice, and proof of*

> *payment/receipts, and be ready to trace the purchases through the relevant financial accounts.*
>
>     *a.  Sawn Wood Purchase #785*
>     *b.  Sawn Wood Purchase #2327*
>
>         *Please have the trace packages for these pre-selects ready at the start of verification.*

We reconciled Meisen's total sawn wood purchases during the POI. We noted that the total value of sawn wood reported in the questionnaire response (*see* Exhibit 1 of Meisen's October 11, 2019, NSA response; *see also* Exhibit 8 of Meisen's July 11, 2019, original response) matches the total inventory movement for sawn wood during the POI.  We confirmed that the company reported its purchases on the transaction-by-transaction basis that we specified in the original questionnaire.  We also traced two pre-selected purchases (OBS [            ]), as well as two on-site selected purchases (OBS [            ]).  We observed that the volume and value of those purchases, as well as the applicable VAT and delivery costs, were accurately reported, as all the information was properly reflected in the accounting system and invoices related to the purchases.  We noted that the contract for OBS [    ] pertained to 2017.  Meisen explained that the materials were recorded in the warehouse delivery receipt on [            ], but they did not receive the invoice from the supplier until [            ].  Thus, to comply with Commerce's reporting requirements to submit all purchases invoiced during the POI, Meisen officials explained that they reported this delivery.  We also noted that the VAT invoices from the supplier showed the material labeled as "forestry products- birch boards."  We found no discrepancies.  *See* VE-6 and VE-12.

We asked to go to the purchasing manager's office, because she is the company official who is responsible for handling material purchases, including sawn wood.  We asked to review her e-mail communications with Meisen's suppliers.  The purchasing manager stated that they typically do not communicate with suppliers via e-mail but rather by phone or by WeChat.  Nonetheless, we did a live examination of her e-mail account and did keyword searches for "birch" and "maple" in both English and Chinese.  The search for "birch" turned up a quote from July 30, 2018, from a vendor named [            ] offering Russian-origin birch, with sample pictures attached.  Company officials stated that they were not impressed with the apparent quality of the wood and did not purchase any from this supplier.  *See* VE-15 for a printout of this e-mail.  The keyword search for "maple" did not produce any results.  We then asked to see the purchasing manager's WeChat communications.  We began with a keyword search for "maple" that produced three results.  Two of the results pertained to plywood purchases discussing material with one face of birch and one of maple.  The other pertained to oak samples that Meisen had requested from a supplier to consider using to build a custom-made cabinet for an order placed by a local court.  However, the supplier mistakenly sent them maple samples instead.  We next did a keyword search for "birch," which produced numerous results from various suppliers.  Our review of Meisen's records and the communications it had with its suppliers indicated that Meisen purchased only birch sawn wood.

C.    **Policy Loans to the Wooden Cabinets Industry**

> *For loans that were outstanding during the POI, the verifiers will:*

> 1. *Reconcile your company's audited, year-end balance sheet for 2018, with the outstanding loan balances indicated for January 1, 2018, and December 31, 2018, in the loan charts provided in the questionnaire response.  Have all necessary worksheets prepared in advance.*

> 2. *Reconcile your company's financial expenses paid as of December 31, 2018, as indicated in your year-end cash flow statement, with the amount of interest payments indicated for the POI in the loan chart provided in the questionnaire response.  Have all necessary worksheets prepared in advance.*

> 3. *Examine the loan application, loan agreement, and proof of payment (i.e., bank statements) for the following pre-selected loans:*

>    a.    *Loan #2*
>    b.    *Loan #6*

> *Please have the trace packages for these pre-selects ready at the start of verification.*

> 4. *Tie the POI payments (interest and principal) made against the loans, identified in item 3, to the accounting system accounts.*

Company officials provided an overview of Meisen's financing and documented how they qualified for the loans outstanding during the POI.  This explanation and information reconciled to the information provided in both the company and government responses.

We tied the loan chart provided in the response to the company's loan accounts.  We observed that some of the interest payments were booked in the fixed assets ledger rather than the financial expenses ledger.  Company officials explained that the loans in question were obtained to purchase machinery, so the company recorded the interest payment on the fixed assets ledger.  However, we noted that the purpose of all the loans, as stated in the response, was for "materials."  Company officials replied that "materials purchases" was just a general term noted on the loan contract, and that they did in fact use some of the loan amounts to purchase machinery.   In order to ensure that all loans were reported in the response, we then tied the outstanding balance of loans and/or interest payments from the company's loan accounts to the company's financial statements.  To ensure the accuracy of the loan terms and principal and interest payments, we tied selected entries in the loan chart provided in the response to loan contracts, entries in the company's loan and payment accounts and to invoices and payment receipts.  We also examined the loan contracts to confirm whether the loans were tied to particular products or markets. We observed that the loan contract for #2 stated that the purpose was for raw material purchases.

In conducting the individual loan traces, we observed no inconsistencies with the figures reported in the questionnaire responses.  *See* Exhibit 6 of Meisen's July 11, 2019, original response; *see also* VE-7 and VE-1.

**D.**   **Income Tax Programs**

*Article 28 Income Tax Deduction*

*Tax Offsets for Research & Development*

*For each income tax program under examination, the verifiers will:*

*1.   Discuss (a) an overview of the program and (b) eligibility criteria.*

*2.   Examine the certified/date-stamped income tax return and all schedules and appendices attached to it that were filed in the POI.  Be prepared to demonstrate that there were no amendments, audits, or other corrections to the tax returns.*

*3.   Examine, if applicable (a) copy of the application; (b) any necessary certificates; (c) approval documents; and (d) other source documentation (e.g., receipts, tax returns, journal entries, etc.) demonstrating the amount of the benefit received.*

*4.   Review how the company records the benefit in its accounting system, if at all.*

Company officials provided an overview of each program and documented how Meisen qualified for the programs.  This explanation and information reconciled to the information provided in both the company and government responses.  We reviewed the income tax return that was filed during the POI and confirmed the tax exemptions and/or reductions and the use of tax credits reported in the response to the income tax return.  We observed no inconsistencies with the information reported in the questionnaire responses.  *See* VE-8.

**E.**   **Grants**

*Miscellaneous Grants*

*For additional grants reported in Exhibit 15, verifiers will select certain grants at the beginning of verification.  For these grants, the verifiers will:*

*1.   Discuss the (a) application process and (b) eligibility criteria.*

*2.   Examine (a) copy of the application and (b) approval documents.*

*3.   Tie the receipt of assistance to accounting records and financial statements.*

Company officials provided an overview of each program and documented how Meisen qualified for the programs.  This explanation and information reconciled to the information provided in the company's response.

We tied the grant information provided in the response to the company's financial accounts.  In order to ensure that all grants were reported in the response, we then tied information from the response to the appropriate accounts based on the chart of accounts and then tied the balance from these accounts to the company's financial statements.  To further ensure the accuracy of the grant information reported in the response, we tied the grant information to payment accounts and to the original payment receipts and bank notes in Meisen's books and records.  We followed this procedure for the POI as well as for grants in certain other years within the AUL. *See* VE-9.  We observed no inconsistencies with the information reported in the questionnaire responses.

**F.**   **Provision of Electricity for LTAR**

> *For electricity payments made during the POI, the verifiers will:*
>
> *1.   Discuss the electricity usage of Meisen, and how payments are reflected in the companies' accounting systems.  Be prepared to discuss the diagram, provided in the response, which demonstrates the flow of information through accounting records for electricity purchases.*
>
> *2.   Examine documentation for electricity payments made during the POI, from invoice to payment receipt and then tie the payments to the accounting system:*
>
> *a.  December 2018*
>
> *Please have the trace packages for these pre-selects ready at the start of verification.*
>
> *3.   Tie the company's reported electricity rates paid to the tariff rate schedule of the electricity supplier.*

We traced the electricity purchase information reported in the company's response to the relevant account ledgers.  We confirmed the accuracy and completeness of the electricity purchases during the POI through an examination of electricity invoices, payment vouchers and bank receipts, account payables ledger, and the overhead expense account.  During this examination, we traced the electricity payments for the pre-selected month. We observed that the electricity payments were accurately reported in Exhibit 10 of Meisen's July 11, 2019, original response, as all the information was consistent with the underlying documentation and financial accounts.  Meisen further explained that some of its electricity expenses are allocated to the R&D department.  As there is no separate meter, the company stated that a certain percentage of the total electricity expense is allocated to R&D based on working hours.  In reviewing the subcomponent of electricity that Meisen allocates to R&D, we noted that the worksheet and supporting accounting records showed total R&D expenses of [          ] RMB; however, on

the 2018 income statement, the line for R&D expenses was blank.  We inquired about this, and company officials responded that R&D expenses are lumped into the overall "Administrative Expenses" line on its income statement of [          ] RMB.  Additionally, we tied the reported electricity rates paid by the company during the POI to the electricity supplier's tariff rate that was in effect during the period.  *See* VE-10.  We observed no inconsistencies with the information reported in the questionnaire responses.

## G.      Provision of Land for LTAR

> *For the land under examination, the verifiers will:*

> 1.      *Review (a) all land contracts/agreements and (b) payment documentation for all purchases/leases of land/land-use rights reported in the questionnaire responses.*

> 2.      *Examine the accounting system and other financial accounts to verify that all purchases/leases of land by Meisen were reported.*

We examined the company's records for original land and land-use rights contracts and certificates.  We did not discover any evidence of additional, unreported land or land-use rights contracts or certificates.  We tied the reported value for the company's land to its books and records.  We examined the original contracts, and traced Meisen's payments for land use rights from source documents to its intangible assets subledgers in the Yonyou accounting system.  We asked why Meisen received refunds on its land purchases, and company officials stated that the accountants who had handled the matter were no longer with the company.  Meisen did state that the payment slip from the bank for the refund did contain a note that the payment was to refund part of the amount that Meisen had paid for the land.  *See* VE-11.  We also obtained the accounting trace for the purchase of land from [                                    ], a private company.  *See* VE-11 and VE-1.

During our examination of this information, we discovered no instances of unreported land-use by the company. There were no inconsistencies with the information reported in the questionnaire responses and the minor correction.  *See* Exhibit 12 of Meisen's July 11, 2019, original response; *see also* VE-1.

## H.      Creditworthiness

> *For this program, the verifiers will:*

> 1.      *Examine worksheets demonstrating how you calculated the financial ratios and cash flow values submitted in the questionnaire response.  The worksheets should link the ratios to your audited financial statements and should detail any adjustments made to current assets or current liabilities.*

We reviewed the calculations and supporting documentation pertaining to how Meisen reported its financial ratios (2016, 2017, and 2018), as well as those for Hechang (only for 2018, as the company was established in mid-2017).  *See* Meisen's September 4, 2019, supplemental

response.  We observed that the package included the source documentation for most items, but not for pre-paid expenses.  We requested and obtained documentation for such expenses and added it to the package.  Meisen's explanation and information reconciled to the information provided in the company's responses.  *See* VE-14.

## SECTION III:  NON-USE OF OTHER SUBSIDY PROGRAMS

To determine that Meisen and its cross-owned affiliate did not use any other investigated subsidy programs and that the companies did not receive any other subsidies, during the course of the verification we reviewed the companies' tax return, general ledger accounts, financials, and other selected accounts from the chart of accounts.  Among the accounts that were examined:  (1) all accounts involving bank loans; (2) financial expense accounts; (3) all accounts involving receivables; (4) VAT accounts; (5) all tax accounts; (6) other income accounts; and (7) fixed asset accounts.  Our examination of these records and accounts provided no evidence that the company was receiving other subsidies.

We reviewed the company's business license and long-term investment account to determine where the company's facilities are located.  We saw no indication that the company has facilities located in any geographic regions to which certain subsidy programs reported as not used are limited.

We examined the following accounts to determine if Meisen received any other assistance from the Chinese government that it had not reported:

Account 6301 (non-operating income) for the entire AUL;

We noted certain entries that were labeled as "discipline violation fines" or as deductions to salaries.  We examined the documentation for these entries to confirm what they pertained to, and the records indicated that these entries related to instances when an employee, for example, would be late, leave early, or produce defective products.  We also noted an entry pertaining to Meisen selling one of the company's cars.  In reviewing the general ledger for this account for the entire AUL, we did not note any unreported grants.

Account 6051 (other business income) for 2016-2018;

We did a live examination of this account and noted that it almost exclusively pertained to scrap sales, and it had no activity prior to 2016.  Meisen stated that prior to 2016, they did not sell scrap.  In 2018, there was an entry pertaining to the [      ] RMB amount reported as a grant in Exhibit 15 of Meisen's original response.

Account 140303 (raw material-glue) for 2018;

We selected one purchase for each of the three suppliers noted in the ledger.  We observed that the VAT invoices identified the purchased materials as various types of glue (water-based, hot-melt, or white).

For the above completeness checks, we observed no inconsistencies with the information reported in the questionnaire responses.

We also toured Meisen's production facility.  We observed that the company's old workshop was empty and in the process of being dismantled.  We toured the company's new production facility, which was idle.  Company officials stated that since the preliminary determination in the antidumping duty investigation, Meisen had ceased production and laid off its employees.  At the raw materials receiving area, there was still a large amount of sawn wood boards being stored.  When queried, company officials stated that these were birch boards.  We asked how, if Meisen uses only birch boards, its products are marketed and sold as maple.  Company officials stated that it is an "unspoken rule" in the cabinets industry that companies will use birch but market their products as maple.

We inquired about the loans from Meisen's overseas affiliates and how they were misclassified as being all from the [                                                    ].  Company officials stated that the problem originated from an accountant misclassifying the borrowings under account 200501, whereas loans from its U.S. affiliates should be booked under 2241 (other accounts payable).  Company officials stated that they realized the mistake only when preparing Meisen's response to the supplemental questionnaire.  Meisen stated that it had borrowed money from six of its U.S. affiliates, and that as of 2019, it only had an outstanding balance with two of them, having repaid the others.  Meisen has since corrected the accounting entries in 2019.

We reviewed the original loan contracts between Meisen and its U.S. affiliates, as well as the accounting records and receipt of funds receipts from the bank.  We then reviewed the records pertaining to Meisen's repayment of the loans, as applicable.  We noted that the English translation of the company name on the loan contracts was "Dalian Meishen."  Company officials stated that this was probably do to the fact that the accountant who had prepared the loan contracts was from the south of China, and that southern Chinese cannot distinguish between certain sounds, like "s" versus "sh" when transliterating words, or that it could have been done by an employee from one of the U.S. affiliates.  Company officials stated that they could not be sure of the reason for the misspelling.  We did observe that the company's seal with the correct spelling was used on the signature pages.

We also met with one of the auditors, Mr. He Jianmin who audited Meisen's 2018 financial statement, as well as his supervisor, Mr. Zhang Shiguo.  We reviewed their certified accountant credentials and identifications.

We asked the auditors to explain how they produced the correction and to verify that it is fully consistent with Chinese GAAP.  The auditors explained that Meisen had a second-level account code for the [                                              ], and under that code, the company generated third- and fourth-level account codes, which included RMB loans and foreign currency loans, and that everything had been lumped together as pertaining to the [                            ].  The auditors explained that to make the correction, they examined Meisen's foreign loan registration certificates, foreign currency loan contracts, foreign loan extension contracts, a resolution from the Board of Directors pertaining to the correction of the

financial statement, and an application letter from Meisen to the accounting firm regarding the correction.  *See* VE-17.

We inquired as to how loans from overseas affiliates would be properly categorized under Chinese GAAP.  The auditors explained that it could be done one of two ways:  (1) as short-term loans; or (2) as other payables.  The auditors explained that in making and certifying the correction, they followed the China Certified Accountant Auditing Codes Number 1332-Subsequent Events (December 23, 2016 Revision).  We reviewed the section pertaining to the correction of the auditing report after the financial statement has been issued.  *Id*.

## SECTION IV:  INSPECTION OF CERTIFICATIONS

We examined the original version of all certifications of accuracy filed with submissions of factual information in this proceeding.  We observed no discrepancies.

# APPENDIX I

## Verification Exhibits (VE)*

*all of the listed exhibits are proprietary documents*

| VE-1 | Minor Corrections |
|------|-------------------|
| VE-2 | Chart of Accounts |
| VE-3 | Company History/Affiliations |
| VE-4 | Sales Process/Denominators/FOB Basis |
| VE-5 | Plywood for LTAR Pre-Selected Transactions |
| VE-6 | Sawn Wood and Continuously Shaped Wood for LTAR Pre-Selected Transactions |
| VE-7 | Policy Loans for the Wooden Cabinets Industry |
| VE-8 | Income Tax Programs |
| VE-9 | Grants |
| VE-10 | Electricity for LTAR |
| VE-11 | Land for LTAR |
| VE-12 | Plywood for LTAR Surprise Transactions Surprise Transactions |
| VE-13 | Sawn Wood and Continuously Shaped Wood for LTAR Surprise Transactions |
| VE-14 | Creditworthiness |
| VE-15 | Completeness |
| VE-16 | Loans from U.S. Affiliates |
| VE-17 | Auditing Correction Documentation |

Barcode:3927445-01 C-570-107 INV - Investigation  -

# APPENDIX II

## LIST OF PARTICIPANTS

**Company Officials:**

| | |
|---|---|
| Zhao Yi | Vice General Manager, Meisen |
| Wang Lianhua | CFO, Meisen |
| Dong Xiaohui | Accountant, Meisen |
| Liu Qingjie | Accountant, Meisen |
| Du Ying | Export Manager, Meisen |
| Xie Lanlan | Purchasing Manager, Meisen |

**Auditors:**

| | |
|---|---|
| Mr. He Jianmin | Auditor, Dalian Ruihua Certified Public Accountants Co. Ltd. |
| Zhang Shiguo | Supervisor, Dalian Ruihua Certified Public Accountants Co. Ltd. |

**Legal Counsel:**

| | |
|---|---|
| Stephen Brophy | Attorney, Husch Blackwell |
| Frank Zhang | Partner, Beijing Yingke Law Firm |
| Liu Yin | Partner, Beijing Yingke Law Firm |
| Sun Xuefei | Legal Assistant, Beijing Yingke Law Firm |

**Department of Commerce Officials**:

| | |
|---|---|
| Matthew Renkey | Senior International Trade Compliance Analyst |
| Nathan James | International Trade Compliance Analyst |
| Zhang Chunjiang (Nicole) | Interpreter |

Filed By: Benito Ballesteros, Filed Date: 1/8/20 9:52 AM, Submission Status: Approved

16