## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD. | ) |
| | ) |
| Plaintiff, | ) |
| | )   Court No. 20-00110 |
| CABINETS TO GO, LLC and | ) |
| THE ANCIENTREE CABINET CO., LTD., | ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| AMERICAN KITCHEN CABINETS ALLIANCE, | ) |
| | ) |
| Defendant-Intervenors | ) |
| | ) |

### ORDER

Upon consideration of Plaintiff's Comments in Opposition to the Remand, and all other papers and proceedings, it is hereby:

**ORDERED** that Plaintiff's request for a further remand is **GRANTED**; and it is further

**ORDERED** that this case is remanded to the U.S. Department of Commerce in accordance with the Court's decision.

**SO ORDERED.**

**Date: _____, 2022**                     _____
**New York, New York**                                         **Senior Judge**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| _____ ) | |
| DALIAN MEISEN WOODWORKING CO., LTD. ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 20-00110 |
| CABINETS TO GO, LLC and ) | |
| THE ANCIENTREE CABINET CO. , LTD., ) | **PUBLIC VERSION** |
| ) | Business Proprietary |
| Plaintiff-Intervenors, ) | Information removed at pages 13-14 |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| AMERICAN KITCHEN CABINETS ALLIANCE, ) | |
| ) | |
| Defendant-Intervenors ) | |
| ) | |
| _____) | |

**COMMENTS IN OPPOSITION TO REMAND RESULTS
ON BEHALF OF DALIAN MEISEN WOODWORKING CO., LTD.**

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

1801 Pennsylvania Ave., NW
Suite 1000
Washington, D.C. 20006
(202) 378-2357
Jeffrey S. Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  September 6, 2022

PUBLIC VERSION

# TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

SUMMARY OF ARGUMENT ...................................................................................1

STANDARD OF REVIEW ........................................................................................3

BACKGROUND ........................................................................................................4

ARGUMENT ..............................................................................................................6

   A.  Commerce's Verification Procedures Are Not Practical and Constitute an Abuse of Discretion ................................................................................................................6

   B.  The Information Supplied by Meisen Was Sufficient to Determine Non-Use ...........11

CONCLUSION ...........................................................................................................17

**PUBLIC VERSION**

## TABLE OF AUTHORITIES

### Cases

*Changzhou Trina Solar Energy Co. v. United States*, Slip Op. 18-167, 2018 WL 6271653 (CIT Nov. 30, 2018) ................................................................................................................. 6

*Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995) ............ 2

*Changzhou Trina Solar Energy Co. et al. v. United States*, Slip Op. 19-137, 2019 WL 5856438 (CIT Nov. 8, 2019) .............................................................................................................. 6

*Changzhou Trina Solar Energy Co. et al. v. United States*, Slip Op. 19-143, 2019 WL 6124908 (CIT Nov. 18, 2019) ............................................................................................................ 6

*Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312 (2017) .................... 6

*Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312 (Ct. Int'l Trade 2017) ...................................................................................................................................... 6

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (2018) .................... 6

*Changzhou Trina Solar Energy Co. v. United States*, 41 CIT __, 255 F. Supp. 3d 1312 (2017 .... 6

*Changzhou Trina Solar Energy Co. v. United States*, 42 CIT __, 352 F. Supp. 3d 1316 (2018)... 6

*Changzhou Trina Solar Energy Co. v. United States*, Slip Op. 18-167, 2018 WL 6271653 (CIT Nov. 30, 2018) ................................................................................................................. 6

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ...................................................................................................................................... 3

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)......................... 3

*Clearon Corp. v. United States,* 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) .............................. 6

*Clearon Corp. v. United States,* 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020) .............................. 6

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ............................................................... 3

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ...................................... 3

*Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 27 C.I.T. 1059, 1064 (2003) ........... 7

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (2018)................................................. 6

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)........................ 6

*Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019) ........................ 6

*Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019) ........................ 6

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335, 1342–43 (Ct. Int'l Trade 2019) .......... 6

*Guizhou Tyre Co. v. United States*, 42 CIT __, 348 F. Supp. 3d 1261 (2018) ............................ 6

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019)................................................................................................................................ 6

*Max Fortune Indus. Co. v. United States*, 37 C.I.T. 549, 552 (2013)............................................ 7

*Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997).................................. 8

*Olympic Adhesives v. United States*, 899 F. 2d 1565, 1573 (Fed. Cir. 1990).............................. 12

*SolarWorld Ams., Inc. v. United States*, 229 F. Supp. 3d 1362 (Ct. Int'l Trade 2017)................. 6

*SolarWorld Ams., Inc. v. United States*, 41 CIT __, 229 F. Supp. 3d 1362 (2017) ...................... 6

*Tianjin Mach. Imp. & Exp. Corp. v. United States,* 28 CIT 1635, 1640, 353 F.Supp.2d 1294, 1301 (2004)........................................................................................................................................ 7

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014)........................................................................................................................................ 3

*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019) . 6

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................................ 2

**Other Authorities**

*Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 57809 (October 19, 2021), and accompanying Issues and Decision Memorandum at Comment 5 ............................ 10

**PUBLIC VERSION**

*Forged Steel Fittings from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 35498 (June 10, 2022) and accompanying Issues and Decision Memorandum at Comment 2 ...................................................................................... 10

**PUBLIC VERSION**

## INTRODUCTION

On behalf of Dalian Meisen Woodworking Co., Ltd. ("Meisen" or "Plaintiff"), and pursuant to this Court's May 12, 2022, Opinion and Order, ECF No. 78, we hereby submit Plaintiff's comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Results"), filed by the U.S. Department of Commerce ("Commerce") on August 5, 2022 (ECF No. 86) submitted in response to the U.S. Court of International Trade's remand of Commerce's countervailing duty determination in Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11962 (February 28, 2020) ("Final Determination"). Commerce filed the administrative record for the Final Remand Results on August 19, 2022, ECF No. 87.[1]  These comments are timely filed within 30 days of the filing of the Final Remand Results, in accordance with the Court's Order and USCIT Rule 6(a)(1).

## SUMMARY OF ARGUMENT

In its Final Remand Results, Commerce continues to base the countervailing duty rate for the Export Buyer's Credit Program on adverse facts available.  Having repeatedly failed to convince the U.S. Court of International Trade that it can use adverse facts available to presume use of the Export Buyer's Credit program based on the Government of China's (GOC) failure to fully cooperate and despite evidence of non-use in the form of customer declarations, Commerce now has found yet another "basis" to impose the adverse facts available rate that it desires.  In its

---

[1] References to the administrative record for the *Final Remand* are shown as "RCD" (confidential) and "RPD" (public). References to the initial administrative record submitted to the Court on July 11, 2020, ECF No. 25, are shown as "CD" (confidential) and "PD" (public).

remand, the Court provided Commerce with the option of finding "a practical solution" to verify the non-use information on the record.   Instead, Commerce has created questions for Plaintiff designed to create artificial "gaps in the record" by imposing requirements so onerous as to make a complete response out of reach for most respondents.    The approach created by Commerce is contrary to the procedures typically followed by Commerce and are not necessary to confirm non-use.  As a result, Commerce's procedures are not a practical solution to the issue before this Court and are yet another abuse of discretion.

The information submitted by Meisen in the original investigation and the remand proceeding was more than sufficient to establish non-use and to provide Commerce with a reasonably alternative method to confirm non-use.  If Commerce continued to have questions about the approach or needed additional information, it could have asked follow-up questions to the information submitted by Meisen in its initial Export Buyer's Supplemental Questionnaire response.  Instead, Commerce unreasonably insisted that there was only one way that it could determine non-use.

Ultimately, Commerce's complaint seems to be that Meisen's U.S. customers/importers did not provide more information on certain types of financing outstanding during the period of investigation, such as vehicle loans or loans from shareholders.  However, even accepting that such information is missing from the record, such forms of financing are not material to Commerce's decision as they cannot rationally be connected to the Export Buyer's Credit program, which relates to loans provided for the purchase of Chinese origin goods and services. We respectfully request that the Court either order Commerce to accept the information on the record as sufficient to demonstrate non-use or to remand the case again with instructions to

develop a reasonable verification procedure.  This game by Commerce has gone on for far too long.

## STANDARD OF REVIEW

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995). Substantial evidence means that there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court also reviews Commerce's remand redeterminations for compliance with the Court's remand order. *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (*quoting Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008).

In judging the Department's interpretation of a statute, the Court does so under the framework established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Under Chevron, the Court first asks whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry ends; the Court "must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (*quoting Chevron*, 467 U.S. at 842-43). Commerce must act reasonably and may not be arbitrary and capricious. *See e.g., Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("Commerce's decision will be set aside if it is arbitrary and capricious.").

3

## BACKGROUND

The Court remanded Commerce's *Final Determination* with regard to its application of an adverse facts available rate for the Export Buyer's Credit Program. The court held that substantial evidence did not support Commerce's finding under § 1677e(a) that the use of "facts otherwise available" was supported because necessary information was missing from the record. *See Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Opinion 22-45 (CIT May 12, 2022) at 15. The Court found that both respondents reported that their customers did not take advantage of the program and supported this fact by submitting declarations from their U.S. customer. Id. The declarations showed that Meisen's U.S. customers did not use the program to finance their purchases and there was no record evidence to the contrary. Id. Therefore, there was no gap in the record with respect to non-use and there was evidence on the record supporting non-use of the program. The Court remanded the issue to Commerce to either (1) find a practical solution to verify the non-use information on the record, such as the reopening of the record to issue supplemental questionnaires to respondents and their U.S. customers (*see supra* note 9); or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly. Id. at 18 and 21.

After remand, Commerce issued Meisen and other parties a supplemental questionnaire in which it required that all of Meisen's U.S. customers/importers report an extensive amount of information and documentation, including "all loans/financing to each of your U.S. importers/customers that were received and/or outstanding during the {POI}, regardless of whether you consider the financing to have been provided under the {EBC} program," and requested that the parties "{s}ubmit the information requested in the Loan Template as an attachment to your response and in electronic format using Microsoft Excel." Letter from

4

USDOC to Husch Blackwell Pertaining to Meisen EBC Supp Questionnaire, dated May 19, 2022 ("Export Buyer's Supplemental Questionnaire") (RPD 1).

Meisen responded to the Export Buyer's Supplemental Questionnaire with extensive information from all of its U.S. customers/importers, including information on all of their financing during the period of investigation.  Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Meisen and the J&K Companies EBC Supp. QR., dated June 10, 2022 (RCD 1-5, RPD 13).   This included their tax returns and trial balances where the value of the financing and interest expenses were recorded.   Id. Moreover, they provided a description of the loans and interest expenses reported thereon, most of which relate to loans from shareholders or vehicle financing.  Id.

Commerce subsequently issued Meisen a 2nd Supplemental Export Buyer's Questionnaire, in which it insisted that Meisen submit a response to a loan template created by Commerce, tie the customer's other information to the loan template, and provide documentation on the five largest loans reported on the loan template.   Letter from USDOC to Husch Blackwell Pertaining to Meisen, Second Supplemental Questionnaire, dated June 15, 2022 (RPD 15). Meisen responded to the 2nd Supplemental Questionnaire by providing the loan template indicating that Meisen's U.S. importers/customers had no loans to report.   Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Dalian Meisen Woodworking Co., Ltd. and the J&K Companies, 2nd Suppl EBC QR, dated June 21, 2022 (RPD 18).

In the Final Remand Results, Commerce concluded that Meisen's responses to the supplemental questionnaire was not sufficient and that this rendered futile any further efforts to verify non-usage.   Final Remand Results at 21.  Commerce, therefore, continued to base the countervailing duty rate for the Export Buyer's Credit Program on adverse facts available.

## ARGUMENT

### A. Commerce's Verification Procedures Are Not Practical and Constitute an Abuse of Discretion

Commerce spends the first six pages of the Final Remand Results describing the Government of China's (GOC) failure to cooperate in the investigation with respect to the Export Buyer's Credit Program.  Final Remand Results at 8-13.  However, this case is one of a long line of cases in which the Court has held that the missing information from the GOC was not necessary to Commerce's determination of non-use and that other information on the record, namely customer declarations, detracted from Commerce's finding that a benefit had been received. *See e.g. Clearon Corp. v. United States,* 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020); *see also Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335, 1342–43 (Ct. Int'l Trade 2019) *citing Changzhou Trina Solar Energy Co. et al. v. United States*, Slip Op. 19-143, 2019 WL 6124908 (Ct. Int'l Trade Nov. 18, 2019); *Changzhou Trina Solar Energy Co. et al. v. United States*, Slip Op. 19-137, 2019 WL 5856438 (Ct. Int'l Trade Nov. 8, 2019);  *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019); *Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade 2019); *Clearon Corp. v. United States,* 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019); *Changzhou Trina Solar Energy Co. v. United States*, Slip Op. 18-167, 2018 WL 6271653 (Ct. Int'l Trade Nov. 30, 2018); *Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (2018); *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018); *Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312 (Ct. Int'l Trade 2017); *SolarWorld Ams., Inc. v. United*

*States*, 229 F. Supp. 3d 1362 (Ct. Int'l Trade 2017).   The Court in this case likewise remanded the issue to Commerce and ordered Commerce to either (1) find a practical solution to verify the non-use information on the record, such as the reopening of the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program and recalculate the all-others rate accordingly.

Commerce, however, has not even attempted to find a "practical solution" to verify the non-use information on the record.   Having again failed to convince the Court that the GOC's failure to cooperate created a gap in the record that justified the application of facts available with an adverse inference in spite of the declarations of non-use submitted by Meisen's customers, Commerce has now resorted to creating gaps in the record by crafting a supplemental questionnaire so onerous and burdensome that the vast majority of respondents will never be able to fill out the forms in the manner requested.   When provided by Meisen with a practical approach to obtain the same information, Commerce refused the practical approach. Commerce's insistence that respondents supply all of the information requested in the supplemental questionnaire, including the information for the loan template, and its determination that it could not verify non-use without all of the requested information is not reasonable and constitutes an abuse of discretion.

The Court "reviews Commerce's verification procedures for an abuse of discretion." *Max Fortune Indus. Co. v. United States*, 37 C.I.T. 549, 552 (2013) citing *Tianjin Mach. Imp. & Exp. Corp. v. United States,* 28 CIT 1635, 1640, 353 F.Supp.2d 1294, 1301 (2004).   The Court has recognized that Commerce's discretion in establishing verification procedures "presumes the verifiers' good faith" and that "{o}ne can postulate a verification request so unreasonably

PUBLIC VERSION

burdensome as to be arbitrary or capricious. *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 27 C.I.T. 1059, 1064 (2003).  This is such a case.   The Court is very clear that it is looking for a "practical solution to verify the non-use information" and has not specified any one format.

The Department requests that the U.S. importers/customers complete a loan template, which requires information on every loan or other form of financing outstanding during the period of investigation ("POI"), apparently regardless of source or purposes.  This loan template required information from each U.S. customer/importer on every loan outstanding during the POI, including every lender, date of loan agreement, date of loan receipt, purpose of loan, initial amount of loan, currency of loan, life of loan, whether it is fixed or variable, interest rate in loan agreement, dates and amounts of every principal payment, dates and amounts of every interest payment, principal balance to which each interest payment applies, and total number of days each interest payment covers.   Data from USDOC to Husch Blackwell Pertaining to Meisen, Loan Template (RPD 2).

Commerce also required each U.S importer/customer to submit an extensive amount of documentation, including their chart of accounts, income statements and balance sheets, trial balance or general ledger, a reconciliation of interest expenses and loan amounts to the general ledger, and documentation on the five largest loans of every U.S. customer/importer.  Export Buyer's Supplemental Questionnaire (RPD 1).  Moreover, all of this information had to be submitted in around 30 days, as can be seen when the Department denied Meisen's last request for an extension of time.  Memo from USDOC to File Pertaining to Meisen, Denies Ext. of Supplemental Questionnaire Response Deadline (RPD 17).

Requiring parties to submit such an extensive amount of information upfront is a departure from normal verification procedures.  Commerce normally conducts verification using a "spot check" methodology, which has been consistently approved by the courts.  *See, e.g.*, *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997).  When Commerce verified Meisen's response with respect to Policy Loans, Commerce only reviewed loan documents for two loans, not all.  Verification of the Questionnaire Responses of Dalian Meisen Woodworking Co., Ltd., dated January 7, 2020, at 8 (CD 545, PD 809).  Commerce could have followed its usual practice in this case by, for example, using such a spot check methodology by asking for a sample of the information from a random sample of the U.S. customers/importers.  Commerce could have conducted such a random sampling at the outset or could have used the information Meisen submitted in its supplemental Export Buyer's Credit questionnaire responses to conduct such a random sampling of those U.S. importers/customers whose documents indicated that they had received any form of loans or financing during the POI.   The Department, however, has insisted that Meisen must submit all of the requested information or face total adverse facts available.   It has become apparent that the Department has designed an approach designed to make customers "fail."  For example, while Chinese companies have to submit a loan template as part of their questionnaire response regarding any Policy Loans received, they are not required to submit all of the documentation requested by Commerce in this case.

Commerce argues that they are not required to examine or verify all programs in an identical manner.  Final Remand Results at 28.   However, Commerce must have a valid explanation for treating its examination and verification of programs differently.  Otherwise, their actions are arbitrary and capricious.  Commerce claims that this program is different because non-use has to be demonstrated in a manner that overcomes the reporting failures of the GOC.  Id.   Commerce, however, does not need the

GOC's cooperation to verify that Meisen's U.S. customers/importers did not use the program.  As argued below, the information supplied by Meisen was sufficient to demonstrate non-use or at least provided Commerce with a clear path to seeking additional relevant information to demonstrate non-use.

Commerce also rejects the use of a "spot check" methodology stating that the purpose of verification is to confirm the accuracy of information on the record, not to provide an additional opportunity to provide information that the party declines to provide during the course of the proceeding. Final Remand Results at 30.  Commerce could have issued a more reasonably drafted supplemental questionnaire and used a more reasonable verification procedure and still confirmed non-use.   There was no need for Commerce to design the process in the way it did, other than to ensure most respondents could not meet the burden.

Commerce also fails to account for the fact that this case is on remand because of Commerce's failure to follow the law and to confirm non-use in the original investigation.   During the original investigation, Commerce would have had more time to implement a reasonable spot check methodology. Upon remand, Commerce was required to find a "practical" and reasonable method of verification in the limited time provided by the remand order, or to have requested an extension of the remand deadline. Commerce argues that it provided Meisen with 33 days to respond to the request for information and that this was more than sufficient since it typically provides respondents with 37 days to respond to an entire CVD questionnaire.   Final Remand Results at 28.  However, the submission of the CVD questionnaire in an original investigation is not the end of the investigation.   Commerce will issue supplemental questionnaires and respondents will have more time to perfect the record in cooperation with Commerce's requests for information.  In this case, Meisen had 33 days and no more time to create a perfect record in response to an unreasonably burdensome request for information from Commerce.

Finally, Commerce cites to two cases in which it has followed this procedure and found non-use.  Final Remand Results at 14 citing *See Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Affirmative Countervailing*

*Duty Determination*, 86 Fed. Reg. 57809 (October 19, 2021), and accompanying Issues and

Decision Memorandum at Comment 5 and *Forged Steel Fittings from the People's Republic of*

*China: Final Results of Countervailing Duty Administrative Review; 2019*, 87 Fed. Reg. 35498

(June 10, 2022) and accompanying Issues and Decision Memorandum at Comment 2.   Meisen

does not claim that it is impossible for all companies to meet the reporting requirements, but

certainly most companies will not be able to do so, particularly those with a large number of U.S.

customers/importers, such as Meisen, which was reporting for 16 companies.


   **B.  The Information Supplied by Meisen Was Sufficient to Determine Non-Use**

   Most importantly, all of the U.S. importers/customers of Meisen provided extensive

documentation in response to the Department's supplemental questionnaire, which included

information on all of their financing during the period of investigation. Response from Husch

Blackwell LLP to Sec. of Commerce Pertaining to Meisen and the J&K Companies EBC Supp.

QR., dated June 10, 2022 (RCD 1-5, RPD 13).  This included their tax returns and trial balances

where the value of the financing and interest expenses were recorded. Id.  Moreover, they

provided a description of the loans and interest expenses reported thereon, most of which relate

to loans from shareholders or vehicle financing and certified to the accuracy of this information.

Id.  Commerce does not suggest that even one of those loans did, or even could have, benefited

from the EBC program.

   Nevertheless, the Department finds this information insufficient, due to form rather than

content, either to demonstrate non-use or to warrant the use of an alternative verification

methodology. The Department, focusing on form over substance, faults Meisen for not providing

a complete loan template.  Final Remand Results at 29.  Commerce claims that a complete

response to the loan template is necessary to properly verify non-use of the program.  Final

Remand Results at 18.  First, while Commerce explains how the loan template fits into its intended method of verification (Final Remand Results at 18-19), it does not explain why this methodology is the only way or the most reasonable way to verify non-use for this program or how it constitutes a practical solution to verify non-use.   Non-use could have been verified in many ways, including through a spot-check methodology, or by asking follow-up questions on the information supplied by Meisen.  Commerce, however, has chosen the most onerous methodology possible which is not reasonable and constitutes an abuse of discretion.

Second, Meisen did submit the complete loan template in its 2nd supplemental questionnaire response, which indicated that it did not have any relevant forms of loans or financing. Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Dalian Meisen Woodworking Co., Ltd. and the J&K Companies, 2nd Suppl EBC QR, dated June 21, 2022 (RPD 18).  In *Olympic Adhesives v. United States*, 899 F. 2d 1565, 1573 (Fed. Cir. 1990), the Court held that "No …is not a refusal to provide data. If there is no data, 'No' is a complete answer." Commerce's issue seems to be that Meisen did not report additional information on certain non-traditional forms of financing in the loan template.  Final Remand Results at 19 and 29. However, the Department fails to explain how any of the financing at issue could possibly be related to the Export Buyer's Credit Program.   As Meisen explained, it only excluded "loans from shareholders, loans between related parties, vehicle or property financing, and any transactions that were not related to actual loans or financing, such as prepayments to suppliers or interest expenses on credit card balances."   Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Meisen and the J&K Companies EBC Supp. QR., dated June 10, 2022 (RCD 1-5, RPD 13) and Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Dalian Meisen Woodworking Co., Ltd. and the J&K Companies, 2nd Suppl EBC QR, dated

June 21, 2022 (RPD 18).  Moreover, Meisen supplied further detailed descriptions of these loans/financing in its initial supplemental response:

- [

   ].

- [

   ].

- [

   ]

- [

   ].  While this is not a loan we point it out in the interest of full transparency.

- [

   ]

- [

   ]

- [

   ].

- [

]

Response from Husch Blackwell LLP to Sec. of Commerce Pertaining to Dalian Meisen

Woodworking Co., Ltd. and the J&K Companies, 2nd Suppl EBC QR, dated June 21, 2022 (RPD

18).   As defined by Commerce, Export Buyer's Credits are provided by the Chinese Export-

Import Bank to finance the purchase of Chinese goods and services:

> China's Export-Import Bank also provides Export Buyers' Credits to purchasers
> of Chinese exports. As explained on the China Export-Import Bank's website:
> "The Bank provides export buyers' credit to foreign companies for their import of
> Chinese product, technology and service.".

See Initiation Checklist, dated March 29, 2019 (CD 35, PD 89).   None of the

loans/financing described above can reasonably be considered as related to the program

and Commerce has not explained how these loans could possibly to relevant even if

additional information were provided.    It is not even clear how such "loans" could be

reported on the loan template since the template seems designed for traditional bank

loans.

The Department claims that the information of non-use provided did not "leave

Commerce with a path towards further investigating, completely verifying, or ultimately

determine non-use of this program for either respondent." Final Remand Results at 16.

However, the documents and information submitted left the Department with a clear path

forward.  Meisen explained that its U.S. importers/customers did not keep a chart of accounts

and did not have audited financial statements or balance sheets. Response from Husch

Blackwell LLP to Sec. of Commerce Pertaining to Meisen and the J&K Companies EBC

Supp. QR., dated June 10, 2022 (RCD 1-5, RPD 13).  Therefore, Meisen submitted their

income tax returns and trial balances, which recorded any loans of financing outstanding

during the period of investigation.  Id.  As discussed above, Meisen also supplied further detailed descriptions of these loans/financings.

The Department could easily have reviewed the income tax returns and trial balances and Meisen's explanations, identified any loans or interest expenses, and asked follow-up questions or requested additional documentation on specific transactions.   The use of its well-established verification techniques would have been in accordance with the spot-check methodology followed by Commerce in other contexts.  But it refused to take this path forward and instead turned to its well- trodden path of the use of adverse facts available.

Even absent an alternative verification methodology, the evidence on the record is sufficient to establish non-use.  In this case, all of Meisen's U.S. customers/importers submitted declarations of non-use in the original investigation.  The information submitted by Meisen's U.S. customers/importers in this remand also evidence no use of the Export Buyer's Credit program.  The only gaps in the record are the gaps created by Commerce through its use of an onerous and totally unreasonable information requests and verification procedure.  All of the information Commerce needed to conclude that Meisen did not benefit from the program is on the record and the information allegedly not supplied by the GOC or Meisen's U.S. customers/importers was not necessary.  There is nothing on the record providing a shred of evidence, as opposed to rank speculation, that the program was used by any Meisen customers.  Commerce had a clear path to find non-use by accepting the declarations and other information submitted by Meisen and its U.S. customers/importers, which was an option provided by the Court in its remand order.

 In fact, simple declarations of non-use are sufficient, and consistent with the Department's practice with respect to other programs.   The Departments has always permitted

respondents to state that they do not use a particular subsidy program without providing any additional evidence of this non-use.   As but one example, Meisen stated in its original questionnaire response that it did not benefit from the Export Seller's Credits.   Meisen's Section III Questionnaire Response, dated July 11, 2019 at 40, (CD 195-218, PD 500).   Absent any contradictory evidence that this program was used, Commerce did not calculate any benefit for Meisen.   In this case, Meisen's U.S. importers/customers certified to non-use and none of the substantial amount of information or documentation on the record contradicts those assertions.

At this juncture, based on the record of this case, and the numerous appeals of other similar cases involving EBC loans, it is apparent that Commerce is either incapable or unwilling to find a practical approach to verifying non-use in the case of ECB loans, while being perfectly capable to finding approaches to verify non-use for other kinds of subsidies. Meanwhile, both exporters and importers are being forced to spend massive amounts of money to appeal these csses and pay duty deposits because of Commerce's failure.  The adage that justice delayed is justice denied applies to this case as much as any that has come before this Court. In light of these facts, we respectfully request that the Court order Commerce to accept the information on the record as sufficient to demonstrate non-use and issue a final determination finding non-use of EBC for Meisen.   We recognize that alternatively the Court could remand the case again with instructions to develop a reasonable verification procedure, but we do hope that at long last Commerce's ignoring of the law and the Court's decision on EBC will finally end.

PUBLIC VERSION

## CONCLUSION

Thus, for the reasons above, we respectfully request that the Court remand the case to Commerce.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Nithya Nagarajan
Stephen W. Brophy
**Husch Blackwell LLP**
1801 Pennsylvania Ave., NW
Suite 1000
Washington, D.C. 20006
(202) 378-2409
Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiff Dalian Meisen Woodworking Co., Ltd.*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this submission

complies with the word limitation requirement.  The word count for this submission, as

computed by Husch Blackwell's word processing system Microsoft Word, is 4,904 words.

/s/ Jeffrey S. Neeley

Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiff Dalian Meisen*
*Woodworking Co., Ltd.*