# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: The Honorable Richard K. Eaton, Senior Judge**

|   |   |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) PUBLIC VERSION ) |
| CABINETS TO GO, LLC, and THE ANCIENTREE CABINET CO., LTD. | ) Ct No. 20-00110 ) ) ) |
| Plaintiff-Intervenors | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) ) |
| Defendant-Intervenor. | ) ) |

## PLAINTIFF-INTERVENOR THE ANCIENTREE CABINET CO., LTD.'s REMAND COMMENTS

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W. 20005
Tel: (202) 783-6900
email: gmenegaz@dhlaw.com
*Counsel to The Ancientree Cabinet Co., Ltd.*

*Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

Dated: September 6, 2022

PUBLIC VERSION

# TABLE OF AUTHORITIES

**Cases**

*Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019) ............... 7

*Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) ............... 7

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021) ................. 8

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) .................................................................................................................................. 4

*Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 519 F. Supp. 3d 1224 (2021) ...... 5

*Risen Energy Co. v. United States*, 477 F. Supp. 3d 1331 (Ct. Int'l Trade 2020) ....................... 6-7

**Statutes & Regulations**

19 U.S.C. § 1677e(a) ................................................................................................................. 7-8

Plaintiff-intervenor The Ancientree Cabinet Co., Ltd. ("Ancientree") comments on the Department's Remand Results. *See* Remand Results (August 5, 2022); ECF 86; *see also Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022). The CIT remanded one issue to the Department, finding that the Department's inclusion of an adverse facts available rate for the Export Buyer's Credit ("EBC") program when calculating individual countervailing duty rates for Meisen and Ancientree is not supported by substantial evidence and is otherwise not in accordance with law. Slip Op. 22-45 at 18. Citing to the record information of non-use by the respondents' customers the Court ordered the Department to either "(1) find a practical solution to verify the non-use information on the record, such as the reopening of the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly." *Id*. at 21.

On remand, the Department issued a supplemental questionnaire to Ancientree, requesting very expansive and highly confidential information from all of their unaffiliated customers. This questionnaire requested information on the unaffiliated customers' outstanding financing during the POI, documentation for the largest five loans/financing, additional questions regarding the application/process of obtaining EBC financing, and requests for several confidential documents including the chart of accounts, audited income statements, trial balance ledger, and tying loan and expense amounts to these documents. *See* Dep't EBC Supplemental Questionnaire (May 19, 2022); Rem. PR3. In counsel's experience, this was an unprecedented request for sensitive financial information from customers in any market in any countervailing duty case.

Ancientree contacted all 27 of its unaffiliated U.S. importers/customers promptly after receiving the Department's questionnaire and encouraged all customers to respond to questions in this supplemental questionnaire. Despite the confidential and burdensome and dated nature of this information, Ancientree was able to obtain responses from customers accounting for the vast majority of Ancientree's U.S. sales in 2018. Cooperative customers account for over 90% of Ancientree's POI exports by quantity and by value. *See* Ancientree Supp EBC Qre (June 13, 2022) at Exhibit 1; Rem. CR6-15, Rem. PR14.

Despite these best efforts and the substantial additional information on the record which only supported the customer's statements all long that they did not apply, use, or benefit from the EBC program, the Department found that because not all of Ancientree's customers answered the questionnaire, the Department has no "path towards further investigating, completely verifying, or ultimately determining non-use of this program for either respondent." Remand Results at 16. Specifically, the Department found that as all customers did not provide complete information regarding financing activities, the Department:

> could not take further steps toward verification that all of its customers did not, in fact, receive credits from the China Ex-Im Bank, directly or indirectly. In the absence of evidence from all of Ancientree's U.S. customers, we cannot conduct verification to determine whether Ancientree's U.S. customers used the EBC program or not. Therefore, we find that Ancientree did not provide sufficient support for its claim of non-use of the EBC program.

*Id*. at 16-17.

Ancientree maintains that the record *does* contain sufficient information to verify non-use of EBC by its customers. The Court directed the Department to either find non-use or find a ***practical*** solution to verify the non-use information. The Department's insistence that it needed complete responses from *all* customers to attempt to verify *any* non-use by *any* customer is not

practical, not reasonable, and does not consider the record as a whole. As the Court found, "the declarations placed on the record by Meisen and Ancientree show that their U.S. customers did not use the program to finance their purchases (*i.e.*, there can be no "benefit" received under the program by Meisen or Ancientree), and there is no record evidence to the contrary." Slip. Op. 22-45 at 15. The additional information on this record, from customers representing over 90% of Ancientree's POI sales, only constitutes additional evidence of non-use. It is still the case that nothing on the record suggests U.S. buyers use of the EBC Program.

For example, Customer K, [                    ], had [   ]% of Ancientree's sales by value during the POI. Customer K fully responded to the questionnaire. Customer K confirmed it had no loans or financing outstanding during the POR, and therefore it could not have benefitted from the EBC program. Ancientree Supp EBC Qre at Exhibit 12; Rem. CR6-15, Rem. PR14. Customer K also confirmed again that it "never applied for, received, or accrued assistance under the EBC program. Therefore, Customer K does not know why, or how, the Export Bank of China would evaluate whether Customer K is eligible (or not eligible) to receive Export Buyer's Credit." Customer K also provided the other documentation requested by the Department, *i.e.* chart of accounts, financials, etc. This is definitive evidence that Customer K did not benefit under the EBC program.

The next largest customer, Customer H, [                         ], also fully answered the Department's questionnaire. *Id*. at Exhibit 9. Customer H provided information on its outstanding loans/financing, including supporting documentation. This information only confirmed that none of its financing was related to the EBC program. Customer H again confirmed that it "never applied for, received, or accrued assistance under the EBC program. Therefore, Customer H does not know why, or how, the Export Bank of China would evaluate

whether Customer H is eligible (or not eligible) to receive Export Buyer's Credit." This is definitive evidence that Customer H did not benefit under the EBC program.

Each of the cooperating customers' responses is corroborating evidence of all of the customers' declarations that they did not benefit from the EBC program. No evidence to the contrary is on the record. Moreover, the Department has not explained why it cannot verify non-use of the information on the record. Indeed, the Department has the very type of information it described in explaining the verification process:

> {Commerce's} first step would be to examine the company's balance sheets to derive the exact amount of lending outstanding during the period of examination. Second, once that figure was confirmed, Commerce would examine subledgers or bank statements containing the details of all individual loans. Because Commerce could tie or trace the subledgers or bank statements to the total amount of outstanding lending derived from the balance sheets, it could be assured that the subledgers were complete and that it therefore had the entire universe of loan information available for further scrutiny. …Commerce's third step would be to select specific entries from the subledger and request to see underlying documentation, such as applications and loan agreements, in order to confirm the accuracy of the subledger details.

Final IDM at 23. The Court was critical of the Department's blanket dismissal of record evidence from the cooperating respondents, and here again, the Department is doing the same. Slip Op. 22-45 at 17; *see also Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333-34 (Ct. Int'l Trade 2019) (The Court instructed the Department to "consider what information could be verified that would show non-use" and emphasized that "effort should be made to avoid the collateral consequences to cooperating parties of another's non-cooperation.").

Further, the Department should consider the substantial information Ancientree did obtain in conjunction with the maximum efforts that Ancientree put forward to obtain this information and find that the cooperative customers, which again consist of substantial

4

percentage of the POI sales, should be deemed representative of the entire pool of POI customers. Ancientree reached out to its customers multiple times requesting this information and offering various ways for the companies to respond or work with U.S. Counsel. After several rounds of efforts, Ancientree was able to obtain responses from customers accounting for over 90% of Ancientree's U.S. sales in 2018. Slip Op. 22-45 at 13 ("The application of an adverse inference is based on a respondent's efforts to comply with Commerce's requests for information. The purpose of the application of adverse facts available is to encourage respondents to comply with Commerce's requests.") citing *Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*, 519 F. Supp. 3d 1224, 1239-40 (2021).

As for the non-cooperative customers, Ancientree emailed each of these customers 2-3 times, with the exception of Customer No. 9 [                                      ]. The salesperson who used to work at this company responded to Ancientree's first email inquiry and stated that the company was closed and it is not possible to get any financial records. For all the other customers, Ancientree's efforts to induce cooperation also included offering these customers access to its legal team. We note that Ancientree does not have current business relationships with these unaffiliated and non-cooperative customers, with the exception of Customer No. 11, [                          ]. For Customer No. 11, Ancientree attempted to use its ongoing business relationship to apply some leverage over this customer but the customer's response indicates that Ancientree in fact does not have sufficient commercial leverage to compel a timely response. *See* Ancientree Supp EBC Qre at Exhibit 17; Rem. CR6-15, Rem. PR14. Surely, the Department's long delay in implementing a verification procedure impeded this potential for cooperation as well.

Although Ancientree was unable to submit full and complete responses for all of its POI U.S. customers, Ancientree put forth the maximum effort to obtain the information requested by the Department. Responses from the cooperative customers consist of a substantial percentage and should be deemed representative of the entire pool of POI customers.

This situation is comparable to the *Solar Cells from China Antidumping* litigation, where time after time the Court has criticized the Department for penalizing cooperative respondents for some deficiency or failure to respond by unaffiliated entities with some connection to the response (where the Court overturned the Department's adverse inferences in connection with unaffiliated solar cell providers who did not supply their own factors of production to the mandatory respondents). For example, in a recent opinion addressing *Risen Energy* (a mandatory respondent exporter of solar cells and/or modules) specifically, the Court found the Department's past justification of applying AFA to the cooperating Risen wholly unreasonable and unsupported by the statute and caselaw:

> Commerce's determination is unsupported by substantial evidence. The evidence that Commerce cites does not support its claim that using partial AFA furthers its policy objectives. Regarding the threat of duty evasion, unlike the supplier at issue in Mueller, the unaffiliated suppliers in this case are not mandatory respondents refusing to participate in the review, *see Mueller*, 753 F.3d at 1229-30, 1235, and Commerce does not point to substantial evidence to otherwise support its concern that the unaffiliated suppliers intend to evade their own potential duties by exporting subject merchandise into the U.S. through Risen. *See id*. Moreover, regarding Commerce's aim of deterring non-cooperation, Commerce cites no evidence of a mechanism or relationship that Risen could use to induce the cooperation of their unaffiliated suppliers. *Compare id*., 753 F.3d at 1234-35 (explaining how Commerce's policy objective of inducing cooperation may be advanced where there is an existing relationship between the mandatory respondent and uncooperative supplier) with Final Decision Memo at 13 (determining that a plausible threat that the mandatory respondent may refuse to purchase subject merchandise from the suppliers is sufficient to induce cooperation). Commerce observes that Risen is a large producer that may refuse to purchase subject merchandise from the non-cooperating, unaffiliated suppliers, see id. at 12, but such

6

> observations do not demonstrate that Risen had leverage over its unaffiliated suppliers under a more searching § 1677e(a) analysis.
>
> Commerce also fails to adhere to Mueller's emphasis on accuracy above all else. *See Mueller*, 753 F.3d at 1233… Commerce does not cite record evidence that using the highest FOP consumption rates on the record result in accurate dumping margins for Risen. *See Mueller*, 753 F.3d at 1232-33.

*Risen Energy Co. v. United States*, 477 F. Supp. 3d 1331, 1343-44 (Ct. Int'l Trade 2020). Indeed, the Court has a growing body of caselaw rejecting all of the Department's reasoning for applying AFA under these circumstances. *See also Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019); *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019). The Department attempts to distinguish this case saying that here the government respondent, the GOC, is the party not providing information and there continues to be a gap on the record. Remand Results at 31. However, the Court has already criticized the Department for what it deems a "gap" in the record and directed the Department to consider the information the cooperating respondents, i.e. Ancientree and Meisen, provided with respect to this program. Therefore, this distinction is not relevant and the holding in *Risen Energy* is pertinent. AFA for the unreported EBC Program supplemental questionnaire is not defensible in light of Court precedent and the record of *Ancientree's* cooperation in this segment.

In the worst case, the Department should have accepted all the affirmative responses as they preclude a conclusion that those buyers used the EBC Program. The Department could then weight-average the dollar value of their purchases reported by Ancientree in Exhibit 1 of its Remand Questionnaire Response (June 13, 2022) with the dollar value of the non-responding U.S. buyers and reduce the EBC deposit rate assigned. For those approximately 90% of Ancientree's sales, the Department received requested and verifiable information from Ancientree's customers. The Department cannot use "facts otherwise available" under 19 U.S.C.

7

§ 1677e(a) or apply adverse inference under § 1677e(b) because necessary information is not missing from the record. *See Meisen*. Slip Op. 22-45 at 16 ("Importantly, the use of facts available generally requires a finding of missing information."). To comply with the Statute and the Court's order, for instance, as approximately 90% of Ancientree's buyers responded, the Department should at worst have applied an EBC deposit rate of 10.54% x 0.1 = 1.054%. The Department merely rejected this proposition because it is not its normal practice. Remand Results at 30. The Department's determination fails to properly consider that it has no basis to apply facts available to at least 90% of the data because no necessary information is missing. *Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) (finding the Department's application of AFA to the entire sales database was not supported by substantial evidence when the missing information only involved 2.5% of the sales.).

Ancientree notes that although Ancientree was not under review in the first administrative review, the entries are enjoined because Ancientree maintains its U.S. customers did not benefit from this program. Therefore, the rate that should apply at assessment, covering the first administrative review and thereafter, should either be zero for this program for all U.S. customers or at least zero for those that provided responses to the EBC questionnaire on remand, or alternatively the weight-averaged rate applied to all customers.

In light of the foregoing, the Department's *Remand Redermination* is not supported by substantial evidence and is an otherwise unreasonable approach to verifying non-use of a program by unaffiliated parties. Ancientree respectfully requests that this Court remand the determination to the Department and order the Department of find non-use of the Export Buyer's Credit Program or make a reasonable attempt to use the information on the record as proposed by Ancientree.

|  | |
|---|---|
| | Respectfully submitted, |
| | /s/ *Gregory S. Menegaz* <br> Gregory S. Menegaz <br> J. Kevin Horgan <br> Alexandra H. Salzman* <br> **deKieffer & Horgan, PLLC** <br> Suite 410 <br> 1090 Vermont Ave., N.W., 20005 <br> Tel: (202) 783-6900 <br> email: gmenegaz@dhlaw.com |
| Date: September 6, 2022 | *Counsel to Ancientree* |

*Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

# WORD COUNT CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains <u>2,577</u> words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W., 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to The Ancientree Cabinet Co., Ltd.*