**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| _____ ) | |
| DALIAN MEISEN WOODWORKING CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| CABINETS TO GO, LLC, and THE ) | Court No. 20-00110 |
| THE ANCIENTREE CABINET CO., LTD., ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| _____) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON**
**FINAL RESULTS OF REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

ELIO GONZALEZ                     IOANA CRISTEI
Senior Attorney                      Trial Attorney
Department of Commerce               Commercial Litigation Branch
Office of Chief Counsel for Trade    Civil Division
Enforcement & Compliance             U.S. Department of Justice
1401 Constitution Avenue, NW         P.O. Box 480, Ben Franklin Station
Washington, DC 20005                 Washington, D.C. 20044
                                     Tel: (202) 305-0001

September 28, 2022                   *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................... 2

    I.    In Its Investigation, Commerce Found Use Of The Export Buyer's Credit Program Based Upon An Adverse Inference ........................................................ 2

    II.   The Court's Remand Order Required Commerce To Re-Examine The Issue Of The Export Buyer's Credit Program ............................................................... 4

    III.  On Remand, Commerce Reopened The Record, But Respondents Failed To Provide The Necessary Information To Verify Non-Use Of The Program ............ 4

ARGUMENT ............................................................................................................... 5

    I.    Standard Of Review ............................................................................. 5

    II.   Commerce's Remand Redetermination Complied With The Remand Order And Is Supported By Substantial Evidence ........................................................ 6

        A.    Commerce Complied With The Remand Order By Finding A Practical Solution To Verify Non-Use ...................................................... 6

        B.    Respondents' Challenges To Commerce's Verification Process Fail To Demonstrate Any Error In The Remand Results ....................................... 9

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*American Alloys, Inc. v. United States,*
   30 F.3d 1469 (Fed. Cir. 1994) ............................................................................ 9

*Atar S.R.L. v. United States,*
   730 F.3d 1320 (Fed. Cir. 2013) ................................................................ 10, 11

*Bristol Metals L.P. v. United States,*
   703 F. Supp. 2d 1370 (Ct. Int'l Trade 2010) ......................................................... 5

*Canadian Solar Int'l Ltd. v. United States,*
   378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019) ....................................................... 14

*Canadian Solar Int'l Ltd. v. United States,*
   415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019) ....................................................... 14

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) .............................................................................................. 6

*Dalian Meisen Woodworking Co., Ltd. v. United States,*
   Slip Op. 22-45, No. 20-00110, 2022 WL 1598896 (Ct. Int'l Trade May 12, 2022) ........... 2, 6

*Essar Steel Ltd. v. United States,*
   721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) ....................................................... 11

*Ferrostaal Metals Gmbh v. United States,*
   518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ....................................................... 11

*Fine Furniture (Shanghai) Ltd. v. United States,*
   748 F.3d 1365 (Fed. Cir. 2014) ................................................................ 15, 16

*Fujitsu Gen. Ltd. v. United States,*
   88 F.3d 1034 (Fed. Cir. 1996) ......................................................................... 9-10

*Hyundai Electric & Energy Systems Co., Ltd. v. United States,*
   466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020) ....................................................... 14

*Micron Tech., Inc. v. United States,*
   117 F.3d 1386 (Fed. Cir. 1997) ........................................................................... 9

*Mueller Commercial de Mexico S. De R.L. de C.V. v. United States,*
   753 F.3d 1227 (Fed Cir. 2014) .......................................................................... 15

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ....................................................................... 4, 5

*Risen Energy Co. v. United States*,
    477 F. Supp 3d 1332 (Ct. Int'l Trade 2020) .................................................. 14, 15

*The Mosaic Company v. United States*,
    Slip Op. 22-103, No. 21-00117, 2022 WL 40064187 (Ct. Int'l Trade Sept. 2, 2022) ............ 11

*Tianjin Magnesium Int'l Co., Ltd. v. United States*,
    836 F. Supp. 2d 1377 (Ct. Int'l Trade 2012) ........................................... 5

**Statutes**

19 U.S.C. § 1516a ................................................................................ 5

**Administrative Determinations**

*Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*,
    86 Fed. Reg. 57,809 (Dep't Commerce Oct. 19, 2021) .................................... 11, 12

*Forged Steel Fittings from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*,
    87 Fed. Reg. 35,504 (Dep't Commerce June 10, 2022) ....................................... 12

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*,
    84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019)........................................ 2, 3, 4

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:      THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____

|  |  |  |
|---|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CABINETS TO GO, LLC, and THE | ) | |
| ANCIENTREE CABINET CO., LTD., | ) | |
| | ) | Court No. 20-00110 |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____

**DEFENDANT'S RESPONSE TO COMMENTS ON**
**FINAL RESULTS OF REMAND REDETERMINATION**

Pursuant to the Court's opinion and order, dated May 12, 2022, defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Dalian Meisen Woodworking Co., Ltd. (Meisen), and plaintiff-intervenor, The Ancientree Cabinet Co., Ltd. (Ancientree), to the Department of Commerce's redetermination pursuant to remand, dated August 5, 2022.  *See* Opinion and Order, ECF No. 85 (*Remand Order*), *Dalian Meisen Woodworking Co.*, *Ltd. v. United States*, Slip Op. 22-45, No. 20-00110, 2022 WL 1598896, at

*10 (Ct. Int'l Trade May 12, 2022); Final Results of Redetermination Pursuant to Court Remand, ECF No. 86-1 (*Remand Results*).

In its opinion and order, the Court found that Commerce's application of an adverse facts available rate for Meisen's and Ancientree's use of the Export Buyer's Credit Program was not supported by substantial evidence and remanded the issue. *Dalian Meisen Woodworking Co.*, Slip Op. 22-45, 2022 WL 1598896, at *10 (*Remand Order*).  On remand, Commerce reopened the record, followed the Court's instructions and attempted to verify non-use of the program in accordance with the Court's opinion, but found that verification was not possible.  Commerce thus continued to apply adverse facts available to find that both respondents used and benefitted from the Export Buyer's Credit Program.

As we demonstrate below, Meisen's and Ancientree's challenges to Commerce's remand redetermination amount to mere disagreement with how Commerce posed questions in its supplemental questionnaires.  *See* Meisen Br., ECF 88, 89; Ancientree Br., ECF 90, 91.  Because the plaintiffs have failed to show that Commerce's determination was arbitrary, capricious, or not in accordance with law, we respectfully request that the Court sustain the remand results and enter judgment in favor of the United States.

## **BACKGROUND**

## I.      **In Its Investigation, Commerce Found Use Of The Export Buyer's Credit Program Based Upon An Adverse Inference**

On August 12, 2019, Commerce published its preliminary affirmative determination in this investigation.  *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:  Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019) (P.R. 675), and accompanying Decision

Memorandum (PDM) (P.R. 623).  In the preliminary determination, Commerce determined that the government of China failed to answer questions and provide necessary information requested by Commerce related to the Export Buyer's Credit Program.  Consequently, Commerce found that the government of China had not cooperated to the best of its ability and, applying facts available with an adverse inference, found that the program is countervailable.  PDM at 16-19. Accordingly, Commerce determined that Meisen and Ancientree used and benefitted from the Export Buyer's Credit Program.  *Id.*

In the final determination, Commerce found it was unable to verify non-use of the program by Meisen and Ancientree, and thus continued to use adverse facts available to find that both entities used and benefitted from the Export Buyer's Credit Program.  IDM (P.R. 846) at 20-36.  Informing Commerce's inability to verify non-use was the government of China's refusal to answer questions necessary for Commerce's determination.  *Id.*  Commerce had specifically requested the 2013 revised administrative measures of the program because, pursuant to these revised measures, the China Ex-Im Bank may disburse export buyer's credits directly or through third-party partner or correspondent banks.  *Id.* at 26-29, 32-34.  Without seeing the revised measures due to the government of China's failure to respond to Commerce's questions, Commerce has no information on what other changes may have been made or how the operation of the program changed.  *See id.*

To verify whether the China Ex-Im Bank had disbursed any credits through other banks, Commerce requested a list of all partner/correspondent banks involved in the disbursement of funds under the program.  Supplemental Questionnaire (P.R. 566).  The government of China withheld necessary information requested of it, significantly impeding the proceeding.  IDM at 36.  Commerce did consider the certifications of non-use submitted by respondents, but

explained that the gap in the record due to the missing information "prevents complete and effective verification of the customer's certifications of non-use." *Id.* at 35.

## II.    The Court's Remand Order Required Commerce To Re-Examine The Issue Of The Export Buyer's Credit Program

On May 12, 2022, the Court sustained in part Commerce's determination and remanded in part on the issue of the Export Buyer's Credit Program. *Dalian Meisen Woodworking Co*., 2022 WL 1598896, at *9-10.  The Court found that Commerce had failed to satisfy the first step of determining whether to apply an adverse inference when selecting from among the facts otherwise available: determining information is missing that creates a gap in the record.  *Id*. at *6 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)).  The Court found unpersuasive Commerce's claims that verification would be unduly burdensome—without attempting to verify, and the fact that the information required was only indirectly related to alleged actual use of the program by the respondents' U.S. customers was insufficient to show information was missing from the record.  *Id.* at *8.

The Court directed Commerce, on remand, to "either (1) find a practical solution to verify the non-use information on the record, such as reopening the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly."  *Id.* at *10.

## III.   On Remand, Commerce Reopened The Record, But Respondents Failed To Provide The Necessary Information To Verify Non-Use Of The Program

On remand, Commerce attempted to verify the respondents' claims of non-use by reopening the record and issuing supplemental questionnaires to obtain the information that was missing from the record.  *Remand Results* at 4.  The supplemental questionnaires sought information relating to the respondents' customers' traditional and non-traditional financing.  *Id.*

Commerce made this request so that Commerce could review the financing information and determine whether the China Ex-Im Bank had disbursed export buyer's credits directly or through a third-party partner or correspondent banks.

Although the respondents made some efforts to respond to Commerce's supplemental questionnaires, neither respondent provided all the information necessary for Commerce to be able to conduct the required verification.  *Id.*  Specifically missing was complete information from all of both Meisen's and Ancientree's customers concerning loan information, despite Commerce requesting this exact information.  Therefore, Commerce found that there remained a gap in the record, and Commerce was unable to further investigate, completely verify, or ultimately determine non-use of the program.  *Id.* at 15-16.

Given the lack of complete responses from the respondents and their U.S. customers, Commerce concluded that the incomplete information on the record would not, for purposes of verification and an ultimate determination, overcome the deficiencies caused by the government of China's non-cooperation.  *Id.* at 20.  Accordingly, Commerce continued to find, based on adverse facts available, that both respondents benefited from the Export Buyer's Credit Program. *Id.* at 20-21.

## <u>ARGUMENT</u>

## I. <u>Standard Of Review</u>

This Court sustains Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); *Bristol Metals L.P. v. United States*, 703 F. Supp. 2d 1370, 1373 (Ct. Int'l Trade 2010).  This standard applies equally to remand redeterminations.  *See, e.g.*, *Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012) (applying the standard of review to Commerce's remand redetermination).  Substantial evidence

is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

## II.   Commerce's Remand Redetermination Complied With The Remand Order And Is Supported By Substantial Evidence

With respect to verification of non-use of the Export Buyer's Credit Program, the Court directed Commerce to "either (1) find a practical solution to verify the non-use information on the record, such as reopening the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly." *Dalian Meisen Woodworking Co.*, 2022 WL 1598896, at *10.

Commerce decided to take the first option by re-opening the record and issuing supplemental questionnaires to respondents to request information about respondents' customers' traditional and non-traditional financing.  *Id.* at 4-5.  Commerce determined that this information regarding financing would allow it to verify the information already on the record, and would serve as a practical solution as ordered by the Court.  *See id.*  Ultimately, however, the respondents failed to provide all the information necessary for Commerce to conduct verification of non-use.  Commerce's determination to continue to apply adverse facts available in finding that Meisen and Ancientree benefitted from the Export Buyer's Credit Program is supported by substantial evidence and is in accordance with law.

### A.   Commerce Complied With The Remand Order By Finding A Practical Solution To Verify Non-Use

In their comments on the remand redetermination, Meisen and Ancientree argue that Commerce failed to adhere to the Court's direction to "find a practical solution to verify the non-

use information on the record, such as reopening the record to issue supplemental questionnaires to respondents and their U.S. customers." Meisen Br. at 7-9; Ancientree Br. at 2-3. Meisen and Ancientree fault Commerce for sending requests that were supposedly onerous and burdensome, and they argue that Commerce failed to explain its reasoning for the requested information. *Id.* To the contrary, however, Commerce identified a reasonable and practical solution for verifying non-use, and explained in full its need for the requested information.

Commerce's remand results comply with the Court's order because Commerce took an action that the Court explicitly allowed, which was to reopen the record in order to issue supplemental questionnaires to respondents and their U.S. customers. *See Dalian Meisen Woodworking Co*., 2022 WL 1598896, at *10. As more fully explained below, however, the respondents failed to provide complete the requested information that would allow Commerce to conduct verification in a meaningful way. *Remand Results* at 4-22, 26-31. That Commerce was ultimately unable to verify the non-use information submitted by the respondents does not mean that it failed in making a reasonable attempt to do so.

To be able to verify non-use of the program, Commerce must review loan and financing information for the respondents and their customers to ensure that no loans were received either directly or indirectly from the China Ex-Im Bank. To those ends, Commerce issued supplemental questionnaires requesting respondents to report, in an attached loan template, all loans and financing (including non-traditional forms of financing) provided to each of their U.S. customers that were received or outstanding during the period of investigation. EBC Supplemental Questionnaire (May 19, 2022); Rem. P.R.3. The loan information was requested regardless of whether the respondents considered the financing to have been provided under the Export Buyer's Credit Program. *Id.* at 16.

With this information, Commerce would be able to examine subledgers or bank statements containing the details of all individual loans and thus get "confirmation that a complete picture of relevant information is in front of the verifiers, by tying relevant books and records to audited financial statements or tax returns." *Id.* at 18-19.  By tying or tracing the subledgers or bank statements to the total amount of outstanding lending derived from the balance sheets, Commerce could be assured that the subledgers were complete and that it had the entire universe of loan information available to further proceed with verification.  *Id.* at 18-19. Using this information, Commerce could then reasonably assess whether a particular financing instrument was provided under the Export Buyer's Credit Program.  *Id.*

Neither respondent complied with Commerce's requests for information, despite being granted extensions of the deadline to submit a response. Rem. P.R. 6, 8, 11, 12.  Ancientree did not provide a complete response to the questionnaires for all its U.S. customers.  *Id.*  Due to Ancientree's failure to fully respond, Commerce could not take further steps toward verifying all of Ancientree's customers and whether they received credits directly or indirectly from the China Ex-Im Bank.  *Id.*  Meisen also failed to provide a complete loan template for its U.S. customers and elected not to provide any additional information regarding non-traditional forms of financing that several of its U.S. customers received.  *Id.* at 17.  Notably, Meisen's customers' records show outstanding lending during the period of investigation, but Meisen insisted that it had provided all the necessary and relevant information.  *Id.* at 17.  Due to this inconsistency, Commerce issued a second supplemental questionnaire to Meisen, once again requesting that Meisen complete the loan template and provide the information requested "regardless of whether Meisen may offer an explanation as to why the lending is unrelated to the Export Buyer's Credit program…."  *Id.*  Despite being given this additional opportunity to provide complete

information, Meisen elected not to, again excluding transactions it unilaterally determined were not relevant to the program. *Id.* at 17-18. Based on both respondents' failures to provide the necessary information, Commerce concluded there was insufficient evidence to overcome the gap created by the government of China's failure to cooperate. *Id.* Accordingly, both respondents' lack of full cooperation with Commerce's questions on remand frustrated Commerce's efforts to verify non-use of the program.

B.     Respondents' Challenges To Commerce's Verification Process Fail To Demonstrate Any Error In The Remand Results

Respondents make several arguments challenging Commerce's chosen method of verification on remand, but none of these arguments demonstrate that Commerce acted unreasonably or that the remand results are not supported by substantial evidence.

First and most importantly, the Court did not direct Commerce to use the respondent's preferred approach in attempting to find a practical solution to verify the non-use information on the record. In fact, as Meisen acknowledges, the Court did not specify any one format, and other than stating that Commerce could reopen the record "to issue supplemental questionnaires to respondents and their U.S. customers," Commerce was free to exercise it discretion in conducting the remand. *Remand Order* at 18, 21. Commerce has wide discretion in conducting its proceedings, including with respect to verification. *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) ("Congress has implicitly delegated to Commerce the latitude to derive verification procedures ad hoc."); *American Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) ("the statute gives Commerce wide latitude in its verification procedures"); *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than

courts."). The respondents' preference for an approach more favorable to their own interests does not undermine the reasonableness of Commerce's approach, which was also consistent with past practice.

To review the reasonableness of an agency action, "courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Atar S.R.L. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013) (citations omitted). Commerce here explained at length why the information requested in the supplemental questionnaires was required for Commerce to proceed with verification in a meaningful way. *Remand Results* at 15-20, 27.

Specifically, Commerce requested certain loan information, including the names of the lenders, dates of loan agreements, purposes of the loans, and other information that would allow Commerce to examine subledgers or bank statements in a potential verification. *Id.* at 18. If Commerce had received the requested information in full, Commerce would have been able to proceed with tracing the subledgers or bank statements to the total amount of outstanding lending derived in the balance sheets. This ability to trace the loans would have given Commerce the information it needed to determine whether in fact any loans had come from the China Ex-Im Bank. *Id.* As Commerce explained, confirmation that a complete picture of relevant information is in front of verifiers, by tying relevant books and records to audited financial statements or tax returns, is critical to meaningfully conduct verification. *Id.* at 19.

Meisen argues it did not need to fully comply with Commerce's requests because the loan titles appearing on Meisen's customers' tax returns and trial balances should exempt them from reporting further information to Commerce. *Id.* at 25; Meisen Br. at 11. But Commerce explained that a company's assignment of a title for certain loans does not include a complete

and accurate description of the underlying loan, and thus cannot be used to verify. *Remand Results* at 19. In fact, multiple loans in Meisen's documents had ambiguous titles that did not identify the source of the lending—whether related to the Export Buyer's Credit Program or not. *Id*.

It is not Meisen's role to decide what is relevant to report to Commerce. *See Ferrostaal Metals Gmbh v. United States,* 518 F. Supp. 3d 1357, 1376 (Ct. Int'l Trade 2021) ("It is well established that it is Commerce, not the respondent, that determines what information is to be provided…") (citations omitted); *see also The Mosaic Company v. United States*, Slip Op. 22-103, No. 21-00117, 2022 WL 40064187, *4 (Ct. Int'l Trade Sept. 2, 2022) ("Even if the {respondent} believed that the information was not relevant, the information sought was related to Commerce's proper investigatory purpose, and Commerce, not the {respondent}, determines what information is relevant to the investigation."); *Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1299 (Ct. Int'l Trade 2010) ("Regardless of whether {the respondent} deemed the license information relevant, it nonetheless should have produced it in the event that Commerce reached a different conclusion."). In sum, Commerce acted well within its discretion by identifying the type of information it needed to verify non-use and communicated those requirements clearly to the respondents.

Further underlining the reasonableness of Commerce's actions on remand is the fact that Commerce followed similar procedures as it has in other cases, including in the countervailing duty investigation on mobile access equipment from China, a case to which the Court specifically cited. *See Remand Order* at 17, n.9 (citing *Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 57,809 (Dep't Commerce Oct. 19, 2021)). In *Mobile Access*

*Equipment*, Commerce was able to find non-use after questioning and verifying the *complete* non-use certifications submitted by the respondents' U.S. customers. *Id.* Here too, Commerce considered whether any information provided by the respondents would be sufficient to fill the gap of missing information, ultimately deciding the information was not sufficient. *Remand Results* at 13-14. Similarly, in *Forged Steel Fittings*, Commerce found non-use of the Export Buyer's Credit Program where it received complete information from the respondent, which permitted full verification. *Id.* (citing *Forged Steel Fittings from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 87 Fed. Reg. 35,504 (Dep't Commerce June 10, 2022)).

Meisen acknowledges both these cases, but simply disagrees with the necessity of all information requested for complete verification. *See* Meisen Br. at 10-11. In another case, Commerce was again able to verify non-use only after receiving a complete response from the respondent's customers to the supplemental questionnaire on remand. *See Both-Well (Taizhou) Steel Fittings Co, Ltd. v. United States*, Ct. No. 21-00166 (remand results finding non-use of the program currently pending before the Court). As discussed above, that was simply not possible here because both respondents did not provide a complete response to Commerce's supplemental questionnaires.

Meisen and Ancientree claim they were unable to provide the requested information due to time constraints and their large numbers of U.S. customers. Meisen Br. 8-11; Ancientree Br. 1-2. But the type of information Commerce requested, such as trial balances and loan agreements, is routinely relied upon by Commerce for reconciliation purposes—as Commerce explained. *Remand Results* at 28. In allowing Commerce to reopen the record, the Court

likewise did not limit the type of information Commerce could seek. *See Dalian Meisen Woodworking Co*., 2022 WL 1598896, at \*10.

Despite complaints from both respondents about limited time to respond, Commerce in fact provided Meisen and Ancientree multiple extensions of time in which to submit the information. Rem. P.R. 6, 8, 11, 12. Commerce even sent a second supplemental questionnaire to Meisen giving it additional time to submit the information requested. Rem. P.R. 16. In total, Meisen had 33 days to respond to Commerce's request for information, which is almost as long as the 37 days exporters typically get for responding to the entire CVD questionnaire. *Id.* Meisen claims this is an unfair comparison because in an investigation, respondents have additional time after the CVD questionnaire to perfect the record. Meisen Br. at 10. But verification of non-use of the Export Buyer's Credit Program only concerns one issue, while a CVD investigation consists of multiple issues, requiring far more information and time for submission. Moreover, once Ancientree and Meisen were unable or unwilling to submit the requested information, Commerce had no need to seek an extension of time to continue gathering information.

Meisen also argues that Commerce could have done a spot check by asking for a random sample of Meisen's U.S. customers, and that by requesting all the information, Commerce's actions on remand were arbitrary and capricious. Meisen Br. at 9-10, 14-15. But this argument fails to account for the fact that the record does not contain complete information for Commerce to meaningfully conduct verification. Without complete loan and financing information for each of the U.S. customers during the period of investigation, Commerce explained it would be unable to conduct any kind of verification, even a spot check. *Remand Results* at 18-20. Accordingly, Commerce was unable to determine whether Meisen's customers' borrowing was related to the

Export Buyer's Credit Program because Meisen declined to provide such documentation.  *Id.* at 17-19.  Without the complete information, Commerce was unable to fulfill the purpose of verification—confirming the "accuracy and completeness of submitted factual information." *Hyundai Electric & Energy Systems Co., Ltd. v. United States,* 466 F. Supp. 3d 1303, 1318 n.22 (Ct. Int'l Trade 2020).  Thus, a spot check would have been futile.

Ancientree similarly argues that Commerce should consider the incomplete information Ancientree provided to be representative of the entire pool of its U.S. customers.  Ancientree Br. at 4-8, 16-17.  According to Ancientree, no necessary information was missing because Ancientree obtained responses from customers accounting for approximately 90 percent of its sales.  *Id.*  Alternatively, Ancientree argues Commerce should reduce the rate to account for the 90 percent of sales for which its customers did provide a response.  *Id.* at 7-9.  But Commerce does not make such findings of "partial non-use," except in limited circumstances not present with the Export Buyer's Credit Program.  *Remand Results* at 21, 30.  Moreover, Commerce does not rely on partial, potentially self-selected, information as a basis for finding non-use because doing so would contradict the completeness aspect that is fundamental to verification.  *Id.*

Ancientree cites cases in which the Court has expressed concern that Commerce penalizes cooperative respondents when unaffiliated entities fail to respond or respond in a deficient manner.  Ancientree Br. at 6-7 (citing *Risen Energy Co. v. United States*, 477 F. Supp 3d 1332 (Ct. Int'l Trade 2020); *Canadian Solar Int'l Ltd. v. United States*, 415 F. Supp. 3d 1326 (Ct. Int'l Trade 2019); *Canadian Solar Int'l Ltd. v. United States*, 378 F. Supp. 3d 1292 (Ct. Int'l Trade 2019)).  But as Ancientree itself acknowledges, these cases are all antidumping duty cases and are inapposite.  Ancientree Br. at 6-7.  These antidumping duty cases involve Commerce's use of adverse facts available in the context of valuing a respondent's factors of production

where certain unaffiliated suppliers do not cooperate with Commerce's requests for information. That situation is not present here where Commerce requested non-use information from the respondents' customers in attempt to conduct verification, based on the Court's order.

Even if those cases did apply here, multiple facts serve to distinguish the cases. In *Risen Energy Co.*, Commerce applied partial adverse facts available to Risen Energy's unaffiliated suppliers who refused to cooperate, and the Court remanded, finding that the evidence Commerce cited did not support its claim that applying partial adverse facts available furthers Commerce's policy objectives. *Risen Energy Co.*, 477 F. Supp. 3d. at 1343-44 (citing *Mueller Commercial de Mexico S. De R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed Cir. 2014)). By contrast, here Commerce did not apply adverse facts available to Ancientree's unaffiliated customers, nor to Ancientree itself. Rather, Commerce applied the adverse facts available to the government of China for its failure to cooperate in the investigation. *Remand Results* at 30-31. The Federal Circuit has sustained this practice as permissible, recognizing that "{a}lthough it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent." *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014).

Finally, Ancientree argues that although it was not under review in the first administrative review, its entries are enjoined because it maintains that its U.S. customers did not benefit from the Export Buyer's Credit Program. Ancientree Br. at 8. Consequently, Ancientree claims that a zero rate should be applied at assessment for the first administrative review and thereafter for this program, and for its customers that provided responses to the supplemental questionnaire. *Id.* Alternatively, Ancientree states Commerce should apply the weighted

average rate Ancientree put forth.  *Id.*  For the same reasons discussed above, it would not be

appropriate to apply a zero rate in this case because Commerce found that the respondents used

and benefitted from the Export Buyer's Credit Program.  Additionally, Commerce explained that

it does not make partial non-use findings except in limited circumstances that are not applicable

here.  If, at the conclusion of this litigation, Ancientree's rate changes, Commerce would follow

its ordinary practice regarding assessment, including, if appropriate, issuing instructions

directing CBP to liquidate entries at the applicable rate for any entries not subject to review.

Respondents' assertion that none of the loans and financing their customers described can

be related to the Export Buyer's Credit Program, and that the information they provided was

sufficient to determine non-use, is not a basis on which Commerce can complete verification.

*See* Meisen Br. at 11-15; Ancientree Br. at 2-4.  Thus, Commerce's determination that a

complete response to the supplemental questionnaires was required for Commerce to

meaningfully conduct verification is reasonable.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's *Remand*

*Results* and enter final judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

                                          /s/ Ioana Cristei_____
OF COUNSEL:                               IOANA CRISTEI
ELIO GONZALEZ                             Trial Attorney
Senior Attorney                           U.S. Department of Justice
Office of the Chief Counsel               Civil Division
    For Trade Enforcement and Compliance  Commercial Litigation Branch
U.S. Department of Commerce               P.O. Box 480
Washington, D.C. 20230                    Ben Franklin Station
                                          Washington, D.C. 20044
                                          Tel:  (202) 305-0001
                                          Fax:  (202) 305-7644
                                          Email:  Ioana.cristei@usdoj.gov

September 28, 2022                        Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to paragraph 2(B)(2) of the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in paragraph 2(B)(1)(b) of the Chambers Procedures for a filing under Rule 56.2(h). Specifically, excluding those exempted portions of the brief as set forth in paragraph 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 5,023 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word 2016) used to prepare this brief.

<u>/s/ Ioana Cristei</u>