UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., ) <br> ) <br> *Plaintiff,* ) <br> ) <br> and ) <br> ) <br> CABINETS TO GO, LLC, and ) <br> THE ANCIENTREE CABINET CO., LTD., ) <br> ) <br> *Plaintiff-Intervenors,* ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> *Defendant.* ) <br> ) <br> and ) <br> ) <br> AMERICAN KITCHEN CABINET ALLIANCE, ) <br> ) <br> *Defendant-Intervenor.* ) <br> ) | Court No. 20-00110 <br><br> PUBLIC DOCUMENT |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Luke A. Meisner
Christopher T. Cloutier
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for the*
*American Kitchen Cabinet Alliance*

Date:  February 5, 2024

PUBLIC DOCUMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.     Summary ....................................................................................................... ….2

II.    Commerce Complied with the Court's *Second Remand Opinion* .......................... 3

III.   There Is No Verifiable Information on the Record that None of Ancientree's U.S. Customers Used the EBCP ...................................................................................... 6

IV.    Commerce's *Second Remand Redetermination* Should Not be Overturned Based on Its Use of Typical Verification Procedures for U.S. Customers ........................ 7

V.     Other Courts Have Upheld Commerce's Application of AFA with Respect to the EBCP .................................................................................................................... 9

VI.    Commerce Correctly Rejected Ancientree's Proposal for a *Pro Rata* Subsidy .... 10

VII.   Conclusion ........................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022) ................................................................................................................................ 8

*Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ..... 6, 10

*Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12 2022), ................................................................................................... 4, 7

*Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT April 20, 2023) ................................................................................................ passim

*Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285 (2010) .................. 6

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) ......................... 6

*Fujian Yinfeng Imp & Exp Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886 (Ct. Int'l Trade Sept. 13, 2022) ........................................................................................ 10

*Guizhou Tyre Co. v. United States,* 523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) .......................... 8

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) ................. 3, 9, 10

*Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280 (Ct. Int'l Trade 2022) ................................................................................................................................ 8

**Statutes**

19 U.S.C. § 1677m(i)(1) .................................................................................................................. 6

**Other Authorities**

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determinatio*n, 85 Fed. Reg. 11,962 (Dep't Commerce Feb. 28, 2020) ............................................................................................. 3, 8

World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) .............................................................................................. 7

**Regulations**

19 C.F.R. § 351.307(d) .................................................................................................................... 6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., <br><br> *Plaintiff,* <br><br> and <br><br> CABINETS TO GO, LLC, and <br> THE ANCIENTREE CABINET CO., LTD., <br><br> *Plaintiff-Intervenors,* <br> v. <br><br> UNITED STATES, <br><br> *Defendant.* <br><br> and <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> *Defendant-Intervenor.* | Court No. 20-00110 <br><br> PUBLIC DOCUMENT |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Pursuant to this Court's April 20, 2023 opinion and order in *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT April 20, 2023) ("*Second Remand Opinion*") and the Court's January 18, 2024 revised scheduling order (ECF 138), Defendant-Intervenor American Kitchen Cabinet Alliance ("AKCA" or "Petitioner") submits the following response in support of the December 6, 2023 Second Remand Redetermination ("*Second Remand Redetermination*") (ECF 131) issued by the U.S. Department of Commerce ("Commerce") and in opposition to the January 5, 2024 Comments (ECF 134) filed by Plaintiff-Intervenor The Ancientree Cabinet Co., Ltd. ("Ancientree") in the above captioned action ("Ancientree Comments"). As discussed below, Commerce's *Second Remand Redetermination* is

1

fully in compliance with the *Second Remand Opinion*. Accordingly, the Court should uphold Commerce's *Second Remand Redetermination*.

**I.      Summary**

The Government of China ("GOC") is following a strategy of noncooperation that appears to be succeeding in many countervailing duty cases that are appealed to the Court of International Trade ("CIT"). Under both U.S. countervailing duty law and the World Trade Organization's Agreement on Subsidies and Countervailing Measures ("SCM"), the GOC is expected to provide information regarding the subsidies it administers, as well as information regarding the recipients of those subsidies, because the GOC is in the best position to provide such information. The GOC has refused to provide this information for its Export Buyer's Credit Program ("EBCP"), a loan program that supports Chinese exports by financing foreign buyers, including U.S. purchasers. Both U.S. law and the SCM provide that Commerce is entitled to apply adverse facts available ("AFA") under these circumstances to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations.

Through both the GOC's refusal to cooperate and certain decisions issued by the CIT, the GOC has managed to shift the burden of producing relevant information from itself to its exporters' U.S. customers, who must prove that they have not availed themselves of the EBCP when purchasing subject merchandise. As Commerce has predicted, due to factors such as the large number of U.S. customers and the GOC's failure to provide relevant information such as the correspondent banks involved in the EBCP, collecting and verifying information from U.S. customers has been extremely onerous for Commerce, akin to looking for a needle in a haystack. The GOC's shifting of the burden from itself to U.S. customers also requires the U.S. customers

to subject themselves to Commerce's questioning and verification procedures even though they are not parties to the agency's countervailing duty investigation.

The GOC's strategy is succeeding in some cases. *See, e.g., Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2023). After the burden of providing relevant information shifts to U.S. customers, many of them fail to provide the information or fail to cooperate fully with Commerce's verification process. *See id.* However, instead of laying the blame at the feet of the GOC, the CIT blames Commerce for being "unreasonable" and for "imped{ing} good faith efforts by respondents to comply." *Id.* As a result, Commerce is prohibited from countervailing the EBCP as a subsidy based on the GOC's refusal to provide relevant information. This outcome is contrary to U.S. law and rewards the GOC for its failure to cooperate. The AKCA respectfully submits that this case should not end with such an outcome.

**II.     Commerce Complied with the Court's** *Second Remand Opinion*

In its final determination in the original investigation, Commerce determined based on AFA that the respondents benefited from the EBCP because the GOC failed to adequately respond to Commerce's requests for information about the program. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11,962 (Dep't Commerce Feb. 28, 2020) and accompanying Issues and Decision Memorandum ("IDM") at 24-29. Commerce concluded that this information was necessary to verify the respondents' claims that neither they, nor their U.S. customers, had used or benefited from the EBCP. *Id.* at 35.

On May 12, 2022, the Court remanded the final determination with instructions to "either (1) find a practical solution to verify the non-use information on the record, such as the reopening of the record to issue supplemental questionnaires to respondents and their U.S.

customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the {EBCP}, and recalculate the all-others rate accordingly." *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022) ("*First Remand Opinion*") at 18. On August 5, 2022, after issuing questionnaires and supplemental questionnaires to the respondents' customers, Commerce issued its first remand redetermination where it continued to find that the respondents had benefited from the EBCP subsidy because they had failed to provide relevant information for numerous U.S. customers. *See* Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022) at 30-31.

On April 20, 2023, the Court issued its *Second Remand Opinion*, sustaining in part, and remanding in part. In the *Second Remand Opinion*, the Court instructed Commerce to "attempt to verify Ancientree's submissions to the extent {Commerce} finds appropriate, and if that is successful, it should either accept the *pro rata* adjustment proposed by Ancientree or conclude that the {EBCP} was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly." *Second Remand Opinion* at 16. As detailed in the *Second Remand Redetermination*, although Commerce attempted to verify non-use of the program for Ancientree, it was unable to successfully verify key information submitted by Ancientree regarding the purported non-use of the EBCP. *Second Remand Redetermination* at 2. In particular, Ancientree had previously submitted information purporting to show that more than half of its U.S. customers, representing approximately 90 percent of its U.S. sales, did not use the EBCP. *Id* at 5. However, during its remand proceedings, Commerce found that a significant portion of this reported information was either inaccurate or unverifiable. *Id.* Thus, the

4

information on the record is insufficient to compensate for the deficiencies that stem from the Government of China's withholding of necessary information regarding the EBCP. *Id.*

To put it more bluntly, Commerce's attempts to verify Ancientree's claim that 90 percent of its customers did not benefit from the ECBP were nothing short of a complete and utter disaster:

- From the outset, only 13 of Ancientree's 27 customers actually provided responses to Commerce's requests for information regarding use of the ECBP that could even potentially be verified. The other 14 refused to cooperate or provided responses that were useless and unreliable. *Id.* at 6.

- Three of the remaining 13 customers would not even agree to verification of their responses. *Id.* at 7.

- Two of the remaining 10 customers' responses could not be verified because the customers failed to provide required documents, with one customer halting verification after taking away from Commerce "several key documents" that had been collected while Commerce was at the customer's location. *Id.* at 7.

As a result of these problems with Commerce's attempts to verify the customers' responses, Commerce was unable to verify non-use of the EBCP for more than 70 percent of Ancientree's customers. *Id.* at 9. Because Commerce could not verify the accuracy of Ancientree's claim that over 90 percent of its customers did not benefit from the EBCP, Commerce correctly concluded that it was not necessary or appropriate to apply a *pro rata* adjustment as sought by Ancientree or to conclude that Ancientree did not use the EBCP. *Id.* at 10.

In sum, Commerce fully complied with the *Second Remand Opinion*. Moreover, the *Second Remand Redetermination* is supported by substantial evidence and is otherwise in accordance with law. Accordingly, the Court should uphold the *Second Remand Redetermination* and issue final judgment in this case.

### III. There Is No Verifiable Information on the Record that None of Ancientree's U.S. Customers Used the EBCP

Ancientree argues that there is no information on this record to support a finding that the EBCP subsidy was ever been used by any of its customers. Ancientree Comments at 8. This argument gets the relevant burden of proof backwards. The more relevant point is that, after the GOC failed to provide relevant information regarding use of the EBCP, Commerce complied with the Court's order to gather the information from Ancientree's U.S. customers, but it was not able to obtain verifiable information that the EBCP was never used. This lack of verifiable information, coupled with the GOC's noncooperation, warranted the application of AFA.

"During a CVD investigation, Commerce requires information from both the foreign government alleged to have provided a subsidy and the respondent companies alleged to have received the subsidy." *Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287, 1303 (Ct. Int'l Trade 2022) (citing *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369-70 (Fed. Cir. 2014); *Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285, 1296 (2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012)). Commerce requests information from foreign governments because they "are in the best position to provide information regarding the administration of their alleged subsidy programs, including eligible recipients." *Essar Steel*, 721 F.Supp.2d at 1297. Moreover, such information is subject to verification by Commerce. 19 U.S.C. § 1677m(i)(1) ("The administering authority shall verify all information relied upon in making – (1) a final determination in an investigation.").

Where a foreign government such as the GOC fails to cooperate in providing relevant information, Commerce may apply AFA to find that a respondent benefited from a subsidy, even where the respondent cooperated fully with in the investigation. *Fine Furniture*, 748 F.3d at 1373). The Federal Circuit has recognized that "{a}lthough it is unfortunate that cooperating

6

respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent." *Id.* at 1373. This is also entirely consistent with the GOC's commitments under the WTO SCM Agreement, which requires foreign governments to provide information relevant to a countervailing duty investigation and permit verification of such information or be subject to AFA. *See* World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) at para. 18.6.

Here, there was a gap in the record as to whether Ancientree's U.S. customers used the EBCP subsidy, and that gap existed because the GOC had failed to provide relevant information regarding its use. This situation – on its own – warranted the application of AFA to determine that the EBCP was used. However, consistent with the Court's instructions, Commerce went above and beyond the requirements of the statute by requiring U.S. customers to fill this gap with verifiable information. As discussed above, while some customers responded to Commerce's questionnaires regarding the use of the EBCP subsidy, Commerce was not able to verify their responses. Thus, because the record continued to lack verifiable information on this issue, Commerce was fully justified in applying AFA to find that the EBCP was used.

**IV.  Commerce's *Second Remand Redetermination* Should Not be Overturned Based on Its Use of Typical Verification Procedures for U.S. Customers**

Commerce has repeatedly explained that attempting to verify customer non-use statements would be unreasonably burdensome on the agency without information that China withheld – *i.e.*, operational information about the role of third-party banks in disbursing credits and revisions to the program in 2013. *First Remand Opinion* at 8. As Commerce explained in the final determination if its original investigation in this case:

7

> To conduct verification of the customers without the information requested from the GOC would amount to looking for a needle in a haystack with the added uncertainty that Commerce might not even be able to identify the needle when it was found. …{W}e cannot simply rely on the GOC's assurances that it has checked its records. We have no way of verifying such statements.

IDM at Comment 3 (P.D. 846). Commerce has consistently offered this same explanation in other cases involving challenges to the application of AFA to find that the EBCP subsidy was used. *See, e.g., Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327, 1336 (Ct. Int'l Trade 2022) ("Commerce states that it would be too onerous 'if not impossible' for it to verify the non-use certifications."); *Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280, 1286 (Ct. Int'l Trade 2022) ("A careful verification of respondents' non-use of this program without understanding the identity of these correspondent banks would be unreasonably onerous, if not impossible."). *C.f. Guizhou Tyre Co. v. United States,* 523 F. Supp. 3d 1312, 1375 (Ct. Int'l Trade 2021) ("{T}he court is not persuaded by plaintiffs' arguments that Commerce could have 'easily' verified the self-certifications.").

Now that Commerce has attempted to verify the U.S. customer' non-use statements in accordance with the Court's *Second Remand Opinion*, Ancientree agrees that verification was difficult, but it attempts to turn the tables by arguing that it was not burdensome for Commerce but instead "very expansive and onerous" from the perspectives of the U.S. customers. Ancientree Comments at 6. The Court should reject this line of argument. As an initial matter, while it was difficult for Commerce to conduct verification because it was looking for a needle in a haystack, the type of information that Commerce required as part of its verification process was common and expected. *Second Remand Redetermination* at 15. Indeed, Ancientree acknowledges that "{r}equesting this type of information from respondents is common and expected." Ancientree Comments at 8. Ancientree's complaint is that "requesting these (sic)

from completely unaffiliated customers is unprecedented." *Id.* In lodging this complaint, Ancientree loses sight of the fact that the only reason the U.S. customers were placed in this position is because the GOC had shifted the burden of providing relevant information from itself, as an interested party to the proceeding whose full participation was expected, to unaffiliated U.S. customers, who are not parties to the proceeding and have no real obligation to cooperate.

The bottom line is that Commerce's *Second Remand Redetermination* should not be reversed simply because the typical verification process is onerous from the perspective of a U.S. customer that is not a party to this proceeding. It would be contrary to law to abandon the statutory requirement that Commerce only rely on information that has been verified simply out of sympathy for U.S. customers, especially when it is the GOC through its noncooperation that placed them in the difficult situation of having to be verified.

V.      **Other Courts Have Upheld Commerce's Application of AFA with Respect to the EBCP**

The Court should reject Ancientree's suggestion that it follow the decision in *Risen Energy*, where Commerce's approach of verifying the non-use statements was criticized, and the Court ordered Commerce to find non-use. Ancientree Comments at 9-10. For the reasons discussed above, *Risen Energy* was wrongly decided because it improperly allowed the GOC to shift the burden of producing evidence relevant to the ECBP from the GOC to respondents' U.S. customers – an outcome that is directly at odds with the statute and that undermines Commerce's ability to apply AFA to induce cooperation from the GOC in future cases. Based on *Risen Energy*, there is no chance that the GOC will ever cooperate in Commerce's countervailing duty investigations. It has absolutely zero reason to do so.

In addition, other Courts have held more persuasively that Commerce is justified in applying AFA to find that respondents and their U.S. customers benefited from the ECBP. *See,*

9

*e.g., Cooper*, 610 F. Supp. 3d at 1303 ("Commerce explained reasonably that without certifications that show that the customers would be likely to participate, without the ability to compel third-party participation and without the withheld information, Commerce would not be able to conduct an accurate spot-check of potentially relevant transactions."). In *Fujian Yinfeng Imp & Exp Trading Co. v. United States*, the Court upheld Commerce's determination to apply AFA due to the lack of verifiable information on the record to fill the gap with respect to the ECBP. In so doing, it explained:

> It's easy to read this record and be sympathetic to Yinfeng. The company is disadvantaged by an adverse inference caused by the noncooperation of the Chinese government over which it has no control …. But it isn't the court's job to micromanage the Commerce Department, whose challenged determinations here are reasonable and supported by substantial evidence.

*Fujian Yinfeng Imp & Exp Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886, at *8 (Ct. Int'l Trade Sept. 13, 2022). The Court should follow these cases instead of the incorrectly decided *Risen Energy*.

**VI.     Commerce Correctly Rejected Ancientree's Proposal for a *Pro Rata* Subsidy**

Finally, there is no merit to Ancientree's argument that Commerce did not follow the Court's instructions when it declined to apply a *pro rata* adjustment to the subsidy rate it calculated for the EBCP. Ancientree Comments at 14. As Commerce explained in the *Second Remand Redetermination*, because its verification of the non-use certifications was not successful, it was not necessary to consider applying a *pro rata* adjustment to the subsidy rate.

PUBLIC DOCUMENT

## VII. Conclusion

For the foregoing reasons, the AKCA respectfully requests that the Court uphold Commerce's *Second Remand Redetermination* as supported by substantial evidence and in accordance with law.

        Respectfully submitted,

        /s/ Luke A. Meisner
        Luke A. Meisner
        Christopher T. Cloutier
        SCHAGRIN ASSOCIATES
        900 7th St. NW, Suite 500
        Washington, DC 20001
        (202) 223-1700

        *Counsel for the*
        *American Kitchen Cabinet Alliance*

Date: February 5, 2024

## CERTIFICATE OF COMPLIANCE

      I hereby certify that the foregoing Comments on Commerce's Second Remand Redetermination contain 2,927 words (including text, quotations, footnotes, headings, and attachments) and therefore comply with the word limitation set forth in the Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: February 5, 2024                                     /s/ Luke A. Meisner
                                                                               Luke A. Meisner