# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CABINETS TO GO, LLC, and THE | ) | |
| ANCIENTREE CABINET CO., LTD., | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | Court No. 20-00110 |
| | ) | PUBLIC DOCUMENT |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO COMMENTS ON
## FINAL RESULTS OF SECOND REMAND REDETERMINATION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

ELIO GONZALEZ
Senior Counsel
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

February 5, 2024

IOANA C. MEYER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001
*Attorneys for Defendant*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 2

    I.      The Countervailing Duty Investigation ................................................. 2

    II.    The Court's First Remand Order and Commerce's First Remand Redetermination ................................................................................................................ 4

    III.   The Court's Second Remand Order and Commerce's Second Remand Redetermination ................................................................................................ 5

ARGUMENT .................................................................................................................... 7

    I.      Standard Of Review ............................................................................... 7

    II.    Commerce's Second Remand Redetermination Complied With The Court's Remand Order And Is Supported By Substantial Evidence .................................. 8

          A.    Commerce, Despite Attempting To Verify, Found That Less Than Half Of Ancientree's Customers Provided Complete Loan Information ................. 8

          B.    Because Commerce's Attempt to Verify Ancientree's Submissions Was Unsuccessful, Commerce Could Not Calculate A *Pro Rata* Adjustment For Ancientree ........................................................................................ 15

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*Algoma Steel Corp. v. United States*,
    865 F.2d 240 (Fed. Cir. 1989) ............................................................. 17

*American Alloys, Inc. v. United States*,
    30 F.3d 1469 (Fed. Cir. 1994) ................................................. 11-12, 18

*AMS Associates, Inc. v. United States*,
    719 F.3d 1376 (Fed. Cir. 2013) ........................................................... 14

*Archer Daniels Midland Co. v. United States*,
    917 F. Supp. 2d 1331 (Ct. Int'l Trade 2013) ................................ 15, 16

*Bristol Metals L.P. v. United States*,
    703 F. Supp. 2d 1370 (Ct. Int'l Trade 2010) ....................................... 7

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ............................................................................. 8

*Cooper (Kunshan) Tire Co., Ltd. v. United States*,
    610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ...................................... 15

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
Slip Op. 22-45, No. 20-00110, 2022 WL 1598896, at *11 (Ct. Int'l Trade May 12, 2022) .......... 4

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
    Slip Op. 23-57, No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade Apr. 20, 2023)
    ....................................................................... 2, 5, 6, 7, 8, 9, 10, 11, 12, 16, 18, 19

*Diamond Sawblades Mfrs. Coalition v. United States*,
    547 F. Supp. 3d 1323 (Ct. Int'l Trade 2021) ...................................... 20

*Diamond Sawblades Mfrs. Coalition v. United States*,
    986 F.3d 1351 (Fed. Cir. 2021) ...................................................... 19-20

*Fine Furniture (Shanghai) Ltd. v. United States*,
    748 F.3d 1365 (Fed. Cir. 2014) ........................................................... 15

*Goodluck India Ltd. v. United States*,
    11 F.4th 1335 (Fed. Cir. 2021) ........................................................... 11

*Haixing Jingmei Chem. Prod. Sales Co. v. United States*,
    335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ...................................... 12

*Hercules, Inc. v. United States,*
    673 F. Supp. 454 (1987) ................................................. 12

*Micron Tech., Inc. v. United States,*
    117 F.3d 1386 (Fed. Cir. 1997) ...................................... 11

*Monsanto Co. v. United States,*
    698 F. Supp. 275 (Ct. Int'l Trade 1988) .......................... 12

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003) .................................... 4, 5

*Reiner Brach GmbH & Co.KG v. United States,*
    206 F. Supp. 2d 1323 (Ct. Int'l Trade 2002) ................... 13

*Risen Energy Co., Ltd. v. United States,*
    658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) .................. 17

*Risen Energy Co. v. United States,*
    No. 20-03912, 2023 WL 2890019 47, at *5 (Ct. Int'l Tr. Apr. 11, 2023) ......... 6, 7, 16, 17, 18

*Tianjin Magnesium Int'l Co., Ltd. v. United States,*
    836 F. Supp. 2d 1377 (Ct. Int'l Trade 2012) ................. 7-8

*Ulasim Sanayi A.S. v. United States,*
    498 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ................. 12

*Wuxi Tianran Photovoltaic Co., Ltd. v. United States,*
    Slip Op. 23-2, No. 21-00538, ECF No. 45, 46 (Ct. Int'l Trade Jan. 10, 2023) .................... 19

## Statutes

19 U.S.C. § 1516a ................................................................. 7

19 U.S.C. § 1677e ................................................................ 14

19 U.S.C. § 1677m ......................................................... 12, 13, 14

## Administrative Determinations

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination,*
    85 Fed. Reg. 11,962 (Dep't of Commerce Feb. 28, 2020) ...................................... 3

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*,
84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019) ................................................... 2

*Wood Mouldings and Millwork Products From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2010-2021*,
88 Fed. Reg. 62,319 (Dep't of Commerce Sept. 11, 2023) .................................................... 18

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

```
_____
                                    )
DALIAN MEISEN WOODWORKING CO., LTD.,)
                                    )
            Plaintiff,              )
                                    )
        and                         )
                                    )
CABINETS TO GO, LLC, and THE        )
ANCIENTREE CABINET CO., LTD.,       )
                                    )
            Plaintiff-Intervenors,  )
                                    )
        v.                          )        Court No. 20-00110
                                    )        PUBLIC DOCUMENT
UNITED STATES,                      )
                                    )
            Defendant,              )
                                    )
        and                         )
                                    )
AMERICAN KITCHEN CABINET ALLIANCE,  )
                                    )
            Defendant-Intervenor.   )
_____ )
```

## DEFENDANT'S RESPONSE TO COMMENTS ON
## FINAL RESULTS OF SECOND REMAND REDETERMINATION

Pursuant to the Court's opinion and orders, dated April 20, 2023 and October 17, 2023,[1]

defendant, the United States, respectfully submits this response to the comments filed by

plaintiff-intervenors, The Ancientree Cabinet Co., Ltd. (Ancientree), Ancientree Br., ECF Nos.

134 & 135, and Cabinets to Go, LLC (CTG),[2] CTG Br., ECF No. 136, to the Department of

---

[1]  The Court's order dated May 9, 2023 clarified the deadlines for briefing (ECF No. 122) and the order dated October 17, 2023 extended the deadlines (ECF No. 129).

[2]  CTG incorporates by reference Ancientree's comments opposing the second remand redetermination.  CTG Br. at 1, ECF No. 136.

Commerce's second redetermination pursuant to remand, dated December 6, 2023. *See* Opinion and Order, ECF Nos. 111 & 118, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Slip Op. 23-57, No. 20-00110, 2023 WL 3222683, at *8 (Ct. Int'l Trade Apr. 20, 2023) (*Dalian II*); Final Results of Redetermination Pursuant to Court Remand, December 6, 2023, ECF Nos. 130 & 131 (*Second Remand Redetermination*). For the reasons discussed below, we respectfully request that the Court sustain Commerce's second remand redetermination and enter judgment in favor of the United States.

## BACKGROUND

### I.     The Countervailing Duty Investigation

On August 12, 2019, Commerce published its preliminary affirmative determination in this investigation. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019) (P.R. 675), and accompanying Decision Memorandum (PDM) (P.R. 623). In the preliminary determination, Commerce determined that the government of China failed to answer questions and provide necessary information requested by Commerce related to the Export Buyer's Credit Program. Consequently, Commerce found that the government of China had failed to cooperate to the best of its ability in responding to Commerce's requests for information and, applying facts available with an adverse inference, found that the program is countervailable. PDM at 16-19. Accordingly, Commerce determined that the two mandatory respondents, Dalian Meisen Woodworking Co., Ltd (Meisen) and Ancientree, used and benefitted from the Export Buyer's Credit Program. *Id.*

In the final determination, Commerce found it was unable to verify non-use of the program by Meisen and Ancientree, and thus continued to use adverse facts available to find that

both entities used and benefitted from the Export Buyer's Credit Program. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11,962 (Dep't of Commerce Feb. 28, 2020) (final determ.), and accompanying IDM (P.R. 846) at 20-36. Informing Commerce's inability to verify non-use was the government of China's refusal to answer questions necessary for Commerce's determination. *Id*. Commerce had specifically requested the 2013 revised administrative measures of the program because, pursuant to these revised measures, the China Ex-Im Bank may disburse export buyer's credits directly or through a third-party partner or correspondent banks. *Id.* at 26-29, 32-34. Without seeing the revised measures due to the government of China's failure to respond to Commerce's questions, Commerce has no information on what other changes may have been made or how the operation of the program changed. *See id.*

To verify whether the China Ex-Im Bank had disbursed any credits through other banks, Commerce requested a list of all partner/correspondent banks involved in the disbursement of funds under the program. Supplemental Questionnaire (P.R. 566). The government of China did not provide the requested list of partner banks, documents regarding the administration of the program, translated laws and regulations pertaining to the program, or program usage data, thereby withholding necessary information requested of it, which Commerce determined significantly impeded the proceeding. IDM at 26, 36. Commerce did consider the certifications of non-use submitted by respondents, but explained that the gap in the record due to the missing information "prevents complete and effective verification of the customer's certifications of non-use." *Id.* at 35.

## II. The Court's First Remand Order and Commerce's First Remand Redetermination

On May 12, 2022, the Court sustained in part Commerce's determination and remanded in part the issue of the Export Buyer's Credit Program. *Dalian Meisen Woodworking Co., Ltd. v. United States*, Slip Op. 22-45, No. 20-00110, 2022 WL 1598896, at *11 (Ct. Int'l Trade May 12, 2022) (*Dalian I*). The Court found that Commerce had failed to satisfy the first step of determining whether to apply an adverse inference when selecting from among the facts otherwise available: determining that information is missing that creates a gap in the record. *Id.* at *6 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)). The Court found unpersuasive Commerce's claims that verification would be unduly burdensome—without attempting to verify, and the fact that the information required was only indirectly related to alleged actual use of the program by the respondents' U.S. customers was insufficient to show information was missing from the record. *Id.* at *8.

The Court directed Commerce, on remand, to "either (1) find a practical solution to verify the non-use information on the record, such as reopening the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Ancientree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly." *Id.* at *10.

On remand, Commerce attempted to verify the respondents' claims of non-use by reopening the record and issuing supplemental questionnaires to obtain the information that was missing from the record. Final Results of Remand Redetermination Pursuant to Court Remand, ECF No. 86 (Aug. 5, 2022) (*First Remand Results*) at 4. The supplemental questionnaires sought information relating to the respondents' customers' traditional and non-traditional financing. *Id.* Commerce made this request so that it could review the financing information

and determine whether the China Ex-Im Bank had disbursed export buyer's credits directly or through a third-party partner or correspondent banks.

Although the respondents made some efforts to respond to Commerce's supplemental questionnaires, neither respondent provided all the information necessary for Commerce to be able to conduct the required verification. *Id.* Given the lack of complete responses from the respondents and their U.S. customers, Commerce concluded that the incomplete information on the record would not, for purposes of verification and an ultimate determination, overcome the deficiencies caused by the government of China's non-cooperation. *Id.* at 20. Therefore, Commerce continued to find on remand, based on adverse facts available, that both respondents benefitted from the Export Buyer's Credit Program. *Id.* at 20-21.

## III. The Court's Second Remand Order and Commerce's Second Remand Redetermination

The Court issued its second decision on April 20, 2023, finding that the use of facts available was supported by substantial evidence as to Meisen but not as to Ancientree. The Court remanded the matter to Commerce to attempt to verify Ancientree's submissions to the extent it finds appropriate. *Dalian II*, 2023 WL 3222683. In the second decision, the Court found that, with respect to Meisen, the respondent did not fully comply with Commerce's requests because it made unilateral decisions about what parts of the questionnaire were "relevant" and what information should suffice. *Id.* at *6. In response to the first questionnaire, Meisen did not use the loan template provided and provided different information from what Commerce requested. *Id.* When Commerce sent another supplemental questionnaire asking the company to use the loan template, Meisen responded that each of the line items requested irrelevant information. *Id.* Thus, the Court sustained Commerce's remand determination in its second decision. *Id.*

However, with respect to Ancientree, the Court found that Ancientree "provided complete loan information for more than half of its U.S. customers {… including} its largest customers, representing approximately 90% of its U.S. sales (by volume and by value) during the period of investigation." *Id.* The Court compared Ancientree's response to the facts in *Risen Energy Co. v. United States*, No. 20-03912, 2023 WL 2890019 47, at *5 (Ct. Int'l Tr. Apr. 11, 2023), where this Court found, on similar facts, that it was "unreasonable for Commerce to require perfection." *Id.* at *6-7. Here too, the Court found that the information provided by Ancientree "essentially eliminated any gap" left by China's non-compliance with Commerce's requests for information about the Export Buyer's Credit Program. *Id.* at *7. It found that the record contained uncontroverted non-use declarations by all of Ancientree's U.S. customers, as well as complete loan information for 90% of Ancientree's U.S. sales. *Id.* In addition, the Court observed that of Ancientree's 27 U.S. customers, 15 provided complete loan information, one was no longer in business, and the remaining 11 were unreachable by Ancientree. *Id.* The Court found this was unsurprising compared to Meisen because Ancientree's U.S. customers are not affiliates and thus it has no control over their cooperation. *Id.* Accordingly, the Court ordered Commerce to "attempt to verify Ancientree's submissions to the extent the Department finds appropriate, and if that is successful, either accept the *pro rata* adjustment proposed by Ancientree or conclude that the Export Buyer's Credit Program was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly." *Id.* at *8.

On remand, Commerce attempted to verify Ancientree's submissions for the 15 out of 27 customers that responded to Commerce's supplemental questionnaire during the first remand proceeding. *Second Remand Redetermination* at 5-10. Out of those 15 customers, two provided plainly unresponsive information that did not contain any of the requested data. *Id.* at 6. Three

customers would not agree to verification, and with respect to two customers, Commerce was unable to verify non-use based on actions the customers took during verification. *Id.* at 7. Consequently, Commerce was only able to proceed with verification for eight of Ancientree's customers, a number that accounts for less than 30 percent of its customers. *Id.* at 14-21. Accordingly, Commerce was unable to successfully verify Ancientree's submissions, as mandated by the Court. *Dalian II*, 2023 WL 3222683 at *8. Because Commerce could not accomplish the first part of the remand order, it was also unable to successfully verify the accuracy of the *pro rata* adjustment proposed by Ancientree such that applying such an adjustment would be supported by substantial evidence. *Second Remand Redetermination* at 5-10. Thus, Commerce determined that the information on the record was insufficient to overcome the government of China's non-cooperation or to permit a finding of non-use. *Id.* at 9. Accordingly, Commerce concluded on remand "that verification of Ancientree's submissions was not successful within the meaning of the Court's instructions and it is, therefore, not necessary or appropriate to apply a *pro rata* adjustment as sought by Ancientree or to conclude that Ancientree did not use the {Export Buyer's Credit Program}." *Id.* at 9-10. Commerce therefore made no change to its determination that Ancientree used and benefitted from the Export Buyer's Credit Program. *Id.* at 21-22.

**ARGUMENT**

I.     **Standard Of Review**

This Court sustains Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Bristol Metals L.P. v. United States*, 703 F. Supp. 2d 1370, 1373 (Ct. Int'l Trade 2010). This standard applies equally to remand redeterminations. *See, e.g.*, *Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012)

(applying the standard of review to Commerce's remand redetermination). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

## II.    Commerce's Second Remand Redetermination Complied With The Court's Remand Order And Is Supported By Substantial Evidence

In remanding the case to Commerce with respect to Ancientree, the Court instructed Commerce to: attempt to verify Ancientree's submissions to the extent the Department finds appropriate, and if that is successful, either (a) accept the *pro rata* adjustment proposed by Ancientree or (b) conclude that the Export Buyer's Credit Program was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly. *Dalian II*, 2023 WL 3222683, at *8.

### A.    Commerce, Despite Attempting To Verify, Found That Less Than Half Of Ancientree's Customers Provided Complete Loan Information

On remand, Commerce complied with the Court's order by attempting to verify Ancientree's submissions. Ultimately, however, Commerce was unable to verify significant portions of the non-use information provided by Ancientree on behalf of its U.S. customers. *See Second Remand Redetermination* at 5-10, 14-21. Importantly, Ancientree failed to provide complete loan information for *less than half* of its U.S. customers. *See Dalian II*, 2023 WL 3222683, *6. Commerce cannot rely on only a portion of a respondent's customers to verify non-usage of the Export Buyer's Credit Program because doing so would give respondents an incentive to evade scrutiny by providing responses only for those customers that do not use the Program. *See Second Remand Redetermination* at 5. Notably, out of a total 27 customers, 15 provided a response to Commerce's supplemental questionnaire in the first remand proceeding.

*Id.* at 6.  Out of those 15, however, two customers provided nominal submissions that were plainly unresponsive and did not provide any of the requested data relating to the period of investigation.  *Id.*  Commerce accordingly found that these responses were unverifiable.  *Id.*  Of the remaining 13 customers that did provide a complete response to the supplemental questionnaire, three customers did not agree to verification prior to any arrangements being made (Customers F, G, and H),[3] and two customers failed verification (Customers B and E).  *Second Remand Redetermination* at 7-10.

With respect to Customer B, Commerce circulated a verification agenda to Ancientree and the customer in advance of verification.  *Id.* at 7.  After Commerce officials arrived at the customer's location and began examining the items listed in the agenda, a company official asked the Commerce verifiers to step out of the conference room.  *Id.*  While the Commerce officials were out of the room, the Customer B company official took several key documents that Commerce verifiers had collected as exhibits.  *Id.*  The official notified Commerce that Customer B would no longer be providing the information, and thus, verification was halted.  *Id.*  No party disputes that Customer B did not allow Commerce to complete verification.

Verification of Customer E was not successful because although it permitted Commerce to conduct verification, did not provide crucial documentation that Commerce had requested prior to verification.  *Id.* at 7-8.  Specifically, Customer E did not provide the underlying loan agreements and/or applications relating to the line of credit that was outstanding during the period of investigation.  *Id.* at 8.  In the verification agenda prior to the on-site visit, Commerce explained that these documents are key documents in support of Customer E's reporting, and that

---

[3]  Customer H initially consented to verification but then withdrew two days prior to the scheduled start date.  *Second Remand Redetermination* at 7.

Commerce would need to examine these documents at verification.  *Id.*  These documents are critical to permitting Commerce to analyze the basis for the loans and any restrictions or requirements related to the lending.  *Id*. at 8.  Without these documents, Commerce explained that it was restricted in its ability to examine the company's usage of the Export Buyer's Credit Program, and consequently, verification of Company E was not successful.  *Id.* at 8.

Ancientree disagrees with Commerce's findings and claims that Commerce's verification requests were "expansive and onerous," "highly unusual and burdensome," and requested "highly confidential information."  Ancientree Br. at 2-4, 6-12, 17.  But this is simply not true.  Commerce's verification procedures, including the information it sought to verify, were reasonable and in line with its practice.  That the verifications involved unaffiliated customers does not alter Commerce's wide latitude in determining its verification procedures.  This wide latitude is particularly applicable here given the Court's order that Commerce attempt to verify Ancientree's submissions "to the extent the Department finds appropriate…."  *Dalian II*, 2023 WL 3222683, at *8.

Commerce explained that it "has refined its {Export Buyer's Credit Program} practice to permit respondents/customers to provide gap-filling information to overcome the {government of China's} failure to provide necessary information."  *Second Remand Redetermination* at 15; *First Remand Redetermination* at 13-15.  Commerce adhered to that practice in the first remand proceeding and issued its standard set of Export Buyer's Credit questions.  In the second remand proceeding, Commerce attempted to verify the information Ancientree submitted on behalf of its customers by providing a "short, targeted verification agenda in advance of the onsite verification procedures."  *Second Remand Redetermination* at 16; *see, e.g.*, BPI Remand Record Index 3.  Commerce was flexible with respect to scheduling the verifications based on the

customers' availability.  *Id.*  In addition, Commerce provided a verification agenda to Ancientree and directly to its customers.  The initial agenda provided prior to the first verification remained unchanged in substance for each ensuing verification, and thus customers would know what to expect.  *Id.* at 16-17.  Where verification was permitted, Commerce completed the process in less than a day and a half.  *Id.*

Moreover, Commerce did not request any unusual information with regards to the proprietary nature of documents requested.  *Id*. at 16.  The types of documents requested—financial statements, accounting records, and supporting documentation (*e.g.,* loan agreements)—are the type of documentation that Commerce routinely requests in its administrative proceedings.  *Id.*  Where requested, Commerce permitted information to be (and often was) designated as business proprietary information, only to be viewed by individuals with access to such information.  *Id.*  Commerce routinely relies on such measures to protect information and facilitate participation in its proceedings.  *Id.*  Thus, contrary to Ancientree's argument, Commerce's verification procedures were routine, reasonable, and necessary steps for Commerce to take on remand in light of the Court's order that "Commerce attempt to verify Ancientree's submissions to the extent the Department finds appropriate…."  *Dalian II*, 2023 WL 3222683, at *8.

Ancientree further takes issue with Commerce's approach of conducting in-person verification and requesting information from Ancientree's unaffiliated customers.  *Id.*  But Commerce has the authority "to derive verification procedures ad hoc," *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021) (citing *Micron Tech., Inc. v. United States*, 117 F.3d 1386 (Fed. Cir. 1997)), and "the statute gives Commerce *wide latitude* in its verification procedures."  *American Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir.

1994) (emphasis added); *see also Hercules, Inc. v. United States*, 673 F. Supp. 454, 469 (1987) ("The decision to select a particular methodology rests solely within Commerce's sound discretion."). In fact, the Court's remand order acknowledges Commerce's wide latitude in determining its own verification procedures. *Dalian II*, 2023 WL 3222683, at *8 (ordering Commerce to "attempt to verify Ancientree's submissions *to the extent the Department finds appropriate*") (emphasis added). Thus, it was within Commerce's discretion to determine how and to what extent it would conduct verification. Ancientree's dissatisfaction with the result is an insufficient basis to set aside Commerce's determination. *Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) (finding "mere disagreement" with Commerce's weighing of the evidence insufficient basis for challenge).

Apart from criticizing Commerce's methods of verification, Ancientree also argues that Commerce failed to consider the record in its entirety, which, according to Ancientree, does not support a finding of use of the Program. Ancientree's Br. at 5-6. Ancientree claims that there is no evidence on the record undermining the reliability of the non-use certifications provided by its customers. *Id*. at 5-6. As a threshold matter Ancientree submitted the certifications of non-use on its own, fully understanding that they could be subject to verification. *See Second Remand Redetermination* at 18; *Monsanto Co. v. United States*, 698 F. Supp. 275, 281 (Ct. Int'l Trade 1988) (finding that verification is a spot check despite Commerce having the authority to verify all information on the record); *see also Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 498 F. Supp. 3d 1345, 1360 (Ct. Int'l Trade 2021) ("Commerce is required to verify all information it relies upon in making a final determination in an investigation, 19 U.S.C. § 1677m(i), and is prohibited from relying on unverified information."). Further, Ancientree's conclusion that the information on the record corroborates the certifications is

unsupported. Ancientree's Br. at 5-6. A majority of Ancientree's customers either declined, or were otherwise unable, to support their certifications with verifiable information. Commerce is not required to rely on information that cannot be verified—including non-use certifications and supplemental questionnaire responses. *Second Remand Redetermination* at 15; *see Reiner Brach GmbH & Co.KG v. United States*, 206 F. Supp. 2d 1323, 1336 (Ct. Int'l Trade 2002), *dismissed sub nom. Reiner Brach GmbH & Co. v. United States*, 49 F. App'x 296 (Fed. Cir. 2002) (finding that Commerce was not required to use information that it could not verify (citing 19 U.S.C. § 1677m(e))). Such unverified information is not appropriate to use as support for a finding of non-use. *Id.* Thus, the reliability of a majority of the certifications was undermined by the companies' unwillingness to either respond to Commerce's supplemental questionnaire or to participate in verification.

Ancientree also contends that the government of China's initial questionnaire response supports Ancientree's claim of non-use. Ancientree Br. at 5. In its response, the government of China averred that Ancientree and its customers did not use the Export Buyer's Credit Program based on a search in the Chinese Export-Import Bank's loan database. *Id.* But Commerce "cannot simply rely on the {government of China's} assurances that it has checked its records." IDM at 35. Nor does Commerce have a way of verifying such responses when it does not receive the requested information from the government of China. *Id.* Further, in the second remand proceeding, Commerce explained that the government of China's "claim was simply made in a submission to Commerce, unaccompanied by supporting information." *Second Remand Redetermination* at 20. Commerce did not verify the government of China's claim during the investigation because its response to Commerce's questionnaire was inadequate, thus giving rise to the finding of failure to cooperate. *Id.* Therefore, such unverified information is

13

insufficient for purposes of finding non-use of the Export Buyer's Credit Program and does not fill the gap created by the government of China in the investigation.

The statute at 19 U.S.C. § 1677e(a)(2)(D) supports Commerce's explanation that it is not required to rely on information that cannot be verified. This statute provides that, when information provided by a respondent cannot be verified as provided in 19 U.S.C. § 1677m(i), Commerce "shall, subject to section {19 U.S.C. § 1677m(d)}, use the facts otherwise available in reaching the applicable determination under this subtitle." Section 1677m(e) likewise provides that Commerce shall not decline to consider information if, among other factors, "the information can be verified." 19 U.S.C. § 1677m(e)(2). The facts available provision of the statute, read together with section 1677m(e)(2), gives Commerce the discretion to disregard evidence that cannot be verified. *See AMS Associates, Inc. v. United States*, 719 F.3d 1376, 1380 (Fed. Cir. 2013) ("In disregarding information that it could not verify, Commerce did not act contrary to law."). Thus, Commerce lawfully declined to rely on unverifiable information given that the majority of Ancientree's customers did not respond to Commerce's questionnaire on remand, that some customers provided information that could not be successfully verified, and that several other companies responded but did not agree to permit verification.

Finally, Ancientree argues that Commerce is "in reality applying {adverse facts available} to a cooperating party, Ancientree," because relevant information exists elsewhere on the record. Ancientree Br. at 12-14. Commerce did not apply adverse facts available based on any failure to cooperate by Ancientree or its customers. *Second Remand Redetermination* at 18. Rather, Commerce applied an adverse inference in selecting among the facts available due to the *government of China's* failure to cooperate. Ancientree, in turn, was unable to fill the gaps stemming from the government of China's failure to cooperate. *Id.* Commerce is authorized to

apply adverse facts available to a foreign government in a manner that impacts a respondent, notwithstanding a respondent's cooperation. *See Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014); *see also Cooper (Kunshan) Tire Co., Ltd. v. United States*, 610 F. Supp. 3d 1287, 1303 (Ct. Int'l Trade 2022) (citations omitted). Although Commerce should "seek to avoid such impact if relevant information exists elsewhere on the record," *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (Ct. Int'l Trade 2013), the gap in the record in this case precludes Commerce from mitigating the negative collateral impact on Ancientree.

Thus, on remand, Commerce was unable to verify non-use of the Export Buyer's Credit Program for *more than 70 percent* of Ancientree's U.S. customers. *Id.* at 8. Further, although Commerce found no explicit usage of the program for Ancientree's remaining eight customers during the period of investigation, these customers accounted for *far less* than 90 percent of period of investigation sales—as Ancientree claimed. *Id.* at 5-10. In sum, a clear majority of customers that provided certifications of non-use declined, or otherwise were unable, to support such certifications with verifiable information. *Id.* at 9. Therefore, Commerce was unable to successfully verify significant portions of Ancientree's submissions, and as such, substantial evidence supports its determination. *Id.*

### B. Because Commerce's Attempt to Verify Ancientree's Submissions Was Unsuccessful, Commerce Could Not Calculate A *Pro Rata* Adjustment For Ancientree

Because Commerce was unable to successfully verify significant portions of the reported information, Commerce was consequently unable to verify the accuracy of Ancientree's proposed *pro rata* adjustment. *Id.* at 5-6, 9-10. Ancientree first takes issue with the meaning of "successfully" in the Court's remand instruction. Ancientree Br. at 14. Ancientree argues that the Court did not define "successful" as meaning that *all* of Ancientree's customers must be

verified in person. *Id.* As an initial matter, Commerce did not understand "successful" to mean that all Ancientree's customers must be verified. Rather, Commerce recognized that the Court found the evidence on the record indicated that more than half of Ancientree's customers, representing approximately 90 percent of U.S. sales, did not use the program. *Second Remand Redetermination* at 5. Commerce then attempted to verify the information submitted for that majority of customers, in accordance with the Court's holding in *Dalian II*, but as described above, was unable to.

Moreover, despite Ancientree's arguments to the contrary, Commerce is not holding Ancientree to any standard of "perfection" and requiring that information from all its customers be verified. Ancientree Br. at 14. Rather, Commerce gave Ancientree an opportunity to fill the gap created by the government of China's non-cooperation, but Ancientree was unable to do so. This inability, as explained above, resulted in an "evidentiary gap" that now represents over 70 percent of Ancientree's U.S. customers. Further, Ancientree was unable to fill this gap despite additional factors cited by the Court in its remand order, which are similar to those in *Risen Energy Co., Ltd. v. United States*, Slip Op. 23-48, No. 20-3912, 2023 WL 2890019 (Ct. Int'l Trade Apr. 11, 2023) (*Risen AR6 II*) (including the passage of time between the remand redetermination and the period of investigation, Commerce's policy change regarding the Export Buyer's Credit Program, and Ancientree's cooperation with Commerce's requests for information). *Dalian II*, 2023 WL 3222683 at *8. Thus, although Commerce made its best efforts to verify the gap that existed prior to this second remand, the evidence on the record has shown that unverifiable gap to have increased significantly. *Second Remand Redetermination* at 14.

Ancientree cites other cases in which the Court remanded for Commerce's similar findings that the respondent did not fill the gap created by the government of China's non-cooperation. Ancientree Br. at 8-11, 13-14 (citing, *e.g., Risen Energy Co., Ltd. v. United States*, Slip Op. 23-161, No. 20-3912, 2023 WL 7991650 (Ct. Int'l Trade Nov. 17, 2023) (*Risen AR6 III*); *Risen AR6 II*, 2023 WL 2890019; *Risen Energy Co., Ltd. v. United States*, 658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) (*Risen AR8*)). We acknowledge that, in other cases, the Court has disagreed with Commerce's finding of usage of the Export Buyer's Credit Program under similar circumstances. However, certain of these decisions are not final and remain subject to appeal,[4] and they are also not binding on the Court in this case. *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989).

Even so, the cases that Ancientree cites are inapposite. For example, in *Risen AR8*, the Court held that "Commerce may attempt to verify but only to the extent it does not overly burden voluntary participants." 658 F. Supp. 3d at 1372. There, however, only one customer failed to provide certification, and the Court determined that there was little evidence that Commerce would find anything relevant in the records of the non-affiliate customers. *Id.* at 1371-72. That situation is very different from the one here, where Ancientree was unable to fill the gap in the record that is now far larger. *See Second Remand Redetermination* at 7-8.[5] Similarly, Commerce's determination in *Wood Mouldings from China* is distinguishable. *See* Ancientree

---

[4] In litigation involving the sixth administrative review of the CVD order on crystalline silicon photovoltaic cells from China, the Court issued a final decision and entered judgment on December 19, 2023. *See Risen Energy Co., Ltd. v. United States*, Slip Op. 23-185, No. 20-3912, 2023 WL 8788862 (Ct. Int'l Trade Dec. 19, 2023). There has not been a final decision in the litigation involving the eight administrative review of the same order. *See Risen Energy Co., Ltd. v. United States*, No. 22-00231.

[5] Moreover, the remand results in *Risen AR8* were issued on January 9, 2024, and thus, they post-date the second remand redetermination in this case, issued on December 6, 2023.

Br. at 10-11 (citing *Wood Mouldings and Millwork Products From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2010-2021*, 88 Fed. Reg. 62,319 (Dep't of Commerce Sept. 11, 2023) (*Wood Mouldings from China*)). In that determination, Commerce found non-use for a respondent that provided a non-use certification and supplemental questionnaire responses for *all* of its U.S. customers, which were subject to potential verification. In this case, however, Ancientree did not provide supplemental questionnaire responses for all its U.S. customers. Moreover, Commerce's decision in *Wood Mouldings from China* was not challenged in this Court and thus, there was no order directing Commerce to attempt to verify the respondent's submissions, as there is in this case.

Further, Commerce is given "wide latitude in its verification procedures." *American Alloys*, 30 F.3d 1469 at 1475. The Court's instructions accorded Commerce discretion to determine what would be a "successful" verification of Ancientree's submissions. *Dalian II*, 2023 WL 3222683 at *8; *Second Remand Redetermination* at 21. Such a definition of "successful"—that Commerce verifies all of Ancientree's customers' submissions—is reasonable. As we stated previously, where Commerce has requested necessary loan information from all customers to find non-use, it follows that Commerce would also verify all customers. *See, e.g.*, *First Remand Redetermination* at 15-19, 27 ("The partial information on non-use provided here does not leave Commerce a path towards further investigating, completely verifying, or ultimately determining non-use of this program for {Ancientree}."); *see also Risen Energy Co., Ltd. v. United States*, Slip Op. 23-48, No. 20-3912, 2023 WL 2890019 (Ct. Int'l Trade Apr. 11, 2023) (*Risen AR6 II*) (Commerce found non-use of the Export Buyer's Credit Program with respect to respondent that submitted complete non-use information for its customer

and Commerce was able to verify the information). But here, Commerce was unable to verify that all the information in Ancientree's questionnaire responses supported a finding of non-use, and verification was therefore unsuccessful.

Ancientree argues that, at the very least, Commerce should apply a *pro rata* adjustment to its customers that participated in verification and for which Commerce did not find explicit usage of the Export Buyer's Credit Program. Ancientree Br. at 14-16. But the Court's remand order does not compel Commerce to adopt a *pro rata* adjustment in the event of an unsuccessful verification. *See Dalian II*, 2023 WL 3222683 at *8. Nor would it be reasonable for Commerce to apply a *pro rata* adjustment where less than half of Ancientree's customers failed to provide complete loan information. *Cf. Wuxi Tianran Photovoltaic Co., Ltd. v. United States*, Slip Op. 23-2, No. 21-00538, ECF No. 45, 46 (Ct. Int'l Trade Jan. 10, 2023) (sustaining remand results where one customer declined to participate in verification and therefore Commerce was unable to verify non-use of the Program).

Nevertheless, Ancientree argues that as another alternative, Commerce could set up customer-specific rates. Ancientree at 15-16. But again, such a course of action was not contemplated in the Court's order. *See Dalian II*, 2023 WL 3222683 at *8. In addition, even the customer-specific quantity and value figures Ancientree provided in support of its proposed adjustment remain largely unverified. *Second Remand Redetermination* at 9-10. And while some of the customers' reporting approximated Ancientree's figures, others were not even close. *Id.*

Ancientree's reliance on the diamond sawblades from China antidumping duty order to argue that for the customers that had a successful verification, Commerce has no basis to apply facts available, is misplaced. Ancientree Br. at 16 (citing *Diamond Sawblades Mfrs. Coalition v.*

*United States*, 986 F.3d 1351 (Fed. Cir. 2021); *Diamond Sawblades Mfrs. Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct. Int'l Trade 2021)).  There, the Federal Circuit questioned whether Commerce had substantial evidence to support its determination to apply adverse facts available based on the potential unreliability of only a small percentage of reported sales.  *Diamond Sawblades Mfrs. Coalition*, 547 F. Supp. 3d at 1330-31.  The gaps in that case were so small that the application of adverse facts available was found not to be supported.  *Id.*  But here, Commerce attempted to verify non-use information to fill far larger gaps created by the government of China's non-cooperation, accounting for *over* half of Ancientree's U.S. customers.  Moreover, even in the *Diamond Sawblades* litigation, contrary to Ancientree's claim, Commerce continued to apply adverse facts available on remand to all sales, which the Court sustained.  *Diamond Sawblades Mfrs. Coalition*, 547 F. Supp. 3d at 1327-31.  Therefore, Commerce's determination here was supported by substantial evidence and in accordance with law.

## CONCLUSION

For the above reasons, we respectfully request that the Court sustain Commerce's second remand redetermination and enter final judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:
ELIO GONZALEZ
Senior Counsel
Office of the Chief Counsel
   For Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C. 20230

/s/ Ioana C. Meyer
IOANA C. MEYER
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 305-0001
Email:  Ioana.C.Meyer@usdoj.gov

February 5, 2024

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to paragraph 2(B)(2) of the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in paragraph 2(B)(1)(b) of the Chambers Procedures for a filing under Rule 56.2(h). Specifically, excluding those exempted portions of the brief as set forth in paragraph 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 5,748 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word 2016) used to prepare this brief.

/s/ Ioana C. Meyer