C-570-107
Remand
Slip Op. 24-83
POI:  01/01/2018 – 12/31/2018
**Public Version**
E&C/OV:  RG

***Dalian Meisen Woodworking Co., Ltd. v. United States*,**
**Court No. 20-00110, Slip Op. 24-83 (CIT July 22, 2024)**
**Wooden Cabinets and Vanities and Components Thereof**
**from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand opinion and order of the U.S. Court of International

Trade (the Court) issued on July 22, 2024.[1]  These final results concern the final determination in

the countervailing duty (CVD) investigation of wooden cabinets and vanities and components

thereof (cabinets) from the People's Republic of China (China).[2]  In its *Third Remand Order*, the

Court sustained in part, and remanded in part, Commerce's approach to applying facts available

with adverse inferences (AFA) to The Ancientree Cabinet Co., Ltd. (Ancientree) with respect to

the Export Buyer's Credit Program (EBCP).[3]  The Court determined that, "{b}ecause Commerce

---

[1] *See Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 24-83 (CIT July 22, 2024) (*Third Remand Order*).
[2] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 85 FR 11962 (February 28, 2020) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM); *see also* Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022), dated August 5, 2022 (First Remand Redetermination), available at https://access.trade.gov/resources/remands/22-45.pdf; and Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT April 20, 2023), dated December 6, 2023 (Second Remand Redetermination), available at https://access.trade.gov/Resources/remands/23-57.pdf.
[3] *See generally Third Remand Order*.

verified non-use of the {EBCP} by certain of Ancientree's U.S. customers but could not (or did not) with respect to others, the court will treat the use of countervailing duties differently for the sales to customers whose non-use of the {EBCP} was verified, from those sales where non-use was not verified."[4]  Regarding the implementation of this decision, the Court directed Commerce as follows:  (1) recalculate Ancientree's total subsidy rate to reflect the revised EBCP determination; (2) for each Ancientree customer whose non-use of the EBCP was verified, determine a customer-specific subsidy rate that excludes a program rate for the EBCP;[5] and (3) recalculate the all-other's rate accordingly.[6]  We have implemented the Court's decision, as set forth in *Third Remand Order*, below.

## II.    BACKGROUND

### A.  *Final Determination*

In the *Final Determination*, Commerce determined, based on AFA, that respondents Ancientree and Dalian Meisen Woodworking Co., Ltd. (Meisen) used and benefited from the EBCP because the Government of China (GOC) failed to adequately respond to Commerce's requests for information about the program.  Specifically, Commerce determined that the program was used, despite certifications from the respondents' U.S. customers claiming non-use,[7] because the GOC failed to provide:  (1) an adequate explanation of the operation of the program; (2) the 2013 Revisions to the administrative rules regulating the program, including information concerning the elimination of a two million dollar contract threshold between the respondents and their customers for participation in the EBCP; and (3) a list of

---

[4] *Id*. at 21.
[5] Commerce's AFA findings were sustained with respect to the U.S. customers whose non-use was not verified.  *Id*. at 24.
[6] *Id*.
[7] *See* Ancientree's Letter, "Section III Questionnaire Response," dated July 11, 2019 (Ancientree IQR), at Exhibit II-12; and Meisen's Letter, "Section III Questionnaire Response," dated July 11, 2019 (Meisen IQR), at Exhibit 14.

partner/correspondent banks that the GOC relies on as intermediaries in implementing the

program.[8]  Commerce concluded that this information was necessary to verify the respondents'

claims that neither they, nor their U.S. customers, had used or benefited from the EBCP.[9]

Ancientree, Meisen, and U.S. importer Cabinets to Go, LLC (Cabinets to Go) challenged

Commerce's finding, based on AFA, that Ancientree and Meisen received benefits under the

EBCP.

### B.  *First Remand Order*[10]

On May 12, 2022, the Court remanded the *Final Determination* to Commerce, holding

that "Commerce's finding that necessary information is missing from the record, such that there

is a gap in the factual record that requires the use of 'facts otherwise available' under {section

776(a) of the Tariff Act of 1930, as amended (the Act)} is contrary to the statute and lacks the

support of substantial evidence."[11]  The Court directed Commerce to "either (1) find a practical

solution to verify the non-use information on the record, such as the reopening of the record to

issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the

CVD rates for Meisen and Ancientree to exclude the subsidy rate for the {EBCP}, and

recalculate the all-others rate accordingly."[12]

### C.  First Remand Redetermination

On May 19, 2022, in light of the *First Remand Order*, and in consideration of the fact

that the respondents provided non-use certifications for all U.S. customers during the underlying

investigation,[13] Commerce issued supplemental questionnaires to both respondents regarding

---

[8] *See Final Determination* IDM at 24-29.
[9] *Id.* at 35.
[10] *See Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022) (*First Remand Order*).
[11] *Id.* at 18.
[12] *Id.* at 21.
[13] *See* Ancientree IQR at Exhibit II-12; and Meisen IQR at Exhibit 14.

their customers' non-use claims.[14]  In June 2022, the respondents submitted questionnaire responses.[15]  Subsequently, Commerce issued a second supplemental questionnaire to Meisen.[16]  Meisen responded on June 21, 2022.[17]

On August 5, 2022, Commerce issued the First Remand Redetermination.[18]  We continued to find that the respondents used and benefited from the EBCP during the period of investigation (POI), January 1, 2018, through December 31, 2018.  Specifically, we found that Meisen failed to provide the requested loan information for its customers, despite multiple requests, and we determined that Ancientree failed to provide such information for numerous customers.[19]  Therefore, notwithstanding Commerce's reopening of the record, the responses provided by the respondents did not provide a basis to overcome the GOC's lack of cooperation with respect to the EBCP in the investigation.[20]  Accordingly, Commerce determined that it had no grounds to depart from its initial finding regarding the program.

### D.  *Second Remand Order*[21]

On April 20, 2023, the Court issued the *Second Remand Order*, sustaining in part, and remanding in part,[22] Commerce's First Remand Redetermination.  The Court observed that Ancientree and Meisen complied to different degrees with Commerce's information requests, *i.e.*, the supplemental EBCP questionnaires issued in the remand proceeding.[23]  Meisen

---

[14] *See* Commerce's Letters, "Export Buyer's Credit Supplemental Questionnaire," both dated May 19, 2022.
[15] *See* Meisen's Letter, "Export Buyer's Credit Supplemental Questionnaire Response," dated June 10, 2022; and Ancientree's Letter, "Export Buyer's Credit Supplemental Questionnaire Response," dated June 13, 2022 (Ancientree's June 13, 2022 SQR).
[16] *See* Commerce's Letter, "2nd Export Buyer's Credit Supplemental Questionnaire," dated June 15, 2022.
[17] *See* Meisen's Letter, "2nd Export Buyers Credit Supplemental Questionnaire Response," dated June 21, 2022.
[18] *See generally* First Remand Redetermination.
[19] *Id*. at 30-31.
[20] *Id*.
[21] *See Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT Apr. 20, 2023) (*Second Remand Order*).
[22] *Id.* at 16.
[23] *Id*. at 11.

unilaterally determined that much of the requested information was irrelevant and failed to provide complete/verifiable information; accordingly, the Court found that the continued application of AFA was appropriate with respect to the company.[24]

However, the Court found that Ancientree "provided complete loan information for more than half of its U.S. customers {… including} its largest customers, representing approximately 90% of its U.S. sales (by volume and by value) during the {POI}."[25]  In light of these facts, the Court directed Commerce to "attempt to verify Ancientree's submissions to the extent {Commerce} finds appropriate, and if that is successful, either accept the *pro rata* adjustment proposed by Ancientree or conclude that the {EBCP} was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly."[26]

### E.  Second Remand Redetermination

On December 6, 2023, Commerce issued the Second Remand Redetermination.[27] Therein, Commerce explained that, although we attempted to verify non-use of the program for Ancientree, we were unable to successfully verify key information regarding the purported non-use of the EBCP for certain customers.  We highlighted that over 70 percent of Ancientree's customers that provided certifications of non-use, which accounted for a significant percentage of Ancientree's U.S. sales during the POI, declined, or otherwise were unable, to support such certifications with verifiable information.[28]  Thus, we did not consider that the verification

---

[24] *Id*. at 11-12.
[25] *Id*. at 11.
[26] *Id*. at 16.
[27] *See generally* Second Remand Redetermination.
[28] *Id*. at 21.  We noted in the Second Remand Redetermination that, of Ancientree's 27 U.S. customers, 14 provided no response to Commerce's EBCP questions (or provided a wholly cursory/unusable response) when we reopened the record on remand.  Of the 13 remaining companies, three refused verification, one customer plainly interfered with Commerce's verification process and stopped cooperating in the middle of the procedures, and one customer failed to substantiate its non-use claim with supporting documentation.  *Id*. at 19.

process in this case was successful under the circumstances.[29]  Accordingly, we continued to determine that there was a gap in the record resulting from the GOC withholding necessary information that was requested of it, and further determined that the information proffered by Anciantree and its customers had not filled that gap.[30]  Therefore, we made no revisions to the Anciantree subsidy rate calculated in the *Final Determination*.[31]

### F.  *Third Remand Order*

In its *Third Remand Order*, the Court sustained in part, and remanded in part, Commerce's approach to the application of AFA to Anciantree.[32]  The Court disagreed that the non-participation of numerous Anciantree customers warranted application of the total AFA rate for the program (of 10.54 percent) to Anciantree.  It stated that, "{b}ecause Commerce verified non-use of the {EBCP} by certain of Anciantree's U.S. customers but could not (or did not) with respect to others, the court will treat the use of countervailing duties differently for the sales to customers where non-use of the {EBCP} was verified, from the sales where non-use was not verified."[33]  For sales to companies that Commerce was not able to verify, the Court sustained the application of AFA because a "gap in the record exists with respect to these sales" and an adverse inference was authorized "based on China's failure to fully answer Commerce's questionnaires with respect to the {EBCP}."[34]  However, for sales to companies for which Commerce was able to verify non-use of the program, the Court held that "Commerce must eliminate the subsidy represented in the rate applied to those sales" and that "Commerce can base its determination of non-use on verified information" for such sales.[35]  Thus, the Court

---

[29] *Id.*
[30] *Id.*
[31] *Id.* at 22.
[32] *See generally Third Remand Order*.
[33] *Id.* at 21.
[34] *Id.* at 23-24.
[35] *Id.* at 21.

ordered that "on remand, for each customer whose non-use of the {EBCP} was verified, Commerce must determine a customer-specific rate that excludes a subsidy amount for the {EBCP}, and recalculate Ancientree's total rate, and the all-others rate."[36]  The Court also advised that Commerce may determine its own method for complying with this order.[37]

On October 2, 2024, Commerce issued its Draft Results and invited parties to comment.[38] On October 15, 2024, the petitioner[39] and Ancientree submitted comments on the Draft Results.[40]

## III.    REVISED SUBSIDY RATES

Pursuant to the Court's *Third Remand Order*, under respectful protest,[41] we have revised the subsidy rate calculations in the manner described below.

### A.  Ancientree's Overall Subsidy Rate

We have recalculated Ancientree's subsidy rate by relying on a *pro rata* figure for the EBCP program subsidy rate.  The calculation of the revised rate is shown in **Table 1**, below:

---

[36] *Id.* at 24.
[37] *Id.*
[38] *See* Draft Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 24-83 (CIT July 22, 2024), issued October 2, 2024 (Draft Results).
[39] The petitioner is the American Kitchen Cabinet Alliance.
[40] *See* Petitioner's Letter, "Comments on Draft Redetermination Pursuant to Court Remand," dated October 15, 2024 (Petitioner Comments); and Ancientree's Letter, "Comments on Draft Remand Results," dated October 15, 2024 (Ancientree Comments).
[41] *See Viraj Group Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).

**TABLE 1**

| Column A | Column B | Column C | Column D |
|---|---|---|---|
| | | EBCP adjustment factor; % sales from companies that failed verification ** | Revised Cash Deposit Rate |
| | | 21.56% | |
| Self-Reported Grants | 0.06% | | 0.06% |
| Policy Lending - General | 0.10% | | 0.10% |
| Export Buyers' Credit | 10.54% | | 2.27% |
| Provision of Plywood for LTAR | 0.01% | | 0.01% |
| Provision of Sawn Wood and Continuously Shaped Wood for LTAR | 0.01% | | 0.01% |
| Provision of Particleboard for LTAR | 1.15% | | 1.15% |
| Provision of Fiberboard for LTAR | 1.20% | | 1.20% |
| Provision of Electricity for LTAR | 0.26% | | 0.26% |
| **Subsidy Rate:** | **13.33%** | | **5.06%** |
| Source:  June 13, 2022 SQR, Exhibit 1 | | | |
| Barcode:  4251043-01 | | | |
| | ** percentage of POI sales from customers that participated and passed verification, by value | | |

Column A lists each of the programs countervailed by Commerce in the underlying investigation.[42]  Column B provides the program-specific subsidy rates applied in the *Final Determination*.[43]

Consistent with the *Third Remand Order*, we are revising the Ancientree EBCP rate to only include a portion of the total EBCP rate (which was 10.54 percent).  Specifically, we have pro-rated the program rate to reflect the proportion of Ancientree POI sales to customers that did not participate in our remand proceedings or otherwise failed verification, because Commerce's application of AFA for the EBCP was upheld insofar as it impacted such customers.

As detailed in the Second Remand Redetermination,[44] Commerce was unable to verify non-use information for numerous Ancientree customers; these customers accounted for

---

[42] *See* Memorandum, "Ancientree Final Determination Calculation Memorandum," dated February 21, 2020.
[43] *Id.*
[44] *See* Second Remand Redetermination.

approximately 21.56 percent of Ancientree's sales, by value, during the POI.[45]  *See* Column C. Accordingly, we applied this percentage as an adjustment factor to the EBCP rate and, finally, recalculated the total subsidy rate for Ancientree in light of the revised EBCP rate.  *See* Column D.

      With respect to this revised Ancientree cash deposit rate (5.06 percent), we note that Commerce issued the final results of the 2022 administrative review of the order on November 5, 2024.  Ancientree was a mandatory respondent in that review.[46]  Accordingly, Ancientree's revised cash deposit rate calculated in this remand has been superseded by the cash deposit rate assigned to Ancientree based on the final results of the 2022 administrative review.

### B. Customer-Specific Rates

      Commerce has created customer-specific rates for Ancientree's customers in compliance with the Court's order that, "for each customer whose non-use of the {EBCP} was verified, Commerce must determine a customer-specific rate that excludes a subsidy amount for the {EBCP}."[47]  Commerce's recalculation of customer-specific subsidy rates, is provided in **Table 2**, below:

---

[45] This figure is derived from Exhibit 1 of Ancientree's June 13, 2022 SQR.  Specifically, we determined that the non-highlighted Customers, which were identified as Customers A, C, D, I, J, K, L, and O in the prior remand, cooperated and successfully demonstrated non-use.  *See* Second Remand Redetermination.  Using Exhibit 1, we summed the value of POI sales for the *other* Ancientree customers, and then we divided the resulting value by Ancientree's total POI sales to the United States.  The resulting figure represents the adjustment factor.  We multiplied this percentage by the total EBCP rate (of 10.54 percent) to arrive at the pro-rated Ancientree rate for the EBCP.

[46] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2022*, 89 FR 88962 (November 12, 2024) (*Cabinets from China CVD 2022 Final*).

[47] *See Third Remand Order* at 24.

|  | TABLE 2 |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| **Column A** | **Column B** | **Column C** | **Column D** | **Column E** | **Column F** | **Column G** | **Column H** |
| CVD SUMMARY |  | CVD AR1 | CVD AR1 + AD AR1 | Gap period | CVD AR1 + AD AR1 | CVD AR2 + AD AR1 | CVD AR2 + AD AR2 |
|  |  | Liq at CVD rate | Liq at CVD rate (add 4.49% if non-use) | Liq w/o duties, gap period | Liq at CVD rate (add 4.37% if non-use) | Liq at CVD rate (add 4.37% if non-use) | Liq at CVD rate |
|  |  | 8/12/19 - 10/8/19 | 10/9/19 - 12/9/19 | 12/10/19 - 4/16/20 | 4/17/20 - 12/31/20 | 1/1/21 - 3/31/21 | 4/1/21 - 12/31/21 |
|  | Customer-specific rate (Amended INV) |  |  |  |  |  |  |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |
| [          ] | 2.79% | 2.79% | 7.28% | w/o regard | 7.16% | 7.16% | 2.79% |
| [          ] | 13.33% | 13.33% | 13.33% | w/o regard | 13.33% | 13.33% | 13.33% |

Column A lists each customer and Column B lists the revised subsidy rate on a customer-specific basis, *i.e*., including the 10.54 percent EBCP rate for customers that failed verification and removing the 10.54 percent for those that demonstrated non-use of the program.

While Commerce has computed the rates in Column B at the direction of the Court, we have not relied on the above figures to establish *prospective* customer-specific cash deposit rates for several reasons. First, the Act requires Commerce to determine a single subsidy rate for each investigated respondent, and, thus, it would be inappropriate for Commerce to establish

numerous cash deposit rates for Ancientree here.[48]  Second, we must adhere to our regulations

regarding the treatment of proprietary information.  Cash deposit rates are inherently public in

nature.  Because they form the basis for the estimated duties collected at the border, importers

and other members of the public must have access to them; for this reason, Commerce notifies

the public of these rates via their publication in the *Federal Register*.  Here, however, the revised

rates necessarily contain proprietary information, *i.e.*, the identity of particular customers.[49]

Therefore, if Commerce were to publish these rates in the context of an amended final

determination, it would reveal proprietary information to the public in violation of the Trade

Secrets Act.[50]

  That said, we recognize that cash deposit rates serve two purposes:  (1) they establish the

amounts to be collected in estimated deposits of countervailing duties, as discussed above; and

(2) they also form the basis for the assessment of final countervailing duties where no party

requests an administrative review of the associated entries.  In this redetermination, we are

mindful of the fact that no party requested a review of entries of Ancientree's subject

merchandise which entered the United States during the first two administrative review

periods.[51]  Because the liquidation of those entries has been enjoined, the assessment of final

duties is still pending with respect to them.

---

[48] *See* section 705(c)(1)(B)(i)(I) of the Act, which states Commerce "shall … determine *an estimated individual countervailable subsidy rate* for each exporter and producer individually investigated" (emphasis added).
[49] *See* 19 CFR 351.105(c)(6) (noting that Commerce "normally will consider the following factual information to be *business proprietary* information, if so designated by the submitter ... Names of particular customers").
[50] *See* 18 U.S.C. § 1905.
[51] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Preliminary Results of Countervailing Duty Administrative Review, Rescission and Intent To Rescind Administrative Review, in Part; 2019-2020*, 87 FR 27099, 27101 (May 6, 2022) (*CVD AR1 Prelim*) (rescinding the review with respect to Ancientree); and *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, Rescission of Administrative Review in Part, and Intent To Rescind in Part; 2021*, 88 FR 29084 (May 5, 2023) (rescinding the review with respect to Ancientree).

Therefore, we intend to instruct U.S. Customs and Border Protection (CBP) to revise the amount of cash deposits already collected on those entries using the rates set forth in Columns C through H, above.  As further explained below, this will permit Commerce to collect the Court-directed amount of countervailing duties on a customer-specific basis, while also taking into account any duty offsets for the EBCP already provided to Ancientree.

Importantly, we note that there exists an antidumping duty (AD) order on cabinets from China,[52] and Commerce also investigated Ancientree as a mandatory respondent in that parallel proceeding.  When establishing Ancientree's cash deposit rate in the less-than-fair-value investigation, Commerce offset the company's preliminary and final dumping margins for export-contingent subsidies, pursuant to section 772(c)(1)(C) of the Act.[53]  Therefore, Commerce reduced Ancientree's dumping margin to reflect Commerce's affirmative determination of export subsidies for the company, *i.e.*, the affirmative countervailing of the EBCP.

Accordingly, to the extent that Ancientree's rate is recalculated in this remand redetermination as a result of the Court's instructions, we must account for the fact that a portion of the export subsidy offset has already been realized by Ancientree's customers/importers in the companion AD proceeding.  Moreover, it was at this reduced cash deposit rate that Ancientree's entries would be liquidated for AD purposes because, in the absence of AD administrative

---

[52] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Antidumping Duty Order*, 85 FR 22126 (April 21, 2020) (*AD Order*).
[53] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Extension of Provisional Measures*, 84 FR 54106, 54107 (October 9, 2019) (*AD Preliminary Determination*) (noting that the preliminary determination cash deposit rate was offset for an export subsidy, *i.e.*, the EBCP), and accompanying Preliminary Decision Memorandum at 49 ("Commerce determined in the preliminary determination of the companion CVD investigation that Ancientree and Foremost each benefitted from certain subsidy programs contingent on exports totaling 10.54 percent"); unchanged in *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Final Affirmative Determination of Sales at Less Than Fair Value*, 85 FR 11953, 11955 (February 28, 2020), and accompanying IDM at 10-11 (noting that the final cash deposit rate was offset for the EBCP export subsidy rate).

reviews, such entries would be liquidated "as entered," *i.e.*, at the rate which accounted for an export subsidy offset.[54]  To ensure that the appropriate duties are levied on entries of Ancientree's merchandise, we have identified the various periods during which each of the customers/importers benefited from such an offset in the AD proceeding.

- For the period covered by Column C, there were no AD measures in effect, and, thus, the revised customer-specific subsidy rate can be applied for each customer, *i.e.*, 13.33 percent (for customers found to have used the EBCP) or 2.79 percent (for customers that demonstrated non-use of EBCP).

- For the period covered by Column D, Commerce had already applied a subsidy offset to Ancientree in the AD proceeding, which resulted in the company's AD cash deposit rate being reduced from 4.49 percent to 0.00 percent.[55]  Thus, Ancientree and its customers/importers received an offset of 4.49 percent to their AD cash deposits due to the (prior) countervailing of the EBCP.  To account for this, and to ensure that the duties assessed for the customers in question are accurate, we have added the 4.49 percent offset value to the 2.79 percent (*i.e.*, the revised Ancientree rate, excluding EBCP) to arrive at an applicable rate of 7.28 percent.

- During the period covered by Column E, the "gap period" was in effect.  Provisional measures based on the preliminary determination in the CVD proceeding had expired, and the order had not yet published.  Thus, cash deposits were not required during this period, and the applicable rate during the period was 0.00 percent.[56]

---

[54] *See* CBP message number 2166411, dated 06/15/2022 (rescinding the AD review for Ancientree and directing CBP to liquidate at the cash deposit rate required at the time of entry), available at https://trade.cbp.dhs.gov/ace/adcvd/adcvd-public/#.

[55] *See AD Preliminary Determination*.

[56] *See* CBP message number 9357303, dated 12/23/2019.

- For the period covered by Column F, Ancientree and its customers/importers received an offset of 4.37 percent in the AD proceeding due to the EBCP.[57]  Again, to account for this, and to ensure that the duty liabilities assessed for the customers in question are accurate, we have added the 4.37 percent offset value to the 2.79 percent revised subsidy rate to arrive at an applicable subsidy rate of 7.16 percent.

- For the period covered by Column G, Ancientree and its customers/importers received an offset of 4.37 percent to the cash deposit rate in the AD proceeding.[58]  To ensure that the duties assessed for the customers in question are accurate, we added the 4.37 percent offset value to the 2.79 percent revised subsidy rate to arrive at applicable subsidy rate of 7.16 percent.

- For the period covered by Column H, Commerce did not apply an export subsidy offset[59] in the parallel AD proceeding for Ancientree.[60]  Accordingly, the applicable customer-specific rates are the CVD investigation rates presented herein, with the EBCP rate included (13.33 percent) or without the EBCP rate included (2.79 percent), depending on whether the customer demonstrated non-use.

We note that Commerce conducted no administrative reviews of Ancientree during the first or second period of review in the CVD proceeding.  Accordingly, any entries of subject merchandise made during these time periods (with the exception of the gap period) will be

---

[57] *See AD Preliminary Determination*.

[58] *See AD Order*, 85 FR at 22126.

[59] We note that Ancientree challenged this aspect of the second administrative review of the *AD Order* and the Court recently issued an opinion sustaining Commerce's determination.  *See The Ancientree Cabinet Co., Ltd. v. United States*, Court No. 23-00262, Slip Op 24-118 (CIT Oct. 24, 2024) (*AD AR2 Opinion*).

[60] *See Wooden Cabinet and Vanities and Components Thereof from the People's Republic of China:  Final Results and Final Determination of No Shipments of the Antidumping Duty Administrative Review; 2021-2022*, 88 FR 76729 (November 7, 2023) (*Cabinets from China AD 2021-2022 Final*).

liquidated "as entered," *i.e.*, at the customer-specific cash deposit rate in effect, which will be modified based on this litigation, as shown above.

Entries made on or after January 1, 2022, are not addressed in this remand redetermination because they are covered by the recently-completed 2022 administrative review of the order, in which Ancientree participated.[61]  Thus, any assessment made with respect to those entries will be at the rates determined in the 2022 administrative review.

### C.  All-Others Rate

Commerce revised the all-others rate in compliance with the Court's order.  The existing all-others rate of 20.93 percent reflected a simple average of the rates calculated for each of the three mandatory respondents in the CVD investigation.  In light of Ancientree's revised rate of 5.06 percent calculated in this remand redetermination, we have recalculated the all-others rate through a simple average of the rates for Ancientree, Meisen, and Rizhao Foremost Woodwork Manufacturing Company Ltd (the third mandatory respondent in the CVD investigation), *i.e.*, (5.06 + 18.27 + 31.18) / 3 = 18.17 percent.

We note that this revision to the all-others cash deposit rate is, generally, prospective. However, like entries from Ancientree, entries from certain companies subject to the all-others rate are covered by an injunction.  Specifically, Cabinets to Go obtained an injunction covering entries of merchandise "produced and/or exported by Senke Manufacturing Company (Senke), Qingdao Haiyan Drouot Household Co., Ltd. (Qingdao Haiyan), Xuzhou Yihe Wood Co., Ltd. (Xuzhou Yihe), Kunshan Baiyulan Furniture Co., Ltd. (Kunshan Baiyulan), or Jiangsu Beichen Wood Co., Ltd. (Jaingsu Beichen), and imported by Cabinets to Go, LLC" which were "entered, or withdrawn from warehouse, for consumption, during the period August 12, 2019, through

---

[61] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 FR 38021 (June 12, 2023); and *Cabinets from China CVD 2022 Final*.

December 31, 2020, excluding the period from December 10, 2019 to April 16, 2020."[62]  Entries of merchandise produced and/or exported by Qingdao Haiyan, Xuzhou Yihe, Kunshan Baiyulan, and Jiangsu Beichen, imported by Cabinets to Go, LLC, and entered during the 2019-2020 period of review were not covered by the administrative review, because a review was either not requested in the first instance or the review was ultimately rescinded for the company.[63] Accordingly, we intend to instruct CBP to revise the amount of cash deposits already collected on those entries using the revised all-others cash deposit rate of 18.17 percent calculated in this remand redetermination.

Entries from Senke were also subject to the injunction referenced above.  However, although Cabinets to Go obtained an injunction for entries from this company, Senke was a participant in the 2019-2020 review and received a subsidy rate.[64]  Accordingly, the disposition of entries of merchandise produced and/or exported by Senke, and entered during the 2019-2020 review period, is not covered by this remand redetermination, and the applicable rate for entries from this company that were imported by Cabinets to Go is based on the outcome of the 2019-2020 review.

## IV.     INTERESTED PARTY COMMENTS

As noted above, on October 15, 2024, the petitioner and Ancientree submitted comments on the Draft Results.[65]  We address these comments below.

---

[62] *See* CBP message number 1209405, dated 07/28/2021.
[63] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 FR 3128 (June 11, 2021); and *CVD AR1 Prelim*.
[64] *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019-2020*, 87 FR 51967 (August 24, 2022).
[65] *See generally* Petitioner Comments; and Ancientree Comments.

*Petitioner's Comments*

The following is a verbatim summary of the argument submitted by the petitioner.[66]  For further details, *see* Petitioner Comments at 2-13:

> {W}hile Commerce's Draft Remand Redetermination complies with the opinion issued by the Court { } in {the *Third Remand Order*}, it is neither supported by substantial evidence nor otherwise in accordance with law.  In the final redetermination, rather than recalculating the subsidy rate for {respondent Ancientree} to reduce the rate for the {EBCP}, Commerce should continue to apply total adverse facts available (AFA) to calculate a program rate of 10.54 percent for the EBCP and apply that rate to all of Ancientree's customers.  Commerce should also not make any changes to the all-others rate that was calculated in the original investigation.

*Ancientree's Comments*

The following is a verbatim reproduction of the argument submitted by Ancientree.[67]  For further details, *see* Ancientree Comments at 2-3:

> At the Court's instructions, {Commerce} removed the {EBCP subsidy rate} for the Customers that were successfully verified.  Given Ancientree was not a mandatory respondent in certain subsequent reviews, {Commerce} then made adjustments for the liquidation rates in subsequent reviews also accounting for reviews where {Commerce} offset for {the EBCP subsidy rate} in the antidumping review.  Draft Remand at 9.  However, in the second review {of the parallel AD Order}, {Commerce} failed to offset for {the EBCP subsidy rate} in the antidumping review.  In the Draft Remand, in Column H, {Commerce} removed the full {EBCP subsidy rate} for this period for only the Customers that were successfully verified in the CVD investigation.  Ancientree submits that under the law {Commerce} should still remove the {EBCP subsidy rate} for all Customers in Column H, regardless of whether they cooperated in the investigation CVD verification.
>
> In calculating the export price in antidumping, {Commerce} is ordered to increase the U.S. sales price of subject merchandise by the amount of any export subsidy found countervailable in the companion countervailing Order.  Such an adjustment is not discretionary but it is required by statute.  19 U.S.C. §1677a(c)(1)(c).  Indeed, {Commerce}'s approach to this remand demonstrates that {Commerce}'s practice and policy is to avoid double remedies of the {EBCP subsidy rate} when AD and CVD Orders apply to the same merchandise.  As {Commerce} has not made this adjustment for the {EBCP} in the antidumping AR2 Final Results, then it is

---

[66] *See* Petitioner Comments at 2.
[67] *See* Ancientree Comments at 2-3.

unlawful {Commerce} to apply the {EBCP subsidy rate} in the companion countervailing result, regardless of cooperation in the investigation.

**Commerce Position:** As detailed above, in this redetermination Commerce has calculated a revised subsidy rate for each Ancientree customer to reflect non-use of the EBCP in instances where we successfully verified such non-use. We also made adjustments to the overall Ancientree subsidy rate and to the "all others" rate (which was partially based on the Ancientree rate in the underlying investigation). These adjustments are consistent with the Court's directive in the *Third Remand Order.* Therefore, we have made no changes to the Draft Results.

With one exception, discussed below, the parties do not contest that Commerce's approach on remand complies with the *Third Remand Order*.[68] Nonetheless, each party raises several arguments regarding Commerce's treatment of the EBCP subsidy rate, as applied in this remand redetermination. We address the arguments in turn.

First, the petitioner asserts that, regardless of the fact that the Draft Results comply with the Court's order, the decision is "neither supported by substantial evidence nor otherwise in accordance with law"; in particular, the petitioner contends that Commerce's decision to apply the full AFA plug rate (of 10.54 percent) for the EBCP in the underlying investigation and in the prior remands was in accordance with the law[69] and consistent with court precedent.[70] However, regardless of their merit, the petitioner's arguments regarding the appropriate implication of the

---

[68] *See* Petitioner Comments at 2 ("Commerce's *Draft Remand Redetermination* complies with the opinion issued by the Court"); and Ancientree Comments at 2 ("At the Court's instructions, {Commerce} removed the EBC program for the Customers that were successfully verified").

[69] *See* Petitioner Comments at 3-7 ("Both U.S. law and the SCM provide that Commerce is not only entitled but also expected to apply AFA under these circumstances to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations").

[70] *Id.* at 4 (contending that the Court "held more persuasively in other cases that Commerce is justified in applying AFA to find that respondents and their U.S. customers benefited from the ECBP based on the GOC's lack of cooperation" (citing *Fujian Yinfeng Imp & Exp Trading Co. v. United States*, Ct. No. 21-00088, Slip Op. 22-107, at 8 (CIT September 13, 2022))).

GOC's noncooperation have been squarely addressed by the Court. Thus, Commerce has no discretion in this regard.

Specifically, the Court has recognized that the GOC failed to fully participate in this investigation.[71] However, the Court also determined that there was no basis to apply AFA with respect to those customers for which Commerce successfully verified the information regarding non-use.[72] Therefore, it directed Commerce to recalculate the Ancientree rate (and the rate for its customers and the "all others" rate) in the manner described above.[73] Commerce has complied with the Court's order.

Second, the petitioner asserts that the customer-specific rates Commerce has calculated on remand are not in accordance with law.[74] As we noted in the Draft Results, the Act requires Commerce to determine a single subsidy rate for each investigated respondent.[75] Similarly, various aspects of Commerce's regulations make customer/importer-specific cash deposit rates impermissible.[76] Nonetheless, it bears noting that Commerce will not publish customer-specific cash deposit rates in this redetermination; instead we computed a single weighted-average subsidy rate for Ancientree and another single weighted-average subsidy rate for exporters falling into the "all others" category. Because the Act provides no bar to assessing countervailing duties on entries on a customer/importer-specific basis, we disagree that our determination fails to comport with the law.

---

[71] See *Third Remand Order* at 23 (holding that "the use of adverse facts available is authorized based on China's failure to cooperate"); *see also Second Remand Order* at 16 ("Here, there is no serious dispute that China failed to act to 'the best of its ability' to comply with Commerce's requests for information, specifically with respect to the operation of the {EBCP}.").
[72] *Id*.
[73] *Id*.
[74] See Petitioner Comments at 9-11.
[75] *See* pages 11-12, *supra* (citing section 705(c)(1)(B)(i)(I) of the Act).
[76] *Id*. (citing 19 CFR 351.105(c)(6)).

Commerce's application of this alternate method, *i.e.*, determining customer-specific rates which will serve as the basis for liquidation in the absence of a review, constitutes the most accurate and feasible approach to comply with the Court's order that "for each customer whose non-use of the {EBCP} was verified, Commerce must determine a customer-specific rate that excludes a subsidy amount for the {EBCP}."[77]  The petitioner asserts that Commerce should not have altered the all-others rate because it should not have adjusted Ancientree's rate.  However, as explained above, we continue to find that our modification to Ancientree's rate is in compliance with the *Third Remand Order* and, thus, it is appropriate to modify the all-others rate to account for the change in Ancientree's rate.  Moreover, modifying the all-others rate was specifically contemplated in the *Third Remand Order*, which ordered that Commerce "recalculate Ancientree's total rate, and the all-others rate."[78]

Further, the petitioner urges that Commerce continue to implement this decision under protest.[79]  We agree and, as noted above, Commerce's redetermination here is being completed under protest.

Both the petitioner and Ancientree raised concerns regarding Commerce's treatment of entries during the period in which the POR for the second administrative review of the CVD order overlaps with the second review of the AD order.  For the period April 1, 2021 through December 31, 2021 (*i.e.*, the period covered by Column H in Table 2), Commerce did not apply an export subsidy offset in the parallel AD segment for Ancientree, and the Court recently sustained that determination after Ancientree failed to exhaust its administrative remedies to timely raise the issue before Commerce in that proceeding.[80]  Using its chosen method for

---

[77] *See Third Remand Order* at 24.
[78] *Id.*
[79] *See* Petitioner Comments at 4.
[80] *See Cabinets from China AD 2021-2022 Final*, 88 FR at 76729; *see also AD AR2 Opinion* at 9-15.

determining customer-specific rates, Commerce determines on remand that the applicable customer-specific CVD rates during this period are simply the CVD investigation rates with the EBCP rate included (13.33 percent) or without the EBCP rate included (2.79 percent), depending on whether the customer demonstrated non-use. In other words, unlike the prior periods – in which Commerce was required to increase the CVD rate to reflect the applicable export subsidy offset already applied in a parallel AD administrative review – the period of April 1, 2021, through December 31, 2021, does not necessitate an adjustment because no export subsidy offset was granted in the AD proceeding covering this time period.

Ancientree asserts that Commerce should remove the EBCP subsidy rate for *all* Ancientree customers during this April 1, 2021, through December 31, 2021 period, rather than only removing the EBCP rate for cooperating customers.[81] Specifically, Ancientree asserts that, pursuant to section 772(c)(1)(C) of the Act, in AD proceedings, Commerce "is ordered to increase the U.S. sales price of subject merchandise by the amount of any export subsidy found countervailable in the companion countervailing Order" and because Commerce "has not made this adjustment for the {EBCP} in the antidumping AR2 Final Results, then it is unlawful for {Commerce} to apply the {EBCP rate}" in this (*i.e.*, the CVD) segment.[82] We disagree. Importantly, as Ancientree notes, section 772(c)(1)(C) of the Act directs Commerce to apply an export subsidy offset in determining the export price (and constructed export price) used to calculate an AD margin. This statutory directive is expressly limited to AD proceedings, not CVD proceedings. As discussed above, the calculation of dumping margins in the parallel AD proceeding was the subject of separate litigation, in which the Court upheld Commerce's denial of an export subsidy offset because Ancientree failed to exhaust its administrative remedies

---

[81] *See* Ancientree Comments at 2-3.
[82] *Id*. at 2.

before Commerce.[83]  The current (CVD) litigation does not present an additional opportunity for Ancientree to seek redress in the parallel AD proceeding that is subject to separate litigation.[84] As such, Commerce has made no changes to the customer-specific rates calculated for this overlapping period.

Finally, the petitioner asks that Commerce "take steps to ensure that entries of subject merchandise for the period {April 1, 2021, through December 31, 2021} are ultimately liquidated at the correct rate based on the final outcome of Ancientree's challenge" in the parallel AD proceeding that is subject to separate litigation, by "withholding the issuance of any final liquidation instructions for the CVD duties with respect to these entries until a final decision, including all appeals, has been reached in the pending litigation brought by Ancientree."[85]

Ancientree's April 1, 2021, through December 31, 2021, CVD entries are subject to suspension of liquidation pursuant to a statutory injunction issued in this case.  Once that injunction dissolves, Commerce will issue liquidation instructions consistent with its normal practice.  To the extent litigation in the AD proceeding continues, entries subject to a statutory injunction in the AD litigation[86] may remain suspended independently pursuant to the statutory injunction issued in that case.  Accordingly, Commerce determines that such injunctive "steps"

---

[83] *See AD AR2 Opinion.*
[84] In fact, the Court (in the AD litigation) explicitly noted the interplay between the AD and CVD litigation in its decision, observing that "any change to the EBCP rate as a result of the *Dalian* litigation {*i.e.*, the instant case} will impact Ancientree's CVD assessment rate … reinforcing the need for Ancientree to have raised this issue in a timely manner so that Commerce could determine, in the first instance, how to address any relationship between these determinations." *Id.* at 12 n.12.
[85] *See* Petitioner Comments at 12-13.
[86] *See* CBP message number 4110402, dated April 19, 2024 (the statutory injunction covers entries "exported by the Ancientree Cabinet Co., Ltd.; that were subject to the U.S. Department of Commerce's final determination in *Cabinets from China AD 2021-2022 Final*, 88 FR at 76729 (November 7, 2023); and were entered, or withdrawn from warehouse for consumption, during the period 04/01/2021 through 03/31/2022"), available at https://trade.cbp.dhs.gov/ace/adcvd/adcvd-public/#.

are sufficient to ensure that the remedy resulting from this litigation is consistent with the holdings of the Court and there is nothing further required of Commerce in this regard.

## V.     FINAL RESULTS OF REDETERMINATION

In compliance with the *Third Remand Order*, we have calculated a revised subsidy rate for each Ancientree customer whose non-use of the EBCP was verified, excluding a subsidy amount for the program.  In so doing, as described above, we have made necessary adjustments to the CVD rates[87] to reflect the corresponding export subsidy offset for the EBCP which Ancientree and its customers realized in the parallel AD proceeding.  We also recalculated Ancientree's total rate on a *pro rata* basis to reflect this determination, and we recalculated the all-others rate to reflect this modification to Ancientree's rate.  We have made no modifications to the applicable rates for the U.S. customers whose non-use was not successfully verified.

Should the Court affirm these final results of redetermination, Commerce will publish a notice of amended final determination in the *Federal Register* and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with any outstanding injunctions and the redetermination above.

11/12/2024

X _____

Signed by: ABDELALI ELOUARADIA
Abdelali Elouaradia,
Deputy Assistant Secretary
  for Enforcement and Compliance

---

[87] In this regard, we also note that, although the adjustments are to the cash deposit rates established for Ancientree's customers *for the purpose of the investigation*, these rates ultimately form the basis for liquidation until December 31, 2021, given the absence of a first or second CVD administrative review.  The rate for Ancientree established in the third administrative (covering calendar year 2022) will form the basis for cash deposits on Ancientree's merchandise prospectively.