UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD.,<br><br>*Plaintiff,*<br><br>and<br><br>CABINETS TO GO, LLC, and<br>THE ANCIENTREE CABINET CO., LTD.,<br><br>*Plaintiff-Intervenors,*<br>v.<br><br>UNITED STATES,<br><br>*Defendant.*<br><br>and<br><br>AMERICAN KITCHEN CABINET ALLIANCE,<br><br>*Defendant-Intervenor.* | Court No. 20-00110<br><br>PUBLIC DOCUMENT |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Luke A. Meisner
Christopher T. Cloutier
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for the
American Kitchen Cabinet Alliance*

Date: December 12, 2024

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   Summary ......................................................................................................................... 2

II.  Commerce's Original Determination and Subsequent Remand Redeterminations Should Have Been Upheld ............................................................................................... 4

   A. Commerce's Original Determination Was Supported by Substantial Evidence and in Accordance with Law ........................................................... 4

   B. Commerce's First and Second Remand Determinations Were Supported by Substantial Evidence and in Accordance with Law ..................................... 8

III. Commerce's Third Remand Redetermination Is Neither Supported by Substantial Evidence Nor in Accordance with Law ................................................................... 10

   A. Commerce's *Draft Remand Redetermination* Ignores the GOC's Failure to Cooperate ................................................................................................... 11

   B. Commerce's Customer-Specific Rates Have No Basis in the Statute or Commerce's Regulations and Practice ....................................................... 12

IV.  Commerce Should Not Have Revised the All-Others Rate ..................................... 15

V.   Conclusion .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ................................................................................................................................ 11

*Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022) .................................................................................................................................. 5

*Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) .......... 12

*Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ...... 4, 6

*Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285 (2010) ................. 4

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ............................................................... 14

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) .............. 4, 5, 11

*Fujian Yinfeng Imp & Exp Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886 Ct. Int'l Trade Sept. 13, 2022) ................................................................................................. 6

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) .................... 12

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) .......................... 3

*Yama Ribbons and Bows Co. v. United States*, 611 F. Supp. 3d 1394 (2022) ............................... 6

*Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280 (Ct. Int'l Trade 2022) .................................................................................................................................. 5

**Statutes**

19 U.S.C. § 1671e .......................................................................................................................... 14

19 U.S.C. § 1671d(c)(1)(B)(i)(I) ................................................................................................... 12

**Other Authorities**

Statement of Administrative Action accompanying the Uruguay Round Agreement Act, H.R. Doc. No. 103–316, vol. 1, at 870, *reprinted in* 1994 U.S.C.C.A.N. 4040 ................................ 11

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11962 (Dep't Commerce Feb. 28, 2020) .................................................................................................................... 4, 5

World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) ................................................................................................. 4

**Regulations**

19 C.F.R. §351.212(b)(1) ................................................................................................. 13

19 C.F.R. §351.212(b)(2) ................................................................................................. 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., ) ) *Plaintiff,* ) ) and ) ) CABINETS TO GO, LLC, and ) THE ANCIENTREE CABINET CO., LTD., ) ) *Plaintiff-Intervenors,* ) v. ) ) UNITED STATES, ) ) *Defendant.* ) ) and ) ) AMERICAN KITCHEN CABINET ALLIANCE, ) ) *Defendant-Intervenor.* ) | Court No. 20-00110<br><br>PUBLIC DOCUMENT |

**DEFENDANT-INTERVENOR'S COMMENTS ON REMAND REDETERMINATION**

Pursuant to this Court's July 22, 2024 opinion and order in *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 24-83 (CIT July 22, 2024) ("*Third Remand Opinion*") and the Court's October 7, 2024 revised scheduling order (ECF 157), Defendant-Intervenor American Kitchen Cabinet Alliance ("AKCA" or "Petitioner") submits the following response in opposition to the November 12, 2024 third remand redetermination ("*Third Remand Redetermination*") (ECF 160) issued by the U.S. Department of Commerce ("Commerce") in the above captioned action. As discussed below, while Commerce's *Third Remand Redetermination* complies with the Court's *Third Remand Opinion*, it is neither supported by substantial evidence nor otherwise in accordance with law. Rather than

1

recalculating the subsidy rate for The Ancientree Cabinet Co., Ltd. ("Ancientree") to reduce the rate for the Export Buyer's Credit Program ("EBCP"), Commerce should have continued to apply total adverse facts available ("AFA") to calculate a program rate of 10.54 percent for the EBCP and apply that rate to all of Ancientree's customers. In addition, Commerce erred in making changes to the all-others rate that was calculated in the original investigation.

## I.  Summary

The Government of China ("GOC") is following a strategy of noncooperation that appears to be succeeding in many countervailing duty cases that are appealed to the Court of International Trade ("CIT"). Under both U.S. countervailing duty law and the World Trade Organization's Agreement on Subsidies and Countervailing Measures ("SCM"), the GOC is expected to provide information regarding the subsidies it administers, as well as information regarding the recipients of those subsidies, because the GOC is in the best position to provide such information. The GOC has refused to provide this information for its Export Buyer's Credit Program ("EBCP"), a loan program that supports Chinese exports by financing foreign buyers, including U.S. purchasers. Both U.S. law and the SCM provide that Commerce is entitled to apply adverse facts available ("AFA") under these circumstances to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations.

Through both the GOC's refusal to cooperate and certain decisions issued by the CIT, the GOC has managed to shift the burden of producing relevant information from itself to its exporters' U.S. customers, who must prove that they have not availed themselves of the EBCP when purchasing subject merchandise. As Commerce has predicted, due to factors such as the large number of U.S. customers and the GOC's failure to provide relevant information such as

the correspondent banks involved in the EBCP, collecting and verifying information from U.S. customers has been extremely onerous for Commerce, akin to looking for a needle in a haystack. The GOC's shifting of the burden from itself to U.S. customers also requires the U.S. customers to subject themselves to Commerce's questioning and verification procedures even though they are not parties to the agency's countervailing duty investigation.

The GOC's strategy is succeeding. *See, e.g., Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1343 (Ct. Int'l Trade 2023). After the burden of providing relevant information shifts to U.S. customers, many of them fail to provide the information or fail to cooperate fully with Commerce's verification process. *See id.* However, instead of laying the blame at the feet of the GOC, the CIT blames Commerce for being "unreasonable" and for "imped{ing} good faith efforts by respondents to comply." *Id.* As a result, Commerce is prohibited from countervailing the EBCP as a subsidy based on the GOC's refusal to provide relevant information. This outcome is contrary to U.S. law and rewards the GOC for its failure to cooperate. While time is running short in this case, it is not too late, and the AKCA respectfully submits that this case should not end with such an outcome.

Commerce's *Third Remand Redetermination* only further compounds the problems discussed above. In a misguided attempt to use the customers' information regarding the EBCP to calculate *multiple* customer-specific subsidy rates, Commerce has violated the statute's requirement that the agency calculate a *single* subsidy rate for each foreign exporter – both for purposes of collecting cash deposits and for assessing duties on imports that have already entered the U.S. market.

**II.     Commerce's Original Determination and Subsequent Remand Redeterminations Should Have Been Upheld**

As demonstrated below, Commerce's original determination and first and second remand redeterminations were correctly decided and should have been upheld.

**A.   Commerce's Original Determination Was Supported by Substantial Evidence and in Accordance with Law**

In the final determination of the original investigation, Commerce determined that Ancientree and other respondents benefited from the EBCP based on the application of AFA due to the failure of the Government of China ("GOC") to respond to Commerce's requests for information about the subsidy program. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11962 (Dep't Commerce Feb. 28, 2020) ("*Final Determination*"), and accompanying Issues and Decision Memorandum (IDM) at Comment 3. Under both U.S. countervailing duty law and the World Trade Organization's Agreement on Subsidies and Countervailing Measures ("SCM"), the GOC is expected to provide information regarding the subsidies it administers, as well as information regarding the recipients of those subsidies, because the GOC is in the best position to provide such information. *Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287, 1303 (Ct. Int'l Trade 2022) (citing *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369-70 (Fed. Cir. 2014); *Essar Steel Ltd. v. United States*, 34 C.I.T. 1057, 1070, 721 F. Supp. 2d 1285, 1296 (2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012)). *See also* World Trade Organization Agreement on Subsidies and Countervailing Measures, 1869 U.N.T.S. 14 (Apr. 15, 1994) at Article 18.6. In the original investigation on *Wooden Cabinets and Vanities and Components Thereof from China*, the GOC refused to provide this information for the EBCP, a loan program that supports Chinese exports

4

by financing foreign buyers, including U.S. purchasers. Both U.S. law and the SCM provide that Commerce is not only entitled but also expected to apply AFA under these circumstances to ensure that the GOC does not benefit from its failure to cooperate and to induce the GOC's cooperation in future investigations. *Fine Furniture*, 748 F.3d at 1373 ("Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

Through both the GOC's refusal to cooperate and certain decisions issued by the CIT, the GOC has managed to shift the burden of producing relevant information about a subsidy program that the GOC administers from itself to U.S. customers that have potentially benefited from this program. Even though the GOC is in the best position to provide this information, it is now U.S. customers who must prove that they have not availed themselves of the EBCP when purchasing subject merchandise. As Commerce has predicted, due to factors such as the large number of U.S. customers and the GOC's failure to provide relevant information such as the correspondent banks involved in the EBCP, collecting and verifying information from U.S. customers has been extremely onerous for Commerce, akin to looking for a needle in a haystack. IDM in *Final Determination* at Comment 3. *See also Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327, 1336 (Ct. Int'l Trade 2022) ("Commerce states that it would be too onerous 'if not impossible' for it to verify the non-use certifications."); *Zhejiang Junyue Standard Part Co. v. United States*, 578 F. Supp. 3d 1280, 1286 (Ct. Int'l Trade 2022) ("A careful verification of respondents' non-use of this program without understanding the identity of these correspondent banks would be unreasonably onerous, if not impossible."). As shown in the remand proceedings in this case, the GOC's shifting of the burden from itself to U.S. customers

5

also requires the U.S. customers to subject themselves to Commerce's questioning and verification procedures even though they are not parties to the agency's countervailing duty investigation. This turn of events has completely perverted the manner in which U.S. countervailing duty law is supposed to operate.

Significantly, the CIT has held more persuasively in other cases that Commerce is justified in applying AFA to find that respondents and their U.S. customers benefited from the ECBP based on the GOC's lack of cooperation. *See, e.g., Cooper*, 610 F. Supp. 3d at 1303 ("Commerce explained reasonably that without certifications that show that the customers would be likely to participate, without the ability to compel third-party participation and without the withheld information, Commerce would not be able to conduct an accurate spot-check of potentially relevant transactions."). For example, in *Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*, the CIT upheld Commerce's determination to apply AFA due to the lack of verifiable information on the record to fill the gap with respect to the ECBP. In so doing, it explained:

> It's easy to read this record and be sympathetic to {the Chinese exporter} Yinfeng. The company is disadvantaged by an adverse inference caused by the noncooperation of the Chinese government over which it has no control …. But it isn't the court's job to micromanage the Commerce Department, whose challenged determinations here are reasonable and supported by substantial evidence.

*Fujian Yinfeng Imp & Exp Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886, at *8 (Ct. Int'l Trade Sept. 13, 2022).

Similarly, in *Yama Ribbons and Bows Co. v. United States*, 611 F. Supp. 3d 1394 (2022), the CIT upheld Commerce's application of AFA due to the Chinese government's failure to provide necessary information regarding the ECBP, even though the Chinese respondent had provided evidence purporting to show that its customer did not use this program. The court

concluded that "Commerce must be afforded discretion to determine the scope of its inquiry in conducting reviews of countervailing duty orders, so long as it does so reasonably" and that "{h}ere, it was reasonable for Commerce to request information from the Chinese government to supplement and corroborate the information Yama provided to show that neither Yama nor its U.S. customers used the EBCP." *Id.* "But because the Chinese government made no effort to provide the requested information as it related specifically to the period of review, Commerce was within its authority in using an adverse inference that Yama benefitted from the EBCP during that period." *Id.* The information Commerce requested from the Chinese government "was missing from the record due to the failure of the Chinese government to make even a minimal effort to assist Commerce in confirming that Yama received no benefit from the EBCP during that year." *Id.* at 1402. The Court recognized that the record contained information to support a finding that neither Yama nor its customers used the EBCP but reasoned that "Commerce was not required to consider that information determinative" and that it was reasonable for Commerce to consider the information it sought from the GOC "to be essential to its inquiry." *Id.*

In sum, Commerce's *Final Determination* in the original investigation to apply AFA based on the GOC's failure to cooperate was supported by substantial evidence and in accordance with law. There was never any valid legal basis for the CIT to remand this determination back to Commerce. If the CIT does not correct this situation on its own, all of the remand orders in this case should be overturned by the Federal Circuit as being contrary to U.S. law in a way that is totally undermining any ability of Commerce to induce cooperation by the GOC in countervailing duty investigations.

7

### B. Commerce's First and Second Remand Determinations Were Supported by Substantial Evidence and in Accordance with Law

As demonstrated below, even assuming *arguendo* that there was a valid basis for the CIT to remand Commerce's *Final Determination* on the first two occasions, Commerce's first and second remand redeterminations should have been upheld as being supported by substantial evidence and in accordance with law. In contrast, the *Third Remand Redetermination* issued in response to the *Third Remand Order* is neither supported by substantial evidence nor in accordance with law and, therefore, it cannot stand.

In its first remand order, the CIT ignored the fact that the GOC failed to cooperate with Commerce with respect to the EBCP and ordered Commerce to either (1) find a practical solution to verify certain information submitted by Ancientree's customers indicating that they had not used the EBCP, such as by reopening the record to issue supplemental questionnaires to Ancientree and its customers; or (2) recalculate the subsidy rate for Ancientree to exclude the subsidy rate for the EBCP. *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022) ("*First Remand Order*"). In response, Commerce issued supplemental questionnaires and, in its *First Remand Redetermination*, continued to apply AFA to Ancientree because it failed to provide information regarding non-use for numerous customers. Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 22-45 (CIT May 12, 2022), dated August 5, 2022 ("*First Remand Redetermination*"). As Commerce correctly found, Ancientree's responses did not provide a basis to overcome the GOC's lack of cooperation with respect to the EBCP in the investigation, and thus Commerce determined that it had no grounds to depart from its initial finding regarding the program. *See id.* This *First Remand Redetermination* should have been upheld.

Instead, the CIT issued a *Second Remand Order* holding that because Ancientree had provided information regarding non-use of the EBCP for some of its customers, Commerce now had to "attempt to verify Ancientree's submissions to the extent {Commerce} finds appropriate, and if that is successful, either accept the *pro rata* adjustment proposed by Ancientree or conclude that the {EBCP} was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly." *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT Apr. 20, 2023) ("*Second Remand Order*") at 16. In its *Second Remand Redetermination*, Commerce explained that, although it attempted to verify non-use of the program for Ancientree, it was unable to successfully verify key information regarding the purported non-use of the EBCP for certain customers. Final Results of Redetermination Pursuant to Court Remand, *Dalian Meisen Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 23-57 (CIT April 20, 2023), dated December 6, 2023 ("*Second Remand Redetermination*"). Commerce did not consider the verification process to be successful and continued to determine that there was a gap in the record resulting from the GOC withholding necessary information that was requested of it and further determined that the information proffered by Ancientree and its customers had not filled that gap. *Id.* This *Second Remand Redetermination* should also have been upheld and followed.

In sum, while there was nothing wrong with Commerce's *Final Determination* from the original investigation, Commerce continued in the *First Remand Redetermination* and *Second Remand Redetermination* to recognize that, where relevant information is missing from the record due to the GOC's failure to cooperate, it is appropriate to apply AFA in a manner that will induce cooperation in the future. As discussed below, this recognition is entirely absent in the *Third Remand Redetermination*.

9

### III. Commerce's Third Remand Redetermination Is Neither Supported by Substantial Evidence Nor in Accordance with Law

In its *Third Remand Order*, the CIT stated that, "{b}ecause Commerce verified non-use of the {EBCP} by certain of Ancientree's U.S. customers but could not (or did not) with respect to others, the court will treat the use of countervailing duties differently for the sales to customers where non-use of the {EBCP} was verified, from the sales where non-use was not verified." *Third Remand Order* at 21. Again ignoring the GOC's noncooperation in these proceedings – and how this noncooperation by itself is a sufficient basis for Commerce to apply AFA – the CIT held that, for sales to companies that Commerce was able to verify, "Commerce must eliminate the subsidy represented in the rate applied to those sales" and that "Commerce can base its determination of non-use on verified information" for such sales. *Id.* The CIT ordered that "on remand, for each customer whose non-use of the {EBCP} was verified, Commerce must determine a customer-specific rate that excludes a subsidy amount for the {EBCP}, and recalculate Ancientree's total rate, and the all-others rate." *Id.*

In its *Third Remand Redetermination*, Commerce revised the subsidy rate calculations to: (1) pro-rate the EBCP rate to reflect the proportion of Ancientree's sales to customers that did not participate in Commerce's remand proceedings or otherwise failed verification, resulting in the EBCP rate falling from 10.54 percent to 5.06 percent; (2) create customer-specific rates for Ancientree's customers based on their participation in the information-gathering and verification processes; and (3) reduce the all-others rate from 20.93 percent to 18.17 percent based on the reduction in Ancientree's EBCP rate. *Third Remand Redetermination* at 7-14. As demonstrated below, each of these revisions is neither supported by substantial evidence nor in accordance with law.

10

### A. Commerce's *Draft Remand Redetermination* Ignores the GOC's Failure to Cooperate

Commerce's *Draft Remand Redetermination* is unlawful because it ignores the fact that the GOC failed to provide necessary information in the original investigation with respect to the EBCP. As the CIT has recognized in other cases, when Commerce decides not to apply AFA due to the agency's refusal to address evidence that a party has not cooperated to the best of its ability, the decision is not supported by substantial evidence. *See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1376-1378 (Ct. Int'l Trade 2023) (remanding Commerce's decision not to apply adverse facts available when it was based on a factual finding that a respondent had cooperated to the best of its ability, and Commerce had failed to reconcile that factual finding with evidence that detracted from it). Nowhere in the *Third Remand Redetermination* does Commerce address the GOC's failure to cooperate in the original investigation. Instead, Commerce's analysis is focused exclusively on the behavior of Ancientree's U.S. customers – who are not even interested parties to the proceeding. Thus, the *Third Remand Redetermination* is not supported by substantial evidence.

In addition, as the Federal Circuit has recognized, the purpose of 19 U.S.C. § 1677e(b) is to encourage future cooperation by "ensur{ing} that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." *Fine Furniture*, 748 F.3d at 1373 (quoting Statement of Administrative Action accompanying the Uruguay Round Agreement Act, H.R. Doc. No. 103–316, vol. 1, at 870, *reprinted in* 1994 U.S.C.C.A.N. 4040). The GOC was a foreign government respondent in the CVD investigation and yet failed to provide requested information that was necessary for Commerce to analyze and calculate an accurate subsidy rate for the EBCP. *Id.* at 1367. By reducing the program rate from 10.54 percent to 5.06 percent, Commerce has allowed the GOC to obtain a more favorable rate by failing to cooperate than it

11

would have obtained through full cooperation. This result is in direct contravention to the statute, rendering the *Third Remand Redetermination* as not in accordance with law.

### B. Commerce's Customer-Specific Rates Have No Basis in the Statute or Commerce's Regulations and Practice

As Commerce itself explains in the *Third Remand Redetermination*, although the CIT ordered the agency to calculate customer-specific rates, the statute "requires Commerce to determine a single subsidy rate for each investigated respondent, and, thus, it would be inappropriate for Commerce to establish numerous cash deposit rates for Ancientree." *Third Remand Redetermination* at 10-11 (citing 19 U.S.C. § 1671d(c)(1)(B)(i)(I)). This is one of the reasons why Commerce only applied the customer-specific rates retrospectively in its assessment of duties but not prospectively through the cash deposit rate. *Id.* However, it was also inappropriate for Commerce to establish customer-specific rates on a retrospective basis.

The statute provides that Commerce "shall … determine *an estimated individual countervailable subsidy rate* for each exporter and producer individually investigated." 19 U.S.C. § 1671d(c)(1)(B)(i)(I) (emphasis added). It would already have been unreasonable under *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) for Commerce to interpret this statutory language as permitting *multiple* subsidy rates for different customers instead of one *individual* subsidy rate for each exporter and producer. But now the Supreme Court has overturned *Chevron* and found that it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266, 219 L. Ed. 2d 832 (2024). There is just no way in the world that the "best" interpretation of the statutory phrase "individual countervailable subsidy rate for each exporter" involves "multiple

countervailable subsidy rates for different customers." Thus, Commerce's calculation of multiple customer-specific subsidy rates in the *Draft Remand Redetermination* violates the statute.

Commerce's regulations likewise do not offer any support for customer-specific subsidy rates. While 19 C.F.R. §351.212(b)(1) provides that Commerce "normally will calculate an assessment rate for each importer of subject merchandise covered by the review," which can result in importer/customer-specific dumping rates, this regulatory provision only applies to antidumping duties calculated in an administrative review for duty assessment purposes. 19 C.F.R. §351.212(b)(1). This provision does not apply to countervailing duty investigations such as the proceeding at issue here. In addition, the parallel sub-provision in the regulations for countervailing duty reviews states that Commerce "normally will instruct U.S. Customs and Border Protection to assess countervailing duties by applying the rates included in the final results of the review to the entered value of the merchandise." 19 C.F.R. §351.212(b)(2). In other words, there is no provision for the calculation of importer/customer-specific subsidy rates – even in reviews of countervailing duty orders.

Finally, there is no agency practice that supports the calculation of customer-specific subsidy rates. In fact, other than Commerce's *Third Remand Redetermination*, there does not appear to be a single prior case where Commerce has calculated customer-specific subsidy rates in any countervailing duty proceeding in the entire history of U.S. trade remedies law.

Commerce offers feeble authority under the statute to calculate customer-specific subsidy rates. According to Commerce, it calculated a single cash deposit rate for Ancientree and only calculated customer-specific assessment rates, and "{b}ecause the Act provides no bar to *assessing* countervailing duties on entries on a customer/importer-specific basis, we disagree that our determination fails to comport with the law." *Third Remand Redetermination* at 19

13

(emphasis added). As an initial matter, the fact that a statute does not bar an agency from taking certain action does not mean that the agency is authorized to take that action. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) (holding that Congress's silence with respect to the authority of the U.S. Patent and Trademark Office to stay patent reexamination proceedings was not the equivalent of a grant of such authority). More importantly, however, the countervailing duty statute explicitly states how Commerce must *assess* duties in 19 U.S.C. § 1671e – *i.e.*, the provision entitled "Assessment of duty." That provision states that Commerce must publish an order that "directs customs officers to assess a countervailing duty equal to the amount of the net countervailable subsidy determined or estimated to exist." 19 U.S. Code § 1671e(a)(1). In other words, the countervailing duty rate that Commerce assesses must be "equal" to the countervailing duty that it determined to exist for the relevant foreign exporter. Commerce cannot calculate a countervailing duty rate that serves as the cash deposit rate for a foreign producer and a different countervailing duty rate that serves as the assessment rate for the relevant importers of that foreign producer's merchandise. The assessment rate and cash deposit rate must be equal to the amount of countervailable subsidy that was determined through the investigation. Commerce's *Third Remand Redetermination* flouts this unambiguous statutory requirement.

      The bottom line is that there is no legal basis in the statute, the regulations, or Commerce's practice to calculate customer-specific subsidy rates as Commerce has done in the *Third Remand Redetermination*. Although it may have complied with the *Third Remand Opinion*, Commerce's decision to calculate and assess customer-specific subsidy rates is not in accordance with law and thus must be remanded.

## IV. Commerce Should Not Have Revised the All-Others Rate

In the *Third Remand Redetermination*, Commerce revised the all-others rate in light of Ancientree's revised subsidy rate of 5.06 percent as calculated in the remand redetermination. As discussed above, because the decision to revise Ancientree's subsidy rate was not supported by substantial evidence nor in accordance with law, Commerce's decision to revise the all-others rate was likewise erroneous.

## V. Conclusion

For the foregoing reasons, the AKCA respectfully requests that the Court hold that Commerce's *Third Remand Redetermination* is neither supported by substantial evidence nor in accordance with law and remand the redetermination back to the agency for further proceedings.

Respectfully submitted,

/s/ Luke A. Meisner
Luke A. Meisner
Christopher T. Cloutier
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for the
American Kitchen Cabinet Alliance*

Date: December 12, 2024

15

# **CERTIFICATE OF COMPLIANCE**

      I hereby certify that the foregoing Comments on Commerce's Second Remand Redetermination contain 4,196 words (including text, quotations, footnotes, headings, and attachments) and therefore comply with the word limitation set forth in the Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: December 12, 2024                                        /s/ Luke A. Meisner
                                                                                           Luke A. Meisner