**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| CABINETS TO GO, LLC, and THE ANCIENTREE CABINET CO., LTD., | ) |
| Plaintiff-Intervenors, | ) |
| v. | ) Court No. 20-00110 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO COMMENTS ON**
**FINAL RESULTS OF THIRD REMAND REDETERMINATION**

BRYAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

FEE PAUWELS
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

IOANA C. MEYER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001

January 13, 2025                    *Attorneys for Defendant*

# **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................ 2

    I.     The Underlying Countervailing Duty Investigation ................................. 2

    II.    The Court's First Remand Order And Commerce's First Remand Redetermination ........................................................................................... 3

    III.   The Court's Second Remand Order And Commerce's Second Remand Redetermination ..................................................................................... 4

    IV.   The Court's Third Remand Order And Commerce's Third Remand Redetermination ..................................................................................... 6

ARGUMENT ........................................................................................................... 9

    I.     Standard Of Review ................................................................................ 9

    II.    Commerce's Remand Redetermination Complied With The Court's Remand Order And Is Supported By Substantial Evidence .................................... 9

         A.    Despite AKCA's Concerns, Commerce's Third Remand Redetermination Is In Compliance With The Court's Order And Is Therefore Supported By Substantial Evidence And In Accordance With Law ............................... 10

         B.    Commerce's Calculated Customer-Specific Rates For The Period Of April 1, 2021 Through December 31, 2021 Are In Accordance With Law ........ 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*Dalian Meisen Woodworking Co., Ltd. v. United States (Dalian I)*,
    Slip Op. 22-45, No. 20-00110, 2022 WL 1598896 (Ct. Int'l Trade May 12, 2022) ................ 3

*Dalian Meisen Woodworking Co., Ltd. v. United States (Dalian II)*,
    Slip Op. 23-57, No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade April 20, 2023) ........... 4, 5

*Dalian Meisen Woodworking Co., Ltd. v. United States* (*Dalian III*),
    719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) ........................................................ 1, 6, 7, 9, 10

*Both-Well (Taizhou) Steel Fittings, Co. v. United States*,
    589 F. Supp. 3d 1343 (Ct. Int'l Trade 2022) ........................................................ 7, 8

*Bristol Metals L.P. v. United States*,
    703 F. Supp. 2d 1370 (Ct. Int'l Trade 2010) ........................................................ 9

*Consolo v. Federal Maritime Commission et al.*,
    383 U.S. 607 (1966) ........................................................ 9

*Fine Furniture (Shanghai) Ltd. v. United States*,
    748 F.3d 1365 (Fed. Cir. 2014) ........................................................ 11

*Micron Technology, Inc. v. United States*,
    243 F.3d 1301 (Fed. Cir. 2001) ........................................................ 15

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ........................................................ 3, 4

*Risen Energy Co. v. United States*,
    No. 20-03912, 2023 WL 2890019 (Ct. Int'l Trade Apr. 11, 2023) ........................................................ 7

*The Ancientree Cabinet Co., Ltd. v. United States*,
    Slip Op. 24-118, No. 23-00262, 2024 WL 4564174 (Ct. Int'l Trade Oct. 24, 2024) ............... 8

*Tianjin Magnesium Int'l Co., Ltd. v. United States*,
    836 F. Supp. 2d 1377 (Ct. Int'l Trade 2012) ........................................................ 9

**Statutes**

19 U.S.C. § 772 ........................................................ 8, 14, 15

19 U.S.C. § 776 ........................................................ 13

19 U.S.C. § 1516a ........................................................ 9, 16

19 U.S.C. § 1671b ........................................................ 15

19 U.S.C. § 1671d ........................................................ 11, 13

19 U.S.C. § 1671e ............................................................................................ 12, 13

19 U.S.C. § 1677a ............................................................................................ 13, 14

19 U.S.C. § 3512 .................................................................................................... 15

*Uruguay Round Agreements Act, Statement of Administrative Action*,
  H. R. Rep. No. 103-316, vol. 1, at 911 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4241
  ................................................................................................................................ 15

## Administrative Determinations

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:*
  *Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final*
  *Determination With Final Antidumping Duty Determination*,
  84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019) .................................... 2

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
  *Final Affirmative Countervailing Duty Determination*,
  85 Fed. Reg. 11,962 (Dep't of Commerce February 28, 2020) ........................... 2, 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| CABINETS TO GO, LLC, and THE ) | |
| ANCIENTREE CABINET CO., LTD., ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. )  Court No. 20-00110 | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON**
**FINAL RESULTS OF THIRD REMAND REDETERMINATION**

Pursuant to the Court's opinion and order, dated July 22, 2024, defendant, the United States, respectfully submits this response to the comments filed by plaintiff-intervenor, The Ancientree Cabinet Co., Ltd. (Ancientree), Ancientree Br., ECF No. 164, and the comments filed by defendant-intervenor American Kitchen Cabinet Alliance (AKCA), AKCA Br., ECF No. 163, to the Department of Commerce's third redetermination pursuant to remand, dated November 12, 2024.  *See* Opinion and Order, ECF No. 155, *Dalian Meisen Woodworking Co., Ltd. v. United States*, 719 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) (*Dalian III*); Final Results of

Redetermination Pursuant to Court Remand, November 12, 2024, ECF No. 159-1 (*Third Remand Redetermination*).

For the reasons discussed below, we respectfully request that the Court sustain Commerce's Third Remand Redetermination.

## BACKGROUND

### I.    The Underlying Countervailing Duty Investigation

On August 12, 2019, Commerce published its preliminary affirmative determination in this investigation. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 39,798 (Dep't of Commerce August 12, 2019) (P.R. 675), and accompanying Decision Memorandum (PDM) (Investigation P.R. 623). In the preliminary determination, Commerce determined that the government of China failed to comply with Commerce's requests related to the Export Buyer's Credit Program. PDM at 16-18. Consequently, Commerce found that the government of China had failed to cooperate to the best of its ability and, applying facts available with an adverse inference, found that the program is countervailable. *Id.* at 16-19. Commerce further determined that the respondents, Dalian Meisen Woodworking Co., Ltd (Meisen) and Ancientree, used and benefitted from the Export Buyer's Credit Program. *Id.*

In the final determination, Commerce continued to use adverse facts available to find that both entities used and benefitted from the Export Buyer's Credit Program. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 85 Fed. Reg. 11,962 (Dep't of Commerce February 28, 2020) (Investigation P.R. 851), ECF No. 33-5, and accompanying Issues and Decision Memorandum (IDM) (Investigation P.R. 846), ECF No. 33-6. In short, Commerce found the

government of China refused to answer questions necessary for Commerce's determination. IDM at 26-29. Accordingly, Commerce considered the certifications of non-use submitted by respondents, but determined that the gap in the record due to the missing information "prevents complete and effective verification of the customer's certifications of non-use." *Id.* at 35; *see also* Anciencentree's Section III Questionnaire Response at Exhibit II-12 (Investigation P.R. 495-96, C.R. 189-90) and Meisen's Section III Questionnaire Response at Exhibit 14 (Investigation P.R. 456, C.R. 176).

## II.    The Court's First Remand Order And Commerce's First Remand Redetermination

On May 12, 2022, the Court sustained in part Commerce's determination and remanded in part on the issue of the Export Buyer's Credit Program. *Dalian Meisen Woodworking Co., Ltd. v. United States*, Slip Op. 22-45, No. 20-00110, 2022 WL 1598896, at *11 (Ct. Int'l Trade May 12, 2022) (*Dalian I*). The Court found that Commerce had failed to satisfy the first step of determining whether to apply an adverse inference when selecting from among the facts otherwise available: determining that there is information missing that creates a gap in the record. *Id.* at *6 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)). The Court found unpersuasive Commerce's claims that verification would be unduly burdensome—without attempting to verify, and the fact that the information required was only indirectly related to alleged actual use of the program by the respondents' U.S. customers was insufficient to show information was missing from the record. *Id.* at *8.

The Court directed Commerce, on remand, to "either (1) find a practical solution to verify the non-use information on the record, such as reopening the record to issue supplemental questionnaires to respondents and their U.S. customers; or (2) recalculate the countervailing duty rates for Meisen and Anciencentree to exclude the subsidy rate for the Export Buyer's Credit Program, and recalculate the all-others rate accordingly." *Id.* at *10.

On remand, Commerce attempted to verify the respondents' claims of non-use by reopening the record and issuing supplemental questionnaires to obtain the information missing from the record.  Final Results of Remand Redetermination Pursuant to Court Remand, ECF No. 86 (Aug. 5, 2022) (*First Remand Results*) at 4; Commerce's Export Buyer's Credit Supplemental Questionnaire Letters (First Remand P.R. 1, 3).  The supplemental questionnaires sought information relating to the respondents' customers' traditional and non-traditional financing. *First Remand Results.*

Commerce made this request so that it could review the financing information and determine whether the China Ex-Im Bank had disbursed export buyer's credits directly or through a third-party partner or correspondent banks.  However, neither respondent provided all the information necessary for Commerce to be able to conduct the required verification.  *Id.* Given the lack of complete responses from the respondents and their U.S. customers, Commerce concluded that the incomplete information on the record would not, for purposes of verification and an ultimate determination, overcome the deficiencies caused by the government of China's non-cooperation.  *Id.* at 20.  Therefore, Commerce continued to find on remand, based on adverse facts available, that both respondents benefitted from the Export Buyer's Credit Program.  *Id.* at 20-21.

## III. The Court's Second Remand Order And Commerce's Second Remand Redetermination

On April 20, 2023, the Court issued its second decision, sustaining in part, and remanding in part, Commerce's First Remand Redetermination.  *Dalian Meisen Woodworking Co., Ltd. v. United States*, Slip Op. 23-57, No. 20-00110, 2023 WL 3222683 (Ct. Int'l Trade April 20, 2023) (*Dalian II*).  There, the Court found that the use of facts available was supported by substantial

evidence as to Meisen but not as to Ancientree, and remanded the matter to Commerce to attempt to verify Ancientree's submissions to the extent it finds appropriate. *Id*. at *8.

The Court found that Ancientree "provided complete loan information for more than half of its U.S. customers {… including} its largest customers, representing approximately 90% of its U.S. sales (by volume and by value) during the period of investigation." *Id*. at *6. In light of these facts, the Court directed Commerce to "attempt to verify Ancientree's submissions to the extent {Commerce} finds appropriate, and if that is successful, either accept the *pro rata* adjustment proposed by Ancientree or conclude that the Program was not used at all, and recalculate Ancientree's rate and the all-others rate accordingly." *Id.* at *8.

On remand, Commerce attempted to verify Ancientree's submissions for the 15 out of 27 customers that responded to Commerce's supplemental questionnaire during the first remand proceeding. *Second Remand Redetermination* at 5-10. Although Commerce attempted to verify non-use of the Export Buyer's Credit Program, Commerce was only able to proceed with verification for eight of Ancientree's customers, a number that accounted for less than 30 percent of its customers. *Id.* at 14-21. Thus, Commerce determined that it was unable to successfully verify Ancientree's submissions, as mandated by the Court. *Dalian II*, 2023 WL 3222683 at *8. Accordingly, Commerce determined it also could not successfully verify the accuracy of the *pro rata* adjustment proposed by Ancientree such that applying such an adjustment would be supported by substantial evidence. *Second Remand Redetermination* at 5-10. Commerce therefore made no change to its determination that Ancientree used and benefitted from the Export Buyer's Credit Program. *Id.* at 21-22.

**IV.    The Court's Third Remand Order And Commerce's Third Remand
        Redetermination**

The Court issued its third decision on July 22, 2024, sustaining in part, and remanding in

part, Commerce's determination that the record does not contain non-use information that

overcomes the government of China's reporting failure.  *Dalian III*, 719 F. Supp. 3d 1322.  In its

decision, the Court differentiated between the use of countervailing duties for the sales to

customers whose non-use of the Export Buyer's Credit Program was verified, from those sales

where non-use was not verified.  *Id.* at 1336.  The Court sustained Commerce's determination as

to the latter category, and remanded as to the former.

Specifically, the Court disagreed that Commerce's inability to verify significant portions

of the non-use information provided by Ancientree's customers warranted application of the total

adverse facts available rate for the program (of 10.54 percent) to Ancientree.  *Id.* at 1335-36.  In

making this finding, the Court explained that Commerce's "all or nothing" approach is not called

for by the statute.  *Id.*  According to the Court, nothing in the statute suggests that "unless *all*

information is verified, *none* of the information that is actually verified can be relied upon to

make a final determination."  *Id.* at 1336.  Thus, for sales to companies that Commerce was not

able to verify, the Court sustained the application of adverse facts available.  *Id.* at 1337.  With

regard to those sales, the Court found that a "gap in the record exists with respect to these sales"

and thus Commerce may not rely on it when making its determination.  *Id.*  In addition, the Court

noted that the use of facts available is authorized based on the government of China's failure to

cooperate under the theory that this remedy has the potential to encourage that government to

provide requested information.  *Id.*

For the sales to companies for which Commerce was able to verify non-use of the

program, the Court found that no gap in the record exists because the declarations of non-use

were demonstrated to be valid. *Id.* at 1336. Without a gap in the record, the Court found that

facts available was not directed by statute. *Id.* at 1336-37. Accordingly, the Court held that

"Commerce can base its determination of non-use on verified information in accordance with the

statute." *Id.* at 1336. To implement this decision, the Court determined that "Commerce must

eliminate the subsidy represented in the rate applied to those sales." *Id.* at 1336. Explaining the

distinction of sales based on the success of verification, the Court stated that Commerce has in

past cases removed the Export Buyer's Credit Program subsidy rate from the respondent's total

rate. *Id.* (citing *Risen Energy Co. v. United States*, No. 20-03912, 2023 WL 2890019, at *3 (Ct.

Int'l Trade Apr. 11, 2023); *Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 589 F. Supp.

3d 1343 (Ct. Int'l Trade 2022)). Therefore, the Court ordered that "on remand, for each

customer whose non-use of the Program was verified, Commerce must determine a customer-

specific rate that excludes a subsidy amount for the Program, and recalculate Ancientree's total

rate, and the all-others rate." *Id.* at 1337-38. The Court also advised that Commerce "may

determine its own method for complying with this order." *Id.*

On remand, Commerce revised the subsidy rate calculations in accordance with the

Court's order. *Third Remand Redetermination.* First, Commerce recalculated Ancientree's total

subsidy rate. *Id.* at 7-9. To do so, Commerce relied on a *pro rata* figure for the Export Buyer's

Credit Program subsidy rate. *Id.* at 7. This *pro rata* figure was determined by pro-rating the

program subsidy rate to reflect the proportion of Ancientree period of investigation sales to

customers that did not participate in Commerce's remand proceedings or otherwise failed

verification. *Id.* at 8. That proportion was approximately 21.56 percent, which reflected the non-

verified customers sales by value during the period of investigation, as sustained by the Court.

*Id.* at 8-9.

Second, for customers whose non-use of the Export Buyer's Credit Program was verified, Commerce calculated customer-specific rates. *Id.* at 9-15. To do so, for each specific customer Commerce either included the 10.54 percent Export Buyer's Credit Program rate, or removed that percentage rate, depending on whether non-use of the program was demonstrated. *Id.* at 9-10. Commerce also took into account the existing companion antidumping duty (AD) proceeding on cabinets from China, in which Ancientree was a mandatory respondent, when adjusting the customer-specific rates. *Id.* at 12. In that AD investigation, Commerce applied an export contingent subsidy offset in reliance on Commerce's affirmative determination of export subsidies in the CVD investigation, *i.e.*, the affirmative countervailing duty investigation of the Export Buyer's Credit Program. *Id.* (citing 19 U.S.C. § 772(c)(1)(C)). Because a portion of the export subsidy offset has already been realized by Ancientree's customers/importers in the companion AD proceeding, Commerce determined that the offset must be accounted for in this proceeding. *Id.* Accordingly, when calculating customer-specific rates in this case, Commerce further adjusted (*i.e.*, increased) the customer-specific rates for customers with demonstrated non-use to reflect the portion of the export duty offset that Ancientree customers/importers have already benefitted from.[1] *Id.*

Finally, in accordance with the Court's order, Commerce revised the all-others rate. *Id.* at 15. The existing rate, which was 20.93 percent, reflected an average of the rates calculated for each of the three mandatory respondents in this investigation. *Id.* In light of Ancientree's

---

[1] No party has challenged Commerce's adjustments to customer-specific countervailing duty rates to account for export contingent subsidy offsets applied in the AD proceeding. *See generally,* Ancientree Br., AKCA Br. Ancientree has challenged—and the Court sustained—the final results of Commerce's second administrative review of the AD order (in which Commerce did not apply export contingent subsidy offsets). *See The Ancientree Cabinet Co., Ltd. v. United States*, Slip Op. 24-118, No. 23-00262, 2024 WL 4564174 (Ct. Int'l Trade Oct. 24, 2024).

revised rate of 5.06 percent, Commerce recalculated the all-others rate by again finding the

average of the rates for the three mandatory respondents, but incorporating Ancientree's revised

rate. *Id.*

## ARGUMENT

## I.    Standard Of Review

The Court sustains Commerce's determinations unless they are "unsupported by

substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.

§ 1516a(b)(1)(B)(i); *Bristol Metals L.P. v. United States*, 703 F. Supp. 2d 1370, 1373 (Ct. Int'l

Trade 2010). This standard applies equally to remand redeterminations. *See, e.g.*, *Tianjin*

*Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012)

(applying the standard of review to Commerce's remand redetermination). Substantial evidence

is "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's findings

from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966).

## II.    Commerce's Remand Redetermination Complied With The Court's Remand Order And Is Supported By Substantial Evidence

In remanding the case to Commerce, the Court instructed Commerce to:  (1) determine a

customer-specific rate that excludes a subsidy amount for the program for each customer whose

non-use of the program was verified; (2) recalculate Ancientree's total rate; and (3) recalculate

the all-others rate. *Dalian III*, 719 F. Supp. 3d at 1337-38. In carrying out these instructions,

Commerce was permitted to "determine its own method for complying with this order." *Id.*

Commerce carried out these instructions and its remand redetermination is therefore supported

by substantial evidence, contrary to AKCA and Ancientree's arguments, as explained below.

**A.    Despite AKCA's Concerns, Commerce's Third Remand Redetermination Is In Compliance With The Court's Order And Is Therefore Supported By Substantial Evidence And In Accordance With Law**

Although AKCA agrees that Commerce followed the Court's order in the third remand redetermination, AKCA takes issue with Commerce calculating and applying customer-specific rates.[2]  AKCA Br. at 10-15.

The main concern that AKCA raises is that such an application of customer-specific rates fails to address the government of China's failure to cooperate in the investigation and instead punishes Ancientree's U.S. customers.  *Id.* at 11.  Ancientree argues that such specific rates result in a more favorable rate, which can then incentivize further non-cooperation by the government of China.  *Id.*  While we generally share AKCA's concerns regarding the government of China's lack of cooperation, these concerns do not demonstrate that Commerce's third remand redetermination is unsupported by substantial evidence.  As an initial matter, the Court recognized the government of China's failure to cooperate and addressed the fact that Commerce took that non-cooperation into account.  *Dalian III*, 719 F. Supp. 3d at 1337.  With respect to those customers for which Commerce was unable to verify non-use, the Court found that a gap in the record exists and Commerce could, by statute, use facts available.  *Id.*  Further, the Court found that even applying customer-specific rates still acts as "a remedy that collaterally reaches [the exporter] has the potential to encourage the government of China to cooperate so as not to hurt its overall industry."  *Dalian III*, 719 F. Supp. 3d at 1337 (quoting *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014)).  Commerce made this point in response to AKCA's Draft Remand Comments.  *See Third Remand Redetermination* at 18-19; *see also* AKCA's Comments on Draft Third Remand Redetermination, dated October 15,

---

[2]  We note that because AKCA's arguments take issue more with the Court's recent remand order, the arguments are likely better suited for a reconsideration motion or an appeal.

2024 (Third Remand P.R. 4) (AKCA's Draft Comments) at 8-9.  Even so, AKCA has failed to address this aspect of Commerce's final determination.  *See* AKCA Br. at 11-12.  While the government of China may have obtained a more favorable rate as a result, this does not mean that Commerce's determination was not supported by substantial evidence or in accordance with the Court's order.  *See* AKCA Br. at 11.

The second argument that AKCA makes is that the calculation of customer-specific rates has no basis in law or in Commerce's regulations and practice.  *Id.* at 12.  AKCA argues that 19 U.S.C. § 1671d(c)(1)(B)(i)(I) requires Commerce to "determine an estimated individual countervailable subsidy rate for each exporter and producer individually investigated."  *Id.* at 12-13.  But Commerce did so by computing a single subsidy rate for Ancientree, and another for exporters falling into the "all others" category.  *Third Remand Redetermination* at 7-9, 19.  In addition to this adjusted rate for Ancientree, Commerce has also computed customer-specific rates for *assessment* purposes, while calculating only a single cash deposit rate for Ancientree relying only on Ancientree's revised overall subsidy rate in its calculation.[3]  *See id.*  As such, despite calculating retrospective customer-specific rates in accordance with the Court's order, Commerce has fulfilled its statutory obligation to determine a single subsidy rate for each investigated respondent.  *Id.* at 19.  Because Commerce's determination was in accordance with statute, AKCA's arguments that regulations provide no support for determining customer-specific rates is equally unavailing.  *See* AKCA Br. at 13.  Accordingly, Commerce's determination complied with this Court's order and the statute.

---

[3]  Regardless, this revised cash deposit rate has been superseded.  Commerce completed an administrative review of this order in which Ancientree was a respondent, and thus assigned Ancientree a revised cash deposit rate.  This revised rate supersedes any prior rates.  *See Third Remand Redetermination* at 9.

Nevertheless, AKCA argues that Commerce's reliance on 19 U.S.C. § 1671e is misplaced. *Id.* at 13-14. According to AKCA, that statute requires that Commerce assess a countervailing duty rate "equal" to Commerce's countervailable subsidy calculation, and therefore customer-specific rates violate the statute. *Id.* at 14. Commerce calculated *both* a countervailing duty rate for Ancientree (based on the calculated subsidy rate) that would be used as cash deposit rate *and* customer-specific assessment rates. They represent different iterations of the incorporation of customers with demonstrated non-use. *Third Remand Redetermination* at 8 ("Specifically, we have pro-rated the program rate {within Ancientree's revised subsidy rate} to reflect the proportion of Ancientree {period of investigation} sales to customers that did not participate in our remand proceedings or otherwise failed verification"), 10 ("Column A {of Table 2} lists each customer and Column B lists the revised subsidy rate on a customer-specific basis, *i.e.*, including the 10.54 percent {program} rate for customers that failed verification and removing the 10.54 percent for those that demonstrated non-use of the program."). The customer-specific rates stem from the revised countervailable subsidy rate calculated for Ancientree. This approach is therefore in accordance with law and with the Court's remand order.

Finally, AKCA argues that because Commerce's decision to revise Ancientree's subsidy rate was not in accordance with law, Commerce's decision to revise the all-others rate was equally erroneous. AKCA Br. at 15. This argument is incorrect, and has been addressed in full by Commerce in the *Third Remand Redetermination*. *See Third Remand Redetermination* at 20; *see also* AKCA's Draft Comments at 11. AKCA has failed to address Commerce's reasoning with respect to this argument, which Commerce articulated in the *Third Remand Redetermination*, and, thus, AKCA's arguments fail to adequately address the substance of that

determination.  AKCA Br. at 15.  Regardless, because Commerce modified Ancientree's rate in compliance with the Court's remand order, Commerce accordingly revised the all-others rate. *Third Remand Redetermination* at 15-16, 20.  The all-others rate was the result of a simple average of the rates calculated for each of the three mandatory respondents in the CVD investigation, including mandatory respondent Ancientree.  *Id.*  As such, Commerce's revision to Ancientree's rate on remand necessitated an adjustment to the all-others rate.  *See* 19 U.S.C. § 1671d(c)(5)(A)(i) ("[T]he all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 776").  Therefore, Commerce's revision of the all-others rate was in accordance with law and supported by substantial evidence.

**B.    Commerce's Calculated Customer-Specific Rates For The Period Of April 1, 2021 Through December 31, 2021 Are In Accordance With Law**

Ancientree also agrees that Commerce complied with the Court's remand order, but argues that Commerce failed to account for the second administrative review of the companion AD order in calculating the Export Buyer's Credit Program subsidy rate for the overlapping period.  Ancientree Br. at 1-3 (citing 19 U.S.C. § 1677a(c)(1)(C)).  Ancientree claims that Commerce must adjust the rates in this investigation to prevent a double remedy.  *Id.* at 2-3. This argument is unavailing.[4]

---

[4]  In its brief supporting in part Commerce's determination in the third remand, AKCA agrees that "Commerce properly declined in the *Third Remand Redetermination* to offset the subsidy rate for the Export Buyer's Credit Program . . . based on Ancientree's failure to exhaust its administrative remedies in the second administrative review of the antidumping duty . . . order on *Wooden Cabinets and Vanities and Components Thereof from China*."  AKCA Supp. Br. at 1-2, ECF No. 167.

Ancientree correctly states that the period of review for the second administrative review of the CVD order overlaps with the second review of the AD order, namely April 1, 2021 through December 31, 2021.  *Id.*; *Third Remand Redetermination* at 20.  Commerce did not apply an export subsidy offset in the parallel AD review for Ancientree.  *Third Remand Redetermination* at 20.  The Court sustained that determination after Ancientree failed to exhaust its administrative remedies to timely raise the issue before Commerce in that proceeding.  *The Ancientree Cabinet Co. v. United States*, Slip Op. 24-118, No. 23-00262, 2024 WL 4564174 at *4 (Ct. Int'l Trade Oct. 24, 2024).  Accordingly, because Commerce granted no export subsidy offset in the AD proceeding for this time period, Commerce determined that no additional adjustment to the CVD rate was needed for this period.  *See* 19 U.S.C. § 1677a(c)(1)(C).  This remand did not present an additional opportunity for Ancientree to relitigate Commerce's AD determination.

Ancientree further argues that, pursuant to 19 U.S.C. § 772(c)(1)(C), Commerce must remove the Export Buyer's Credit Program subsidy rate for all Ancientree customers during the period of April 1, 2021 through December 31, 2021.  Ancientree Br. at 1; *Third Remand Redetermination* at 21.[5]  This statute requires Commerce to "increase the U.S. sales price of subject merchandise by the amount of any export subsidy found countervailable in the companion countervailing Order."  19 U.S.C. § 772(c)(1)(C).  Accordingly, Ancientree argues that because Commerce did not make the adjustment for the program rates in the second administrative review of the AD order, then Commerce may not apply the program rate in this CVD investigation.  *Third Remand Redetermination* at 21.  But section 772(c)(1)(C) only applies

---

[5]  Notably, Ancientree's brief omits the citation to 19 U.S.C. § 772(c)(1)(C), despite raising that argument in its comments.  In its brief, Ancientree only cites to section 1677a(c)(1)(C), which does in fact require that Commerce limit any double remedy.

to AD proceedings, not CVD proceedings.  *See* 19 U.S.C. § 772(c)(1)(C).  Thus, this mandate is not applicable here.

Even assuming that Commerce's obligation to calculate accurate countervailing duty rates is invoked here, the most accurate countervailing duty rate for the exporter or producer necessarily includes every countervailable subsidy rate calculated, including the rate calculated for the Export Buyer's Credit Program.  Commerce's obligation to calculate an accurate countervailing duty rate is predicated on its obligation to determine "whether … a countervailable subsidy is being provided with respect to the subject merchandise."  19 U.S.C. § 1671b(b)(1).  An accurate countervailing duty rate therefore includes every countervailable subsidy rate calculated by Commerce.  To omit a rate calculated for a subsidy found to be countervailable would be to skirt the very purpose of countervailing duty law.  *See* Uruguay Round Agreements Act, Statement of Administrative Action, H. R. Rep. No. 103-316, vol. 1, at 911 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4241 (SAA) ("The Subsidies Agreement … enabl{es} the United States to retain strong and effective legal remedies against subsidized imports that injure domestic industries.").[6]  This remand does not present an additional opportunity for Ancientree to relitigate Commerce's AD determination, including Commerce's separate and distinct obligation to offset export subsidies in AD proceedings.  By statute, Commerce's determinations in an AD administrative review are subject to judicial review in a separate judicial proceeding concerning that particular AD review.  *See* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (establishing judicial review of

---

[6] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application."  *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1309 (Fed. Cir. 2001) (quoting 19 U.S.C. § 3512(d)).

administrative reviews of AD determinations).  Accordingly, Commerce's Remand Redetermination complies with both its statutory obligations and the Court's *Third Remand Order*.

Because neither of Ancientree's arguments have any merit, Commerce's calculation of the customer-specific rates for the period of April 1, 2021 through December 31, 2021 is supported by substantial evidence and in accordance with law.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's Third Remand Redetermination and enter final judgment in favor of the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director</td></tr>
<tr><td></td><td>/s/Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:<br>FEE PAUWELS<br>Attorney<br>Office of the Chief Counsel<br>    for Trade Enforcement and Compliance<br>U.S. Department of Commerce</td><td>/s/Ioana C. Meyer<br>IOANA C. MEYER<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 305-0001<br>E-mail: Ioana.c.meyer@usdoj.gov</td></tr>
<tr><td>Dated: January, 13, 2025</td><td>*Attorneys for Defendant United States*</td></tr>
</table>

16

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to paragraph 2(B)(2) of the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in paragraph 2(B)(1)(b) of the Chambers Procedures for a filing under Rule 56.2(h). Specifically, excluding those exempted portions of the brief as set forth in paragraph 2(B)(1) of the Chambers Procedures, I hereby certify that this brief contains 4,414 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word 2016) used to prepare this brief.

<u>/s/ Ioana C. Meyer</u>