## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: The Honorable Richard K. Eaton, Senior Judge**

| | |
|---|---|
| DALIAN MEISEN WOODWORKING CO., LTD., | ) ) ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | )     Ct No. 20-00110 |
| CABINETS TO GO, LLC, and THE ANCIENTREE CABINET CO., LTD. | ) ) |
| | ) |
| Plaintiff-Intervenors | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## PLAINTIFF-INTERVENOR REPLY REMAND COMMENTS

Gregory S. Menegaz
Alexandra H. Salzman
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to The Ancientree Cabinet Co., Ltd.*

Dated: January 13, 2025

## TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 133, SLIP OP. 2013-66 (CIT 2013) ........................................................................................................................3

*Changzhou Trina Solar Energy Co. v. United State*s, No. 17 - 00246, 2019 Ct. Intl. Trade LEXIS 144...........................................................................................................................3

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) ................................................................................................................ 3-4

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52 ................................................5

**Statutes & Regulation**

19 U.S.C. § 1671d(c)(1)(B)(i)(I)................................................................................................4

19 U.S.C. § 1673d(c)(1)(B)(i)(I)................................................................................................4

19 C.F.R. §351.212(b)(2)...........................................................................................................4

Plaintiff-intervenor The Ancientree Cabinet Co., Ltd. ("Ancientree") files this reply in

support of the remand results.  *See* Pet. Opposition Remand Comments (December 12, 2024),

ECF 163; *see also* Third Remand Results (November 12, 2024); ECF 159; *see Dalian Meisen*

*Woodworking Co., Ltd. v. United States*, Court No. 20-00110, Slip Op. 24-83 (CIT July 22,

2024).  The CIT remanded one issue for the third time to the Department, finding that the

Department's inclusion of an adverse facts available rate for the Export Buyer's Credit ("EBC")

program when calculating individual countervailing duty rates for Ancientree is not supported by

substantial evidence and is otherwise not in accordance with law. At the Court's instructions, the

Department removed the EBC program for the Customers that were successfully verified.

Petitioner argues that the Department's remand is contrary to law, but the Department followed

the Court's instructions.  The Court should uphold the remand results.

As an initial matter, petitioner's entire comment is essentially requesting that this Court

make a different decision than it did in the last two remands.  Petitioner appears to acknowledge

in its remand comments, stating that "[t]here was never any valid legal basis for the CIT to

remand this determination back to Commerce."  Pet. Remand Cmts at 7.  These comments

exceed the scope of the remand proceeding.  Petitioner has already lost these issues before the

Court in two opinions.  The Court has already found that the Department's application of AFA to

the EBC program for all customers was not supported by substantial evidence and specifically

ordered the Department that "for each customer whose non-use of the Program was verified

Commerce must determine a customer-specific rate that excludes a subsidy amount for the

Program, and recalculate Ancientree's total rate, and the all-others rate."  Slip Op. 24-83 at 24.

In its remand comments, petitioner rehashes arguments already made and lost rather than

addressing in any way that the Department did not follow this Court's remand instructions and

1

opinion.  The Court should find that petitioner's comments have already been addressed by this Court, and uphold the Department's remand without addressing petitioner's comments on the merits.  Nonetheless, Ancientree also re-addresses these arguments.

First, petitioner explains that it is ordinarily the GOC's responsibility to provide information on subsidy programs, and that the burden shifting to the respondents' customers has "perverted" the way the law is supposed to operate.  Pet. Remand Cmts. at 4-6.  Petitioner misses the uniqueness of this program at the Department's own insistence.  Non-use can normally be verified at the respondent, and Ancientree still maintains that non-use of the EBC program can be verified at Ancientree because the receipt of payment from this program would appear in Ancientree's own records.  But the Department has insisted that absent certain information from the GOC, information from the respondent is not adequate and that it needs information from the customers.

Petitioner begins by restating that it the gap on the record was the GOC's gap, and not for the respondent's customers to fill.  Petitioner's argument ignores the substantial caselaw that the supposed missing information from the GOC is not actually necessary information.  The U.S. Court of International Trade held repeatedly that the information the Department has previously said was necessary to evaluate this program, namely the 2013 internal revisions and identities of partner/correspondent banks, was in fact not "necessary information."  *See* Ancientree R56.2 brief (November 9, 2022) at 10-12 (citing over a dozen cases with this holding).  The caselaw on this issue has only expanded over the years of this litigation, where the Courts have found that information from the GOC was not necessary and the respondents could provide sufficient verifiable information to find non-use.

2

Instead of confronting the substantial caselaw on this point that has already been addressed in the briefing and prior decisions of this Court, petitioner cites to selected cases as "more persuasiv[e]." Pet. Remand Cmts at 6. Petitioner cites to *Cooper*, but the Court actually specifically discussed that the situation was different because the customers in *Cooper* did not provide certifications. The other two authorities cited by petitioner, *Yinfeng* and *Yama*[1], stand in stark contrast to the dozens of cases before and after both, where this Court has consistently found that information from the GOC is not necessary information when the customers can fill the gap regarding non-use. Indeed, this Court has already ruled on this issue twice in this very proceeding, finding that the Department's finding of use of the program as AFA was not justified on this record due to the information provided by Ancientree and its customers.

Petitioner's assertion that the Court's decision in this case is "totally undermining any ability of Commerce to induce cooperation" is likewise misplaced. Pet. Remand Cmts at 7. Petitioner ignores that substantial caselaw on seeking to avoid the impact of AFA on cooperating parties, such as Ancientree and its customers. *Changzhou Trina Solar Energy Co. v. United States, No. 17 - 00246, 2019 Ct. Intl. Trade LEXIS 144, at \*10* ("In order to avoid unnecessarily impacting cooperating parties because of the GOC's failure to cooperate, Commerce needs to at least attempt to verify the certifications of non-use in this case."); *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342, SLIP OP. 2013-66 (CIT 2013) (noting that Commerce should "seek to avoid" adversely impacting a cooperating party); *Jiangsu Zhongji*

---

[1] In *Yama*, the record also did not contain certification from all customers. Further, both *Yama* and *Yinfeng* were prior to the Department's practice of issuing the EBC supplemental questionnaire. In the case at hand, not only did the Department have certifications from all customers, but the Department received detailed financial questionnaires from the majority of the customers and then verified those customers in person. These are very different factual records.

*Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317, 1333-34 (Ct. Int'l Trade 2019) (The Court instructed the Department to "consider what information could be verified that would show non-use" and emphasized that "effort should be made to avoid the collateral consequences to cooperating parties of another's non-cooperation."). Ancientree has cooperated; Ancientree's customers have cooperated. There is no added inducement benefit by this application of AFA; only an unwarranted penalty.

Lastly, petitioner argues that customer-specific rates have no basis in the statute, regulation, or practice. Pet. Remand Cmts at 12-14. Petitioner argues that the statute directs the Department to calculate one individual subsidy rate for each exporter and producer. 19 U.S.C. § 1671d(c)(1)(B)(i)(I). The companion provision in the antidumping statute, while not using the same "one individual" rate language, effectively says the same thing by directing the Department to determined "the estimate weighted average dumping margin for each exporter and producer individually investigated." 19 U.S.C. § 1673d(c)(1)(B)(i)(I). As discussed by this Court and acknowledged by petitioner, the Department's practice in antidumping cases is to calculate assessment rates by importer or customer. Petitioner argues that the countervailing regulation does not specifically allow for this, but the regulation likewise does not bar the Department from this approach. The countervailing regulation states that the Department "normally" will direct CBP to assess the countervailing duties in the final results. 19 C.F.R. §351.212(b)(2). The statute and regulation do not prevent the Department from calculating importer or customer specific assessment rates. The practice is normal in antidumping reviews. Petitioner provides no actual reason why importer or customer specific assessment rates would be inaccurate or non-administrable. In fact, such specific assessment rates would be the most reasonable and accurate solution.

4

Ancientree also submits that a pro rata adjustment would also be an appropriate alternative remedy to the customer specific rates.  As has already been briefed at length and determined by this Court, the Department has no basis to find use of this program for the customers that were successfully verified.  There is no missing information for those customers and the record establishes their non-use.  This Court in an earlier remand, and in other similar factual appeals, has found that a pro rata would be appropriate. *Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52, *14 (finding such a pro rata adjustment was a reasonable alternative if the Department determined it could not find non-use); Slip. Op 23-57 at 15 ("On remand the Department is instructed to attempt to verify Ancientree's submissions to the extent it finds appropriate, and if that is successful, it should either accept the pro rata adjustment proposed by Ancientree or conclude that the Export Buyer's Credit Program was not used at all, and recalculate the all-others rate accordingly.").

In light of the foregoing, the Court should uphold the Department's remand results removing the EBC program for the customers that were successfully verified.

Respectfully submitted,

/s/ *Gregory S. Menegaz*
Gregory S. Menegaz
Alexandra H. Salzman
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth Street., N.W., 20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
Date: January 13, 2025                *Counsel to Ancientree*

5

## **WORD COUNT CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains <u>1441</u> words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

---

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 Fifteenth Street N.W., 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to The Ancientree Cabinet Co., Ltd.*